# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KYLE VILLARE, Individually and On Behalf of All Others Similarly Situated, | **Case No.** |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| ABIOMED, INC., MICHAEL R. MINOGUE, and TODD A. TRAPP, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Kyle Villare ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding ABIOMED, Inc. ("ABIOMED" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## **NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired ABIOMED securities between January 31, 2019 through July 31, 2019, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      ABIOMED was founded in 1981 and is headquartered in Danvers, Massachusetts. The Company engages in the research, development, and sale of medical devices to assist or replace the pumping function of the failing heart, and also provides continuum of care to heart failure patients.

3.      ABIOMED offers, among other things, catheters and micro heart pumps under the Impella brand with integrated motors and sensors for use in interventional cardiology.  The Company sells its products through direct sales and clinical support personnel in the United States, Canada, Europe, and Asia.

4.      On November 1, 2018, ABIOMED issued a press release announcing its financial and operating results for its second quarter of fiscal year 2019 (the "2Q 2019 Press Release").[1] The 2Q 2019 Press Release reported "second quarter fiscal 2019 revenue of $181.8 million, an increase of 37% compared to revenue of $132.8 million for the same period of fiscal 2018". This 37% increase would mark a high-point in ABIOMED's revenue growth which would begin to decline over the Company's following three fiscal quarters.

---

[1] ABIOMED's fiscal year ends on March 31.

5.      On January 31, 2019, ABIOMED issued a press release, announcing ABIOMED's financial and operating results for the third quarter of fiscal year 2019 (the "3Q 2019 Press Release").  The 3Q 2019 Press Release reported "third quarter fiscal 2019 revenue of $200.6 million, an increase of 30% compared to revenue of $154.0 million for the same period of fiscal 2018".

6.      Then, on May 2, 2019, Defendants issued a press release announcing ABIOMED's financial and operating results for its fourth quarter and full fiscal year 2019 (the "4Q/FY 2019 Press Release"). The 4Q/FY 2019 Press Release reported "fourth quarter fiscal 2019 revenue of $207.1 million, an increase of 19% compared to revenue of $174.4 million for the same period of fiscal 2018".  Despite yet another decrease in revenue growth from the quarter prior, Defendants continued to assure investors that the Company had a plan of action to remediate the negative trend in its financial results moving forward.  Based on the Company's corrective action plan, ABIOMED provided fiscal year 2020 guidance for total revenues to be in the range of $900 million to $945 million, an increase of 17% to 23% over the prior year, and GAAP operating margin to be in the range of 29% to 31%.

7.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) ABIOMED's revenue growth was in decline; (ii) the Company did not have a sufficient plan in place to stem its declining revenue growth;  (iii) the Company was unlikely to restore its revenue growth over the next several fiscal quarters; (iv) consequently, ABIOMED was reasonably likely to revise its full-year 2020 guidance in a way that would fall short of the Company's prior

projections and market expectations; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

8.      On August 1, 2019, pre-market, Defendants issued a press release announcing ABIOMED's financial and operating results for the first quarter of fiscal year 2020 (the "1Q 2020 Press Release").  Among other results, the 1Q 2020 Press Release disclosed ABIOMED's third consecutive quarter of slowing revenue growth, reporting "first quarter fiscal 2020 revenue of $207.7 million, an increase of 15.4% compared to revenue of $180.0 million for the same period of fiscal 2019".  This represented a significant decrease in revenue growth from 2Q 2019.  Commenting on the Company's surprising financial result disappointment, the Company's Chairman, President and CEO, Defendant Michael R. Minogue ("Minogue"), revealed that the Company's "new training programs, organizational changes in distribution, and [] external initiatives… will require time to drive more growth in the future".

9.      The Company also slashed its previously issued full-year 2020 guidance from total revenues in the range of $900-945 million to total revenues in the range of $885-925 million, which fell roughly $22 million short of market expectations.

10.     Following the Company's disclosure of its 1Q 2020 financial performance and revised guidance, *Investor's Business Daily*  published an article raising concern with Defendant Minogue's prior public statements, titled: "This Medtech's CEO Promised To 'Correct The Course' — That Didn't Happen".

11.     On this news, ABIOMED's stock price fell $73.69 per share, or 26.45%, to close at $204.87 per share on August 1, 2019.

12.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

13.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

15.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  ABIOMED securities trade on the NASDAQ Stock Market ("NASDAQ") located within this Judicial District.

16.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

17.     Plaintiff, as set forth in the attached Certification, acquired ABIOMED securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

18.     ABIOMED is a Delaware corporation with its principal executive offices located at 22 Cherry Hill Drive, Danvers, Massachusetts 01923.  ABIOMED securities trade in an efficient market on the NASDAQ under the ticker symbol "ABMD."

19.     Defendant Minogue has served as ABIOMED's Chairman, President and Chief Executive Officer at all relevant times.

20.     Defendant Todd A. Trapp ("Trapp") has served as ABIOMED's Vice President and Chief Financial Officer at all relevant times.

21.     Defendants Minogue and Trapp are sometimes referred to herein as the "Individual Defendants."

22.     The Individual Defendants possessed the power and authority to control the contents of ABIOMED's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of ABIOMED's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with ABIOMED, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

23.     ABIOMED was founded in 1981 and is headquartered in Danvers, Massachusetts. The Company engages in the research, development, and sale of medical devices to assist or replace the pumping function of the failing heart, and also provides continuum of care to heart failure patients.

24.     ABIOMED offers, among other things, catheters and micro heart pumps under the Impella brand with integrated motors and sensors for use in interventional cardiology.   The Company sells its products through direct sales and clinical support personnel in the United States, Canada, Europe, and Asia.

25.     On November 1, 2018, ABIOMED issued a press release announcing its financial and operating results for its second quarter of fiscal year 2019. The 2Q 2019 Press Release reported "second quarter fiscal 2019 revenue of $181.8 million, an increase of 37% compared to revenue of $132.8 million for the same period of fiscal 2018".   This 37% increase would mark a high-point in ABIOMED's revenue growth which would begin to decline over the Company's following three fiscal quarters.

### Materially False and Misleading Statements Issued During the Class Period

26.     The Class Period begins on January 31, 2019, when Defendants issued a press release, pre-market, announcing ABIOMED's financial and operating results for the third quarter of fiscal 2019.   Despite revenue growth dropping to an increase of 30% for the quarter, as compared to the 37% increase reported in the 2Q 2019 Press Release, the 3Q 2019 Press Release touted "[r]ecord [r]evenue" in the title of the press release, and otherwise reported, in relevant part:

> Abiomed, Inc. . . . a leading provider of breakthrough heart recovery and support technologies, today reported third quarter fiscal 2019 revenue of $200.6 million, an increase of 30% compared to revenue of $154.0 million for the same period of fiscal 2018. Third quarter fiscal 2019 GAAP net income was $44.9 million or $0.97 per diluted share, up 235% compared to GAAP net income of $13.4 million or $0.29 per diluted share for the same period of fiscal 2018.

27.     The 3Q 2019 Press Release also quoted Defendant Minogue, who championed ABIOMED's sustainable growth.   Specifically, as quoted in the 3Q 2019 Press Release, Defendant Minogue stated, in relevant part:

We are proud of our 100,000th patient milestone and we will continue to grow the field of heart recovery and improve patient outcomes by partnering with our customers to use real-world data to identify and validate best practices and protocols . . . . We remain focused on disciplined execution and sustainable growth so that even more patients around the world can benefit from heart recovery.

28.     On February 5, 2019, Defendants filed ABIOMED's Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarterly period ended December 31, 2018 (the "3Q 2019 10-Q"). For the quarter, Defendants reported a net income of $44.86 million, or $0.97 per diluted share, on revenue of $200.56 million, compared to a net income of $13.45 million, or $0.29 per diluted share, on revenue of $154.02 million for the same quarter the year prior.

29.     With regard to ABIOMED's revenue for the quarter, the 3Q 2019 10-Q stated, in relevant part:

Total revenue for the three months ended December 31, 2018 increased by $46.6 million, or 30%, to $200.6 million from $154.0 million for the three months ended December 31, 2017. Total revenue for the nine months ended December 31, 2018 increased $143.1 million, or 34%, to $562.4 million from $419.3 million for the nine months ended December 31, 2017. The increase in total revenue was primarily due to higher Impella product revenue from increased utilization in the U.S and Europe and our continued controlled commercial launch of Impella 2.5 and Impella 5.0 in Japan.

Impella product revenue for the three months ended December 31, 2018 increased by $45.3 million, or 31%, to $193.3 million from $148.0 million for the three months ended December 31, 2017. Impella product revenue for the nine months ended December 31, 2018 increased $139.6 million, or 35%, to $542.2 million from $402.6 million for the nine months ended December 31, 2017. Most of the increase in Impella product revenue was from increased device sales in the U.S., as we focus on increasing utilization of our disposable catheter products through continued investment in our field organization and physician training programs. Impella product revenue outside of the U.S. also increased primarily due to increased utilization in Germany and our continued controlled launch of Impella 2.5 and Impella 5.0 in Japan.

Service and other revenue for the three months ended December 31, 2018 increased by $1.3 million, or 22%, to $7.3 million from $6.0 million for the three

months ended December 31, 2017. Service and other revenue for the nine months ended December 31, 2018 increased $3.5 million, or 21%, to $20.2 million from $16.7 million for the nine months ended December 31, 2017. The increase in service and other revenue was primarily due to an increase in preventative maintenance service contracts. We have expanded the number of Impella AIC consoles at many of our existing higher volume customer sites and continue to sell additional consoles to new customer sites. We expect growth for service and other revenue to be slower than our Impella product revenue in the future as most of these using sites in the U.S. have service contracts with three year terms.

30.     With regard to ABIOMED's cost of revenue for the quarter, the 3Q 2019 10-Q stated, in relevant part:

Cost of revenue for the three months ended December 31, 2018 increased by $9.0 million, or 36%, to $34.0 million from $25.0 million for the three months ended December 31, 2018 and 83.8% for the three months ended December 31, 2017. Gross margin was 83.0% for the three months ended December 31, 2018 and 83.8% for the three months ended December 31, 2017.

Cost of revenue for the nine months ended December 31, 2018 increased by $26.2 million, or 38%, to $94.7 million from $68.5 million for the nine months ended December 31, 2017.  Gross margin was 83.2% for the nine months ended December 31, 2018 and 83.7% for the nine months ended December 31, 2017.

The increase in cost of product revenue was related to higher demand for our Impella devices and higher production volume and costs to support growing demand for our Impella devices. The decrease in gross margin for the three and nine months ended December 31, 2018 was due to higher volume offset by increased investment in direct labor and overhead as we expand our manufacturing capacity to support expected growth in our Impella business.

31.     Appended as an exhibit to the 3Q 2019 10-Q were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Individual Defendants certified that "[t]he [3Q 2019 10-Q] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934" and "[t]he information contained in the [3Q 2019 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

32.     On May 2, 2019, Defendants issued a press release announcing ABIOMED's financial and operating results for the fourth quarter and full year 2019.   With regard to ABIOMED's revenue for those periods, the 4Q/FY 2019 Press Release stated, in relevant part:

> Abiomed, Inc. . . . a leading provider of breakthrough heart recovery and support technologies, today reported fourth quarter fiscal 2019 revenue of $207.1 million, an increase of 19% compared to revenue of $174.4 million for the same period of fiscal 2018. For fiscal year 2019, total revenue was $769.4 million, up 30% compared to revenue of $593.7 million, and operating income was $224.8 million, up 43% compared to operating income of $157.1 million in fiscal year 2018.

33.     The 4Q/FY 2019 Press Release also quoted Defendant Minogue, who acknowledged ABIOMED's disappointing fourth quarter results, but nonetheless touted the Company's long-term outlook and plan of action to "correct the course."   Specifically, as quoted in the 4Q/FY 2019 Press Release, Defendant Minogue stated, in relevant part:

> ***Q4 did not meet our expectations***. I take full responsibility for our disappointing performance given a soft March, ***and we have already initiated a plan of action to correct the course***. However, Abiomed had a solid year with 30% growth and improvement in margins. Most importantly, Abiomed's clinical support, training, and education helped improve patient outcomes in both high-risk PCI and cardiogenic shock. Multiple publications continue to validate the benefits of Impella supported PCI and Impella best practices to help improve survival in cardiogenic shock . . . . ***I am confident in our innovation and business today as well as long-term outlook for Abiomed***. We are creating the new Field of Heart Recovery.

(Emphasis added.)

34.     With regard to ABIOMED's full year 2020 outlook, the 4Q/FY 2019 Press Release stated, in relevant part:

> FISCAL YEAR 2020 OUTLOOK
>
> The company is giving its fiscal year 2020 guidance for total revenues to be in the range of $900 million to $945 million, an increase of 17% to 23% over the prior year. The company is also giving its fiscal year 2020 guidance for GAAP operating margin to be in the range of 29% to 31%. The company plans to give another formal forecast for the fiscal year on the next earnings call.

35.     The Company also held a conference call with investors and analyst on May 2, 2019. On that call, Defendant Minogue iterated the Company's "plan of action... to correct the course", stating in relevant part:

> *Thank you, Ingrid, and good morning, everyone. By now you've seen our press release, and I want to begin by recognizing that our performance in Q4 did not meet our expectations. I take full responsibility for our disappointing performance given a soft March. And I will discuss momentarily the changes and plan of action we have already initiated to correct the course.*
>
> In the quarter, we generated $207 million in revenue, up 19%. We had anticipated a tough comparison given the 40% growth in the prior year period, but our results were short of our goal of 25% growth or $218 million. Operating margins for Q4 were strong and expanded to 31.6%.
>
> For the full fiscal year, revenue of $769 million increased 30% versus the fiscal year 2018. Additionally, operating margins increased to 29.2%. In fiscal '19, we remain one of the fastest-growing GAAP profitable medical device companies. Abiomed has a long and proven track record of execution, posting over 20% in organic revenue growth for 18 consecutive quarters or 4.5 years while significantly expanding full year operating margins from 12.5% to 29.2%. During this time, we also invested nearly $1 billion in innovation, clinical research and distribution. We remain confident in our business and our short to long-term outlook. We're confirming that our investment thesis remains fully intact.
>
> For today's call, I will cover 3 topics: first*, I will discuss the Q4 lessons learned and the actions already taken for Q1*...
>
> \*          \*          \*
>
> So first, on Q4. It is important to note that our business typically sees significant sequential performance in Q4. Unfortunately, this is -- did not occur because of the slower growth in March in patient utilization. We believe this occurred as a result of customer confusion stemming from the February 4 FDA letter to health care providers from the FDA coupled with our response to prioritize Impella RP and shock, which unintentionally distracted our focus away from Protected PCI execution. Unfortunately, this FDA letter to health care providers was misinterpreted by some media outlets and health care providers who inaccurately reported that Impella RP, or Impella, was being recalled or had overall safety issues that were being reviewed by the FDA. This was clearly not the case, which we clarified in our ACC press release, March 18.
>
> We believe this noise negatively impacted our elective high-risk PCI patients in the cath Lab specifically in March. We also believe competitive companies likely capitalized on the confusion with our customers. Additionally, contracted survey companies called our customers to inform them of the FDA letter and questioned

if they would reduce using Impella until final resolution. However, our internal shift in focus did likely yield improved clinical outcomes for Impella RP patients and resulted in a record quarterly revenue for Impella RP. There are other miscellaneous items that may have had an impact in the quarter, but generally, they fall into 2 categories: external noise or internal focus.

***We have already made the following changes to address the March performance***. The Impella RP post-approval study was presented and press released at the ACC meeting on March 18. The FDA now differentiates patients in the Recover Right protocol from salvage patients with right ventricular failure in shock for 48 hours or more. To be clear, the patient's in the postapproval study that met the FDA criteria for right heart failure had similar outcomes to the FDA RP Recover Right Study, which led to the exclusive FDA approval. With the postapproval study submitted to the FDA, we anticipate a final closing FDA letter to health care physicians to be issued to our customers by the end of our fiscal year Q1 that stresses the importance of early identification of right ventricular cardiogenic shock and reinforces our safe and effective approval for Impella RP. Additionally, we have taken the following steps, which we believe will eliminate noise and highlight the clinical benefits of Impella for both interventional cardiologist and the heart failure community, which includes heart surgeons. ***We capitalized on the timing of our annual Abiomed Field Meeting with 3 days of training, with over 400 employees and on all the new publications for high-risk PCI and shock.*** This meeting was last week.

We also highlighted our last two press release -- press releases on both high-risk PCI and cardiogenic shock. We have created 2 new U.S. regions for our core business, increasing the number of territories and account managers allowing us to go deeper with interventional cardiologist. We added 4 new MDs to our medical office to expand our training and education programs in headquarters at our Heart Recovery Institute and regionally in the field, and we also expanded our distribution channel focused on the heart team, including heart surgeons, to maintain our momentum on Impella 5.0 and Impella RP and prepare for future Impella 5.5 launch. We believe these actions we have taken will help reduce the noise. However, it will likely require at least a quarter of execution to eliminate all confusion on the Impella platform.

***For this reason, we are disclosing today that our U.S. April growth rate showed improvement over March***, but it is not yet where we want it to be. ***We will rise up.*** We have more work to do to educate our customers on improving outcomes and recent publications. ***And we will leverage the final pending FDA confirmation letter.*** Our business is based on the integrity of our products, the relationships we have with hospitals and physicians and our reputation. When there is confusion in the market about the safety of our products, it takes time and effort to get back on track.

(Emphasis added.)

36.     On May 23, 2019, Defendants filed ABIOMED's Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the fiscal year ended March 31, 2019 (the "2019 10-K").  For the fiscal year 2019, Defendants reported a net income of $259.02 million, or $5.61 per diluted share, on revenue of $769.43 million, compared to a net income of $112.17 million, or $2.45 per diluted share, on revenue of $593.75 million for fiscal year 2018.

37.     With regard to ABIOMED's revenue for the year, the 2019 10-K stated, in relevant part:

> Total revenue for fiscal 2019 increased $175.7 million, or 30%, to $769.4 million from $593.7 million for fiscal 2018. Impella product revenue for fiscal 2019 increased by $170.8 million, or 30%, to $741.7 million from $570.9 million for fiscal 2018. Most of the increase in Impella product revenue was from increased device sales in the U.S., as we focus on increasing utilization of our disposable catheter products through continued investment in our field organization and physician training programs. Impella product revenue outside of the U.S. also increased primarily due to higher utilization in Germany and our controlled launch of Impella 2.5 and Impella 5.0 in Japan.
>
> Service and other revenue for fiscal 2019 increased by $4.8 million, or 21%, to $27.7 million from $22.9 million for fiscal 2018. The increase in service and other revenue was primarily due to an increase in preventative maintenance service contracts. We expect growth for service and other revenue to be slower than our Impella product revenue in the near future as most of our U.S. customers have service contracts with three-year terms.

38.     With regard to ABIOMED's cost of revenue for the quarter, the 2019 10-K stated, in relevant part:

> Cost of revenue for fiscal 2019 increased by $31.0 million, or 31%, to $129.6 million from $98.6 million for fiscal 2018. Gross margin was 83% for each of fiscal 2019 and fiscal 2018. The increase in cost of product revenue was related to higher demand for our Impella devices and higher production volume and costs to support growing demand for our Impella devices. There was a minimal difference in gross margin as the increased investment in manufacturing capacity was at a pace consistent with our revenue growth.

39.     The 2019 10-K also contained merely generic, boilerplate representations concerning ABIOMED's revenue risk.   For example, the 2019 10-K blithely noted that, depending on the Company's ability to expand into new hospital cardiac centers, the Company could possibly incur long sales and training cycles, which in turn might cause the Company's revenues and operating results to vary significantly from quarter to quarter.   Specifically, the 2019 10-K stated, in relevant part:

> ***Expansion into hospital cardiac centers that have not historically used our products may incur long sales and training cycles that may cause our revenues and operating results to vary significantly from quarter to quarter.***
>
> Our products have lengthy sales cycles and we may incur substantial sales and marketing expenses and expend significant effort without making a sale. We sell primarily to hospitals that often have administrative requirements to introduce and expand a new technology, such as Impella devices, at their sites. Even after making the decision to purchase our Impella devices, our customers often deploy our products slowly or infrequently. In addition, cardiac centers of hospitals that buy the majority of our products are usually led by cardiac surgeons who are heavily recruited by competing hospitals. When one of these cardiac surgeons moves to a new hospital, we sometimes experience a significant reduction in purchases by the hospital from which the physician has departed while it replaces the lead physician supporting our Impella devices. As a result, our revenues and operating results may vary significantly from quarter to quarter. In addition, product purchases often lag behind initial expressions of interest in our product by new centers due to training and education regarding the use of the products. Hospitals also need to perform internal administrative requirements prior to the initial implant procedures.

(Emphasis in original.)

40.     Appended as an exhibit to the 2019 10-K were signed SOX certifications wherein the Individual Defendants certified that "[t]he [2019 10-K] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934" and "[t]he information contained in the [2019 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

41.     The statements referenced in ¶¶ 26-40 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) ABIOMED's revenue growth was in decline; (ii) the Company did not have a sufficient plan in place to stem its declining revenue growth;   (iii) the Company was unlikely to restore its revenue growth over the next several fiscal quarters; (iv) consequently, ABIOMED was reasonably likely to revise its full-year 2020 guidance in a way that would fall short of the Company's prior projections and market expectations; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

42.     On August 1, 2019, pre-market, Defendants issued a press release announcing ABIOMED's financial and operating results for the first quarter of fiscal year 2020.  Among other results, the 1Q 2020 Press Release disclosed ABIOMED's third consecutive quarter of slowing revenue growth, reporting "first quarter fiscal 2020 revenue of $207.7 million, an increase of 15.4% compared to revenue of $180.0 million for the same period of fiscal 2019". This represented a decrease in revenue growth of over 58% compared to the 37% increase in revenue reported in the 2Q 2019 Press Release—*i.e.*, first quarter 2020's revenue growth of 15.4% (compared to first quarter 2019) represented a decrease of over 58% from second quarter 2019's revenue growth of 37% (compared to second quarter 2018), and a decrease of nearly 50% from third quarter 2019's revenue growth of 30% (compared to third quarter 2018).   The Company also slashed its previously issued full-year 2020 guidance from total revenues in the range of $900-945 million to total revenues in the range of $885-925 million, which fell roughly

$22 million short of market expectations.  Specifically, the 1Q 2020 Press Release stated, in relevant part:

> Abiomed, Inc. . . . a leading provider of breakthrough heart recovery and support technologies, today reported first quarter fiscal 2020 revenue of $207.7 million, an increase of 15.4% compared to revenue of $180.0 million for the same period of fiscal 2019. Operating income was $60.7 million, up 30%, compared to $46.7 million in the same period of fiscal 2019.

> "In Q1, we implemented new training programs, organizational changes in distribution, and launched external initiatives that will require time to drive more growth in the future," said Abiomed Chairman, President and CEO, Michael R. Minogue. "We are confident in our ultimate global adoption because we know that our innovation improves clinical outcomes and patient quality of life."

> * * *

> FISCAL YEAR 2020 OUTLOOK

> The company is revising its fiscal year 2020 guidance for total revenues to be in the range of $885 million to $925 million, an increase of 15% to 20% over the prior year. The company is also revising its fiscal year 2020 guidance for GAAP operating margin to be in the range of 28% to 30%.

43.     Following the Company's disclosure of its 1Q 2020 financial performance and revised guidance, *Investor's Business Daily* published an article raising concern with Defendant Minogue's prior public statements, titled: "This Medtech's CEO Promised To 'Correct The Course' — That Didn't Happen".

44.     On this news, ABIOMED's stock price fell $73.69 per share, or 26.45%, to close at $204.87 per share on August 1, 2019.

45.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

46.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired ABIOMED securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

47.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, ABIOMED securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by ABIOMED or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

48.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

49.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

50.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of ABIOMED;

- whether the Individual Defendants caused ABIOMED to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of ABIOMED securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

51.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

52.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

18

- ABIOMED securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold ABIOMED securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

53. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

54. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

55. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

56. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

57. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the

other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of ABIOMED securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire ABIOMED securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

58.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for ABIOMED securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about ABIOMED's finances and business prospects.

59.     By virtue of their positions at ABIOMED, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and

omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

60.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of ABIOMED, the Individual Defendants had knowledge of the details of ABIOMED's internal affairs.

61.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of ABIOMED.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to ABIOMED's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of ABIOMED securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning ABIOMED's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired ABIOMED securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

62.    During the Class Period, ABIOMED securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be

disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of ABIOMED securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of ABIOMED securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of ABIOMED securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

63.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

64.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

65.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

66.     During the Class Period, the Individual Defendants participated in the operation and management of ABIOMED, and conducted and participated, directly and indirectly, in the

conduct of ABIOMED's business affairs.  Because of their senior positions, they knew the adverse non-public information about ABIOMED's misstatement of income and expenses and false financial statements.

67.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to ABIOMED's financial condition and results of operations, and to correct promptly any public statements issued by ABIOMED which had become materially false or misleading.

68.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which ABIOMED disseminated in the marketplace during the Class Period concerning ABIOMED's results of operations.   Throughout the Class Period, the Individual Defendants exercised their power and authority to cause ABIOMED to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of ABIOMED within the meaning of Section 20(a) of the Exchange Act.   In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of ABIOMED securities.

69.     Each of the Individual Defendants, therefore, acted as a controlling person of ABIOMED.   By reason of their senior management positions and/or being directors of ABIOMED, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, ABIOMED to engage in the unlawful acts and conduct complained of herein.   Each of the Individual Defendants exercised control over the general operations of ABIOMED and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

70.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by ABIOMED.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  August 6, 2019                              Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Jonathan D. Lindenfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

**POMERANTZ LLP**

Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

***Attorneys for Plaintiff***

**Submission Date**

2019-08-01 20:23:31

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.   I  make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against ABIOMED, Inc. ("ABIOMED" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire ABIOMED securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired ABIOMED securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in ABIOMED securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

## Name

**Print Name**

Kyle Villare

**Signature**



**Full Name**

**Abiomed, Inc. (ABMD)**                                                          **Villare, Kyle**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| 3/28/2019 | Purchase | 12 | $284.2100 |
| 5/1/2019 | Purchase | 5 | $276.2000 |
| 5/1/2019 | Purchase | 1 | $275.4800 |