**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KYLE VILLARE, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ABIOMED, INC., MICHAEL R. MINOGUE, and TODD A. TRAPP, <br><br> Defendants. | No. 1:19-cv-07319-ER <br><br> Judge Edgardo Ramos <br><br> <u>CLASS ACTION</u> <br><br><br> <u>ORAL ARGUMENT REQUESTED</u> |
| JOSEPH BARRY, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ABIOMED, INC.; MICHAEL R. MINOGUE; and TODD A. TRAPP, <br><br> Defendants. | No. 1:19-cv-09258 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF**
**LOCAL 705 INTERNATIONAL BROTHERHOOD OF TEAMSTERS**
**PENSION FUND FOR CONSOLIDATION, APPOINTMENT AS**
**<u>LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................................ 3

ARGUMENT .................................................................................................................................. 6

I.     THE ACTIONS SHOULD BE CONSOLIDATED ............................................................ 6

II.    LOCAL 705 SHOULD BE APPOINTED LEAD PLAINTIFF ....................................... 7

       A.     The PSLRA Standard for Appointing Lead Plaintiff............................................. 7

       B.     Local 705 Is the "Most Adequate Plaintiff" ........................................................ 9

             1.     Local 705's Motion Is Timely ..................................................................... 9

             2.     Local 705 Has a Substantial Financial Interest........................................... 9

             3.     Local 705 Satisfies Rule 23's Typicality and Adequacy
                  Requirements ................................................................................................ 10

                  a.     Local 705's Claims Are Typical of Those of the Class................ 10

                  b.     Local 705 Satisfies the Adequacy Requirement of Rule 23 ......... 11

             4.     Local 705 Is Precisely the Type of Lead Plaintiff Congress
                 Envisioned When It Passed the PSLRA .................................................... 12

III.    LOCAL 705'S SELECTION OF LEAD COUNSEL MERITS APPROVAL ................. 13

CONCLUSION............................................................................................................................. 14

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert Fadem Trust v. Citigroup Inc.*,
239 F. Supp. 2d 344 (S.D.N.Y. 2002) ........................................................................6

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
252 F.R.D. 188 (S.D.N.Y. 2008) ...............................................................................6

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) .....................................................................................13

*In re Elan Corp. Sec. Litig.*,
No. 1:08-cv-08761-AKH, 2009 WL 1321167 (S.D.N.Y. May 11, 2009) ...............11

*Faig v. Bioscrip, Inc.*,
No. 13 Civ. 06922 (AJN), 2013 WL 6705045 (S.D.N.Y. Dec. 19, 2013) ............9, 10

*Glauser v. EVCI Career Colls. Holding Corp.*,
236 F.R.D. 184 (S.D.N.Y. 2006) ..............................................................................3

*Kemp v. Universal Am. Fin. Corp.*,
No. 05 Civ. 9883 (JFK), 2006 WL 1190691 (S.D.N.Y. May 1, 2006) ....................9

*In re KIT Dig., Inc. Sec. Litig.*,
293 F.R.D. 441 (S.D.N.Y. 2013) .............................................................................12

*Kux-Kardos v. VimpelCom, Ltd.*,
151 F. Supp. 3d 471 (S.D.N.Y. 2016) ......................................................................10

*Lowinger v. Global Cash Access Holdings, Inc.*,
No. 08 Cv. 3516 (SWK), 2008 WL 2566558 (S.D.N.Y. June 26, 2008) .................7

*Micholle v. Ophthotech Corp.*,
No. 17-CV-210 (VSB), 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) ..........8, 10, 12

*In re Orion Sec. Litig.*,
No. 08 Civ. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 8, 2008) .....................7

*Peifa Xu v. Gridsum Holding Inc.*,
No. 18 Civ. 3655 (ER), 2018 WL 4462363 (S.D.N.Y. Sept. 17, 2018) ...................6

*Randall v. Fifth St. Fin. Corp.*,
No. 15-cv-7759, 2016 WL 462479 (S.D.N.Y. Feb. 1, 2016) ....................................9

*Reitan v. China Mobile Games & Entm't Grp., Ltd. (China Mobile)*,
    68 F. Supp. 3d 390 (S.D.N.Y. 2014)..................................................................12

*In re Third Ave. Mgmt. LLC Sec. Litig.*,
    No. 16-cv-02758 (PKC), 2016 WL 2986235 (S.D.N.Y. May 13, 2016)................................10

**Rules & Statutes**

Fed. R. Civ. P. 23 .............................................................................................. *passim*

Fed. R. Civ. P. 42(a) .............................................................................................6, 7

15 U.S.C. § 78u-4(a) et seq............................................................................. *passim*

**Docketed Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    No. 04-cv-08141 (S.D.N.Y.)........................................................................13

*In re Austin Capital Mgmt. Ltd. Sec. and ERISA Litig.*,
    No. 09-md-02075 (S.D.N.Y.) ...............................................................12, 13

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
    No. 08-md-01963 (S.D.N.Y.) ........................................................................13

*In re Fannie Mae 2008 Sec. Litig.*,
    No. 08-cv-07831 (S.D.N.Y.)....................................................................13, 14

*In re Satyam Comput. Servs. Ltd. Sec. Litig.*,
    No. 09-md-02027 (S.D.N.Y.) ........................................................................13

**Other Authorities**

H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730.........2, 3, 12, 13

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679.............................................2, 3

Proposed Lead Plaintiff Local 705 International Brotherhood of Teamsters Pension Fund ("Local 705") respectfully submits this Memorandum of Law pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in support of its motion for the entry of an Order: (i) consolidating the above-captioned actions (the "Action"); (ii) appointing Local 705 as Lead Plaintiff on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired ABIOMED, Inc. ("ABIOMED" or the "Company") securities between November 1, 2018 and July 31, 2019, both dates inclusive (the "Class Period");[1] (iii) approving Local 705's selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel for the Class; and (iv) granting such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

Local 705—a sophisticated institutional investor—respectfully submits that it should be appointed Lead Plaintiff on behalf of all investors who acquired ABIOMED securities during the Class Period (the "Class"), and who were damaged as a result of Defendants' alleged fraud.  The Action alleges violations of Sections 10(b) and 20(a) of the Exchange Act against ABIOMED and certain of its executive officers (collectively, the "Defendants").

The PSLRA requires that the Court appoint the "most adequate plaintiff" to serve as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In that regard, the Court must determine which movant

---

[1]    The class period in the first-filed action (the "*Villare* Action) is January 31, 2019 through July 31, 2019, both dates inclusive.  Less than twenty four hours before the deadline for filing for appointment as Lead Plaintiff in the Action, a substantively similar action was filed expanding the period to that listed above (the "*Barry* Action").  Local 705 is utilizing the period advanced in the *Barry* Action for the limited purpose of calculating financial interest ***only***.  Local 705 reserves the right to contest the period advanced in the *Barry* Action for reasons including, but not limited to, the fact the *Barry* Action was filed on the day of the Lead Plaintiff deadline.

1

has the "largest financial interest" in the relief sought by the Class, and also whether such movant has made a *prima facie* showing that it is a typical and adequate Class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

For the reasons discussed below, Local 705 respectfully submits that it is the "most adequate plaintiff" under the PSLRA and should be appointed Lead Plaintiff. Local 705 incurred losses of **$705,290.63** on its Class Period transactions in ABIOMED securities as calculated on a last-in-first-out ("LIFO") basis.[2] Accordingly, Local 705 has a substantial financial interest in directing this litigation and recovering losses attributable to Defendants' violations of federal securities laws—an interest believed to be greater than that of any other qualified movant.

In addition to asserting a substantial financial interest in this litigation, Local 705 also meets the typicality and adequacy requirements of Rule 23 because: (i) its claims arise from the same course of events as those of the other Class members, (ii) it relies on similar legal theories to prove Defendants' liability, and (iii) it has retained experienced counsel and is committed to vigorously prosecuting the Action. Furthermore, the PSLRA's legislative history shows that a large, sophisticated institutional investor like Local 705 is precisely the type of investor that Congress intended to empower to lead securities class action litigation. *See* H.R. Conf. Rep. No.

---

[2]     A copy of the Certification of Local 705, signed by Jack Witt, as Fund Administrator of Local 705 ("Certification"), is attached as Exhibit A to the Declaration of Francis P. McConville (the "McConville Decl."). Because the *Barry* Action was filed with only hours remaining until the Lead Plaintiff deadline, the Certification only sets forth Local 705's transactions in ABIOMED securities during the shorter class period advanced in the *Villare* Action. Based on counsel's access to Local 705's historic trading data, however, the table reflecting Local 705's loss calculations ("Loss Analysis"), submitted herewith, includes losses and transactions in *both* class periods. *See* McConville Decl. Ex. B. Local 705 will submit an updated certification with full transactions in *Barry* Class Period, as identified in the attached Loss Analysis, in connection with its brief in further support of this Motion.

104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733; S. Rep. No. 104-98, at 6 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 685; *see also Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("the PSLRA was passed . . . to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one") (citation omitted).

Finally, pursuant to the PSLRA, Local 705 respectfully requests that the Court approve the selection of Labaton Sucharow as Lead Counsel for the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("[T]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class"). Labaton Sucharow is a nationally recognized securities class action firm that has recovered billions of dollars for the benefit of injured investors, and has the expertise and resources necessary to handle litigation of this complexity and scale.

Accordingly, Local 705 respectfully requests that the Court appoint it as Lead Plaintiff for the Class and approve its choice of Lead Counsel.

## FACTUAL BACKGROUND

ABIOMED was founded in 1981 and is headquartered in Danvers, Massachusetts. The Company engages in the research, development, and sale of medical devices to assist or replace the pumping function of the failing heart, and also provides continuum of care to heart failure patients.

ABIOMED offers, among other things, catheters and micro heart pumps under the Impella brand with integrated motors and sensors for use in interventional cardiology. The Company sells its products through direct sales and clinical support personnel in the United States, Canada, Europe, and Asia.

On November 1, 2018, ABIOMED issued a press release announcing its financial and operating results for its second quarter of fiscal year 2019 (the "2Q 2019 Press Release").[3] The 2Q 2019 Press Release reported "second quarter fiscal 2019 revenue of $181.8 million, an increase of 37% compared to revenue of $132.8 million for the same period of fiscal 2018." This 37% increase would mark a high-point in ABIOMED's revenue growth which would begin to decline over the Company's following three fiscal quarters.

On January 31, 2019, ABIOMED issued a press release, announcing ABIOMED's financial and operating results for the third quarter of fiscal year 2019 (the "3Q 2019 Press Release"). The 3Q 2019 Press Release reported "third quarter fiscal 2019 revenue of $200.6 million, an increase of 30% compared to revenue of $154.0 million for the same period of fiscal 2018."

Then, on May 2, 2019, Defendants issued a press release announcing ABIOMED's financial and operating results for its fourth quarter and full fiscal year 2019 (the "4Q/FY 2019 Press Release"). The 4Q/FY 2019 Press Release reported "fourth quarter fiscal 2019 revenue of $207.1 million, an increase of 19% compared to revenue of $174.4 million for the same period of fiscal 2018." Despite yet another decrease in revenue growth from the quarter prior, Defendants continued to assure investors that the Company had a plan of action to remediate the negative trend in its financial results moving forward. Based on the Company's corrective action plan, ABIOMED provided fiscal year 2020 guidance for total revenues to be in the range of $900 million to $945 million, an increase of 17% to 23% over the prior year, and GAAP operating margin to be in the range of 29% to 31%.

---

[3]    ABIOMED's fiscal year ends on March 31.

4

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) ABIOMED's revenue growth was in decline; (ii) the Company did not have a sufficient plan in place to stem its declining revenue growth; (iii) the Company was unlikely to restore its revenue growth over the next several fiscal quarters; (iv) consequently, ABIOMED was reasonably likely to revise its full-year 2020 guidance in a way that would fall short of the Company's prior projections and market expectations; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

On August 1, 2019, pre-market, Defendants issued a press release announcing ABIOMED's financial and operating results for the first quarter of fiscal year 2020 (the "1Q 2020 Press Release").  Among other results, the 1Q 2020 Press Release disclosed ABIOMED's third consecutive quarter of slowing revenue growth, reporting "first quarter fiscal 2020 revenues of $207.7 million, an increase of 15.4% compared to revenue of $180.0 million for the same period of fiscal 2019."  This represented a significant decrease in revenue growth from 2Q 2019. Commenting on the Company's surprising financial result disappointment, the Company's Chairman, President and CEO, Defendant Michael R. Minogue, revealed that the Company's "new training programs, organizational changes in distribution, and [] external initiatives . . . will require time to drive more growth in the future."

The Company also slashed its previously issued full-year 2020 guidance from total revenues in the range of $900-945 million to total revenues in the range of $885–925 million, which fell roughly $22 million short of market expectations.

5

Following the Company's disclosure of its 1Q 2020 financial performance and revised guidance, *Investor's Business Daily* published an article raising concern with Defendant Minogue's prior public statements, titled: "This Medtech's CEO Promised To 'Correct The Course' — That Didn't Happen."

On this news, ABIOMED's stock price fell $73.69 per share, or 26.45%, to close at $204.87 per share on August 1, 2019.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages

## ARGUMENT

## I.    THE ACTIONS SHOULD BE CONSOLIDATED

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter [is] filed," the court shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii); *see also Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) ("[T]he Court shall not make the determination of the most adequate plaintiff until after the decision on the motion to consolidate is rendered.") (quotation marks and citation omitted).

Consolidation pursuant to Rule 42(a) is appropriate when actions "involve common questions of law or fact." *Peifa Xu v. Gridsum Holding Inc.*, No. 18 Civ. 3655 (ER), 2018 WL 4462363, at *3 (S.D.N.Y. Sept. 17, 2018) (citation omitted). "A determination on the issue of consolidation is left to the sound discretion of the Court." *Albert Fadem Trust v. Citigroup Inc.*, 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990); *Zicklin v. Breuer*, 534 F. Supp. 745, 749 (S.D.N.Y. 1982)).

"[C]onsolidation is particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and reports." *Lowinger v. Global Cash Access Holdings, Inc.*, No. 08 Cv. 3516 (SWK), 2008 WL 2566558, at *1 (S.D.N.Y. June 26, 2008) (quoting *Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 186 (S.D.N.Y. 2006)). "[S]light differences in the facts alleged and legal issues raised do not preclude consolidation." *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *3 (S.D.N.Y. July 8, 2008).

The Actions are well-suited for consolidation. The complaint filed in each of the Actions alleges that Defendants violated the Exchange Act. Each action sets forth identical allegations relating to similar parties, transactions, and events—primarily Defendants' materially false and misleading statements and omissions concerning the ABIOMED's declining revenue growth. Because consolidation will promote judicial efficiency and conserve the resources of the Class and all other parties, consolidation is appropriate pursuant to Rule 42(a). Accordingly, Local 705 respectfully requests that the Court consolidate the Actions, and any other subsequently-filed action.

## II.   LOCAL 705 SHOULD BE APPOINTED LEAD PLAINTIFF

Local 705 respectfully submits that it should be appointed Lead Plaintiff because it filed the instant motion in a timely manner, has a substantial financial interest in this litigation, and satisfies the typicality and adequacy requirements of Rule 23.

### A.   The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA provides a straightforward, sequential procedure for selecting a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(l); *see also*

15 U.S.C. § 78u-4(a)(3)(B) (setting forth procedure for selecting lead plaintiff).  First, Section

21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –
>
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, pursuant to the PSLRA, a court is to consider any motion made by class members

to serve as Lead Plaintiff and appoint the "most adequate plaintiff."  15 U.S.C. § 78u-

4(a)(3)(B)(i).  In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the

"most adequate plaintiff" is the person or group of persons who: (i) filed a complaint or timely

filed a motion to serve as Lead Plaintiff; (ii) has the largest financial interest in the relief sought

by the class; and (iii) who otherwise satisfies the requirements of Rule 23.  *See* 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(I).  This presumption may be rebutted only by "proof" that the presumptively

most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is

subject to unique defenses that render such plaintiff incapable of adequately representing the

class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Micholle v. Ophthotech Corp.*, No. 17-CV-

210 (VSB), 2018 WL 1307285, at *4 (S.D.N.Y. Mar. 13, 2018).  Under the framework

established by the PSLRA, Local 705 is the most adequate plaintiff and should be appointed

Lead Plaintiff.

### B.    Local 705 Is the "Most Adequate Plaintiff"

#### 1.    Local 705's Motion Is Timely

Local 705 filed this motion to serve as Lead Plaintiff in a timely manner.  Pursuant to

15 U.S.C. § 78u-4(a)(3)(A)(i), the plaintiff in the above-captioned action caused notice regarding

the pending nature of this case to be published on *Globe Newswire,* a widely-circulated, national,

business-oriented news wire service, on August 6, 2019.  *See* Notice, McConville Decl., Ex. C.

Thus, pursuant to the PSLRA, any person who is a member of the proposed Class may apply to

be appointed lead plaintiff within sixty days after publication of the notice, *i.e.*, on or before

October 7, 2019.  Local 705 filed its motion seeking appointment as Lead Plaintiff within this

deadline and thus has satisfied the procedural requirements of the PSLRA.

#### 2.    Local 705 Has a Substantial Financial Interest

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate

plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the

relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii); *Kemp v. Universal Am. Fin. Corp.*,

No. 05 Civ. 9883 (JFK), 2006 WL 1190691, at *2 (S.D.N.Y. May 1, 2006).

Local 705 incurred a substantial loss of **$705,290.63** on its transactions in ABIOMED

securities on a LIFO basis during the Class Period.  *See* Loss Analysis, McConville Decl., Ex. B;

*see also Faig v. Bioscrip, Inc.*, No. 13 Civ. 06922 (AJN), 2013 WL 6705045, at *2 (S.D.N.Y.

Dec. 19, 2013) (finding the movant with the largest financial interest to be the presumptive

"most adequate plaintiff").  Accordingly, Local 705 has a substantial financial interest as a

qualified movant seeking Lead Plaintiff status, and is the presumptive "most adequate plaintiff."

*See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Randall v. Fifth St. Fin. Corp.*, No. 15-cv-7759 (LANK),

2016 WL 462479, at *1 (S.D.N.Y. Feb. 1, 2016) (same).

9

### 3.   Local 705 Satisfies Rule 23's Typicality and Adequacy Requirements

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *In re Third Ave. Mgmt. LLC Sec. Litig.,* No. 16-cv-02758 (PKC), 2016 WL 2986235, at *1 (S.D.N.Y. May 13, 2016).  At the lead plaintiff selection stage all that is required to satisfy Rule 23 is a preliminary showing that the lead plaintiff's claims are typical and adequate.  *See Kux-Kardos v. VimpelCom, Ltd.,* 151 F. Supp. 3d 471, 477 (S.D.N.Y. 2016); *see also Faig*, 2013 WL 6705045, at *3 ("[A]t this stage of the litigation, a moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.") (citation omitted).  Here, Local 705 unquestionably satisfies both requirements.

### a.   Local 705's Claims Are Typical of Those of the Class

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims, and plaintiff's claims are based on the same legal theory.  *See Faig*, 2013 WL 6705045, at *3.  Rule 23 does not require the lead plaintiff to be identically situated with all class members.  *Id.*

Local 705's claims are typical of the claims asserted by the proposed Class.  Like all members of the Class, Local 705 alleges that Defendants made material misstatements and omissions regarding ABIOMED's revenue growth in violation of the federal securities laws. Local 705, as did all of the members of the Class, purchased ABIOMED securities in reliance on Defendants' alleged misstatements and omissions and was damaged thereby.  Because Local 705's claims arise from the same course of events as do the claims of other class members, the typicality requirement is satisfied.  *See Ophthotech*, 2018 WL 1307285, at *6.

10

### b.    Local 705 Satisfies the Adequacy Requirement of Rule 23

Local 705 likewise satisfies the adequacy requirement of Rule 23.  The adequacy of representation requirement of Rule 23(a)(4) is satisfied when a representative party establishes that it "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Courts in this District assess a movant's adequacy based on: "(1) the size, available resources and experience of the proposed lead plaintiff; (2) the qualifications of the proposed class counsel; and (3) any potential conflicts or antagonisms rising among purported class members."  *In re Elan Corp. Sec. Litig*., No. 1:08-cv-08761-AKH, 2009 WL 1321167, at *2 (S.D.N.Y. May 11, 2009) (citing *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig*., No. 08 MDL No. 1963(RWS), 2009 WL 50132, at *8 (S.D.N.Y. Jan. 5, 2009)).

Local 705 will fairly and adequately represent the interests of the proposed Class.  Local 705 unquestionably has resources sufficient to pursue the above-captioned action to a successful conclusion.  Local 705 has also retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, *see infra* Section III, and timely submitted its choice to the Court for approval, in accordance with the PSLRA.  *See* 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (B)(v).

Furthermore, no antagonism exists between Local 705's interests and those of the absent Class members; rather, the interests of Local 705 and Class members are squarely aligned.  Local 705 suffered substantial losses due to Defendants' alleged misconduct and, therefore, has a sufficient interest in the outcome of this case to ensure vigorous prosecution of this action.

Finally, there is no proof that Local 705 is "subject to unique defenses that render such plaintiff incapable of representing the class," because no such proof exists.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Accordingly, Local 705 satisfies the adequacy requirement.

11

### 4. Local 705 Is Precisely the Type of Lead Plaintiff Congress Envisioned When It Passed the PSLRA

In addition to satisfying the requirements of Rule 23, Local 705—a large, sophisticated institutional investor—is precisely the type of investor Congress envisioned, through the enactment of the PSLRA, to encourage to assume a more prominent role in securities litigation. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation. *See id.* at 34-35, *reprinted in* 1995 U.S.C.C.A.N. at 733-34. To this end, many courts, including courts in this District, have recognized that the legislative history reflects a clear preference for institutional investors to be appointed as lead plaintiff in securities class actions. *See, e.g., Reitan v. China Mobile Games & Entm't Grp., Ltd. (China Mobile)*, 68 F. Supp. 3d 390, 396 (S.D.N.Y. 2014) (collecting cases and recognizing that "many courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs"); *In re KIT Dig., Inc. Sec. Litig.*, 293 F.R.D. 441, 446 (S.D.N.Y. 2013) (noting the "statutory preference for institutional lead plaintiffs"); *Ophthotech*, 2018 WL 1307285, at *6 (noting that "courts have a preference for appointing institutional investors as lead plaintiffs").

Local 705 is the paradigmatic lead plaintiff as contemplated by the PSLRA. Local 705's understanding of the responsibilities of a lead plaintiff is based, in part, on its extensive experience serving as lead plaintiff in securities class actions and its demonstrated history of securing recoveries on behalf of defrauded investors, which will benefit the Class. *See In re*

*Austin Capital Mgmt. Ltd. Sec. and ERISA Litig.*, No. 09-md-02075 (S.D.N.Y.) (Local 705 secured a $6.85 million recovery as co-lead plaintiff).

Accordingly, Local 705 has the sophistication and resources necessary to effectively litigate this matter and supervise Class counsel.

### III.  LOCAL 705'S SELECTION OF LEAD COUNSEL MERITS APPROVAL

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001) (stating that "the Reform Act evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention").  Consistent with Congressional intent, a court should not disturb the lead plaintiff's choice of counsel unless it is "necessary to protect the interests of the plaintiff class."  *See* H.R. Conf. Rep. No. 104-369, at 35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 734.

Here, Local 705 has selected the law firm of Labaton Sucharow to represent the Class. Labaton Sucharow has excelled as lead counsel in numerous actions on behalf of defrauded investors, including noteworthy cases in this District.  For example, Labaton Sucharow served as lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-08141 (S.D.N.Y.), in which it achieved a recovery totaling more than $1 billion for injured investors; and secured a $294.9 million recovery in *In re Bear Stearns Cos., Inc. Securities, Derivative, & ERISA Litigation*, No. 08-md-01963 (S.D.N.Y.), in which the Firm served as co-lead counsel. Labaton Sucharow also served as co-lead counsel in *In re Satyam Computer Services Ltd. Securities Litigation*, No. 09-md-02027 (S.D.N.Y.), through which it helped recover from the company and its auditors a total of $150.5 million for class members, and secured a $170 million recovery as co-lead counsel in *In re Fannie Mae 2008 Securities Litigation*, No. 08-cv-07831

13

(S.D.N.Y.).  Labaton Sucharow presently serves as lead or co-lead counsel in several significant investor class actions.  *See* Labaton Sucharow Firm Resume, McConville Decl., Ex. D.

In light of the foregoing, the Court should approve Local 705's selection of Labaton Sucharow as Lead Counsel for the Class.  The Court can be assured that, by approving Local 705's choice of counsel, the Class will receive the highest caliber of representation.

## CONCLUSION

For the foregoing reasons, Local 705 respectfully requests that the Court grant its motion and enter an Order: (i) consolidating the above-captioned actions: (ii) appointing Local 705 as Lead Plaintiff; (iii) approving Local 705's selection of Labaton Sucharow as Lead Counsel for the Class; and (iv) granting such other and further relief as the Court may deem just and proper.

DATED:  October 7, 2019

Respectfully submitted,

*/s/ Francis P. McConville*

Christopher J. Keller
Eric J. Belfi
Francis P. McConville
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
fmcconville@labaton.com

*Counsel for Lead Plaintiff Movant
Local 705 International Brotherhood
of Teamsters Pension Fund, and
Proposed Lead Counsel for the Class*

14