**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KYLE VILLARE, Individually, and On Behalf of All Others Similarly Situated, | No. 1:19-cv-07319-ER |
| Plaintiff, | **BABAK BAMDAD'S OPPOSITION TO COMPLETING LEAD PLAINTIFF MOTIONS** |
| v. | |
| ABIOMED, INC., MICHAEL R. MINOGUE, and TODD A. TRAPP, | |
| Defendants. | |

**FARUQI & FARUQI, LLP**
Richard W. Gonnello
Katherine M. Lenahan
Sherief Morsy
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: rgonnello@faruqilaw.com
  klenahan@faruqilaw.com
  smorsy@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiff Babak*
*Bamdad and [Proposed] Lead Counsel for the*
*putative Class*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 6

I.     THE ORIGINAL CLASS PERIOD SHOULD GOVERN THE COURT'S
       DETERMINATION OF WHICH PLAINTIFF POSSESSES "LARGEST
       FINANCIAL INTEREST" .................................................................................... 8

II.    BAMDAD IS ENTITLED TO BE APPOINTED LEAD PLAINTIFF PURSUANT
       TO THE PSLRA'S "MOST ADEQUATE PLAINTIFF" PRESUMPTION ................... 14

       A.     Bamdad Possesses The Largest Financial Interest In The Litigation ................... 14

       B.     Bamdad Meets Rule 23's Typicality And Adequacy Requirements .................... 16

III.   BAMDAD'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL
       SHOULD BE APPROVED ................................................................................. 18

CONCLUSION .................................................................................................................. 18

Bamdad respectfully submits this memorandum of law in further support of his motion for appointment as Lead Plaintiff pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), and approval of Bamdad's selection of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel, and in opposition to competing motions.[1]

## INTRODUCTION

The following three issues are presently before the Court: (1) whether the above-captioned *Villare* Action should be consolidated with the action captioned *Barry v. ABIOMED, Inc., et al.*, No. 1:19-cv-09258-ER (S.D.N.Y. Oct. 7, 2019) ("*Barry* Action"), which was filed on the same day that lead plaintiff motions were due; (2) which lead plaintiff movant should be appointed as Lead Plaintiff; and (3) whether the duly appointed Lead Plaintiff's proposed selection of Lead Counsel should be approved.

With respect to consolidation, Bamdad does not oppose consolidation of the *Barry* Action and the *Villare* Action because they allege multiple common questions of fact and law and therefore satisfy the governing standard under Rule 42(a).

With respect to Lead Plaintiff appointment, where multiple class members have sought appointment as Lead Plaintiff, Congress has established a rebuttable presumption in favor of appointing the movant who demonstrates the "largest financial interest in the litigation" provided

---

[1]     Unless stated otherwise, the following conventions apply: (1) all ECF references are to the docket captioned *Villare v. ABIOMED, Inc., et al.*, No. 1:19-cv-07319-ER (S.D.N.Y.) ("*Villare* Action"); (2) all defined terms shall have the same meaning as they did in Bamdad's opening brief, *see* ECF No. 21 ("Opening Br."); (3) all ECF pin cites are to the document's native pagination, and if no native pagination is available, ECF pin cites then refer to the ECF-generated pagination; (4) all internal citations and quotations are omitted; and (5) all emphases are added to quotations.

that the movant also makes a *prima facie* demonstration that the movant satisfies Rule 23's

typicality and adequacy requirements for class representatives.  15 U.S.C. § 78u-4(a)(3)(B)(iii).

On October 7, 2019, the following four movants sought appointment as Lead Plaintiff:

(1) Bamdad; (2) Local 705 International Brotherhood of Teamsters Pension Fund ("Local 705");

(3) Joseph Barry ("Barry"); and (4) Terry Council ("Council").[2]

On that same day—and mere hours before expiration of the lead plaintiff deadline—

Barry filed a complaint asserting some of the same allegations found in the *Villare* Action, but

starting the class period three months earlier on November 1, 2018 instead of on January 31,

2019, while using the same July 31, 2019 class period end date ("Expanded Class Period").

*Barry* Action, Class Action Complaint at ¶1, ECF No. 1 ("*Barry* Compl.").

It is indisputable that, based on the *Villare* Action's January 31, 2019 to July 31, 2019

class period ("Original Class Period"), Bamdad possesses the largest financial interest.  Based on

the last-minute claims asserted by Barry in the Expanded Class Period, however, Local 705 will

undoubtedly argue that it possesses the largest financial interest notwithstanding the fact that

Local 705's counsel only learned of the claims asserted in the Expanded Class Period within

hours of the motion deadline and notwithstanding the fact that Local 705 failed to provide any

***admissible evidence*** of Local 705's financial interest (*i.e.*, stock purchases and sales) in the

claims asserted in the Expanded Class Period as well as evidence that Local 705—as

distinguished from its counsel—adopted the Expanded Class Period.

Although courts generally use the longest class period alleged in determining each

movant's financial interest, in order to guard against gamesmanship, courts have the discretion to

---

[2]    On October 18, 2019, Council filed a notice of withdrawal of his lead plaintiff motion. ECF No. 28 at 1.  On October 21, 2019, Barry filed a notice acknowledging that he does not have the "largest financial interest" among the movants, declining to oppose competing movants. ECF No. 30 at 2.

reject expanded class periods when the claims asserted therein are implausible or frivolous.  The claims asserted in the Expanded Class Period by Barry are a textbook example of claims that should be rejected based on the last-minute strategic nature of their filing as well as the weakness of the allegations.

First, the Expanded Class Period's start date of November 1, 2018 is implausible because the *Barry* Complaint does not plausibly allege the falsity of any statement made before January 31, 2019, the start date of the Original Class Period.  That is, the *Barry* Complaint adds statements on November 1, 2018 and November 6, 2018 concerning ABIOMED, Inc.'s ("ABIOMED" or the "Company") ***2Q*** 2019 results, FY ***2019*** guidance, and record revenue.[3] The *Barry* Complaint alleges that these statements were false and/or misleading ***when made*** because they failed to disclose facts ***concerning declining revenue growth from a later time period (ABIOMED's 3Q 2019-1Q 2020), as well as facts concerning ABIOMED's subsequent FY 2020 guidance—which is obviously unrelated to ABIOMED's FY 2019 guidance***.  Consequently, the *Barry* Complaint does not plausibly allege the falsity of any statement made before January 31, 2019, thereby rendering the Expanded Class Period implausible, if not frivolous.

Second, the *Barry* Complaint does not plausibly allege that these additional statements on November 1, 2018 and November 6, 2018 caused investors to suffer any losses.  Loss causation is an essential element of a Section 10(b) Exchange Act claim, and it requires a ***causal connection between defendants' misrepresentations and the loss alleged***.  *See generally Dura*

---

[3]     All references to "1Q," "2Q," and "3Q," are to the first quarter, second quarter, and third quarter, respectively, of the fiscal year indicated.  For example, "2Q 2019" refers to the second quarter of fiscal year 2019.  All references to "FY" are to the fiscal year indicated.  ABIOMED's fiscal year does not conform to the calendar year, and instead begins on April 1st and ends on March 31st.

3

*Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341 (2005).  The only loss causation event alleged in the *Barry* Complaint is the same August 1, 2019 disclosure alleged in the *Villare* Action.  *Villare* Action, Class Action Complaint at ¶42-45, ECF No. 1 ("*Villare* Compl."); *Barry* Compl. ¶¶52-55.  This loss causation event relates solely to the Company's disclosure of its ***third consecutive quarter of declining revenue growth—i.e., 3Q 2019 through 1Q 2020—and ABIOMED's lowering of its FY <u>2020</u> guidance***, ***all of which have nothing to do with the Company's 2Q 2019 revenues or the Company's FY <u>2019</u> guidance***.  In other words, nothing about the August 1, 2019 disclosure and its corresponding stock drop relates in any way to defendants' statements on November 1, 2018 and November 6, 2018; thus, these statements did not cause—and could not have caused—investors losses on August 1, 2019.  Accordingly, the Expanded Class Period should also be rejected because the *Barry* Complaint does not plausibly allege loss causation with respect to statements made before January 31, 2019.

In light of the foregoing, the only logical conclusion is that the Expanded Class Period is a product of gamesmanship.  Indeed, Barry is the only movant who filed a certification with purchases during the expanded portion of the Expanded Class Period, and as a result of his Complaint, Barry increased his losses five-fold from $38,654.42 to $222,251.60.  Local 705 should not be be allowed to be a windfall beneficiary of Barry's chicanery.  Tellingly, Local 705 did not submit a certification listing the shares it purchased or sold in the Expanded Class Period as required by the PSLRA, raising the question of whether Local 705 was even aware of its counsel's last-minute adoption of the Expanded Class Period ***at the time its motion was filed***.

The Court should therefore use the Original Class Period to assess each movant's financial interest, in which case Bamdad clearly possesses the largest financial interest.  That said, even if the Court were to adopt the Expanded Class Period, Bamdad still possesses the

4

largest financial interest because ***Local 705 failed to provide admissible <u>evidence</u> of <u>any</u> losses stemming from the shares it supposedly purchased in the Expanded Class Period as its PSLRA certification only included its trades during the Original Class Period***, ECF No. 15-1.  While Local 705 states that it will file a new certification with transactions in the Expanded Class Period with its opposition brief, any such certification should be rejected as untimely and a blatant attempt to deprive Bamdad of his right to vet Local 705's transactions in conjunction with Bamdad's opposition brief.  In any event, Local 705 offers no authority that permits it to unilaterally decide when it may submit its evidence; to the contrary, the PSLRA contains a strict timeliness requirement for lead plaintiff movants to file their motions and all supporting evidence ***by the statutory lead plaintiff deadline***.  *See* 15 U.S.C. § 78u-4(3)(B)(iii)(I)(aa).

Bamdad is thus entitled to invoke the PSLRA's "most adequate plaintiff" presumption because: (1) he timely moved for appointment as Lead Plaintiff; (2) he possesses the largest financial interest of any class member who sought to be appointed Lead Plaintiff; and (3) he has made a *prima facie* showing that he satisfies the typicality and adequacy requirements of Rule 23(a) as his interests are aligned with the proposed class.  Opening Br. at 6-8.  15 U.S.C. § 78u-4(a)(3)(B)(iii).  Although the presumption is rebuttable, the PSLRA requires "proof" that Bamdad is either inadequate or atypical.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  No such proof exists here.  Therefore, Bamdad should be appointed as Lead Plaintiff.

As for the appointment of Lead Counsel, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the duly appointed Lead Plaintiff is entitled to select, retain, and propose lead counsel for the Class, subject to the Court's approval.  Bamdad seeks to have the Faruqi Firm appointed as Lead Counsel, which is an appropriate choice because the firm has substantial experience and success in litigating complex securities class actions.

Accordingly, Bamdad respectfully requests that the Court grant his motion in its entirety.

## ARGUMENT

The PSLRA directs the Court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i); *see also Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011). The PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the movant who "has the ***largest financial interest*** in the relief sought by the class," and who makes a *prima facie* showing that he satisfies Rule 23's criteria for class representatives. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb), (cc).

First, the Court must "assess who has the largest financial interest in the action." *Foley*, 272 F.R.D. at 127. Second, the Court "must then focus its attention on ***that*** plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Kuriakose v. Fed. Home Loan Mortg. Corp.*, No. 1:08-cv-7281 (JFK), 2008 WL 4974839, at *2 (S.D.N.Y. Nov. 24, 2008) (quoting *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002)) (emphasis in original). Third, "[i]f the plaintiff with the [greatest] financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *Kuriakose*, 2008 WL 4974839, at *2. Once the presumptive lead plaintiff is chosen, other plaintiffs are afforded an opportunity to present ***evidence*** to rebut the presumptive lead plaintiff's Rule 23(a) showing. *Id.* at *3. Mere speculation concerning the plaintiff's adequacy or atypicality is insufficient to rebut the PSLRA's presumption. *See Foley*, 272 F.R.D. at 133.

While the PSLRA does not prescribe the methodology for calculating each movant's financial interest, courts in this Circuit typically look to the following four factors, known as the "Olsten-Lax" factors, in the inquiry: (1) the number of shares purchased by the movant during the class period; (2) the number of net shares purchased by the movant during the class period; (3) the total net funds expended by the movant during the class period; and (4) the approximate losses suffered by the movant. *See id.* at 127-28; *In re GE Sec. Litig.*, No. 09 Civ.1951(DC), 2009 WL 2259502, at *4 (S.D.N.Y. July 29, 2009); *see also In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998). The most critical of the four factors is the approximate losses suffered by the movant. *See, e.g.*, *Peters v. Jinkosolar Holding Co., Ltd.*, No. 11 Civ. 7133(JPO), 2012 WL 946875, at *5 (S.D.N.Y. Mar. 19, 2012) ("It is well settled that '[f]inancial loss, the last factor, is the most important element of the test.'"); *see also In re Millennial Media, Inc. Sec. Litig.*, 87 F. Supp. 3d 563, 569 (S.D.N.Y. 2015) ("Of these factors, courts have consistently held that the fourth, the magnitude of the loss suffered, is most significant."); *In re Braskem S.A. Sec. Litig.*, No. 15 Civ. 5132 (PAE), 2015 WL 5244735, at *4 (S.D.N.Y. Sept. 8, 2015) (collecting cases, and noting that "courts have consistently held that the fourth, the magnitude of the loss suffered, is most significant").

When accounting for approximate losses, courts have repeatedly adopted the last-in, first-out ("LIFO") methodology in order to more accurately reflect the plaintiff's financial interest in the case's outcome. *Foley*, 272 F.R.D. at 129 (applying LIFO and noting that "courts in this district and others have stated a preference for LIFO over FIFO in assessing loss for purposes of the appointment of lead plaintiff"); *Vladimir v. Bioenvision, Inc.*, No. 07 Civ. 6416 (SHS) (AJP), 2007 WL 4526532, at *5 (S.D.N.Y. Dec. 21, 2007) (using LIFO and noting that "FIFO may overstate actual losses suffered by stockholders"); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95,

101 (S.D.N.Y. 2005); ("[M]ore recently, courts have preferred LIFO and have generally rejected FIFO as an appropriate means of calculating losses in securities fraud cases."). Under the LIFO method, the shares that were acquired most recently are assumed to be the first shares sold. *See In re eSpeed*, 232 F.R.D. at 102.[4]

**I.      THE ORIGINAL CLASS PERIOD SHOULD GOVERN THE COURT'S DETERMINATION OF WHICH PLAINTIFF POSSESSES "LARGEST FINANCIAL INTEREST"**

The Court should use the Original Class Period when determining each movant's financial interest because the Expanded Class Period is implausible, if not frivolous, and obviously the product of gamesmanship. While courts generally use the longest class period alleged, "there is a risk . . . to blindly accepting the longest class period without further inquiry, as ***potential lead plaintiffs would be encouraged to manipulate the class period so they ha[ve] the largest financial interest***." *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 434 (S.D. Tex. 2010); *see also Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009) (recognizing that "simply adopting the most inclusive class period might encourage unscrupulous movants to allege longer class periods in an effort to manipulate the lead plaintiff determination"). To guard against gamesmanship, district courts have the discretion to reject longer class periods where they are either implausible, *see In re Centerline Holding Co. Sec. Litig.*, 08 Civ. 505(SAS), 2008 WL 1959799, at *3-4 (S.D.N.Y. May 5, 2008), or "obviously frivolous." *MGIC*, 256 F.R.D. at 625 (adopting "obviously frivolous" test at lead plaintiff stage); *BP*, 758 F. Supp. 2d at 434 (same).

For example, in *Centerline*, the court applied the plausibility standard used in "a motion

---

[4]      Thus, if an investor bought a share for $10, then bought another for $50, and later sold one share for $50, the investor's LIFO loss/gain would be $0 (pairing the $50 share sale with the "last in" $50 share purchase).

to dismiss," where the court "accept[s] the allegations in the Complaint as true as long as the allegations are plausible in light of competing inferences that may be drawn from those same allegations." 2008 WL 1959799, at *3. In its analysis, the court focused exclusively on the allegations in the complaint, finding that while "Centerline could have formulated its restructuring plan as early as December 5, 2006[,] based on the ***factual allegations as pled***, this [was] not ***plausible***." *Id.*; *see also In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2007 WL 680779, at *6 (E.D.N.Y. Mar. 2, 2007) ("In selecting a plaintiff to lead this litigation at this stage of the proceedings, the court can and must only consider the pleadings before it."). As a result, the court rejected using the longer class period to determine who possessed the largest financial interest. 2008 WL 1959799, at *3.

Here, the *Barry* Complaint provides no allegations making it plausible that defendants' statements made on November 1, 2018 or November 6, 2018, which were added in the *Barry* Complaint to expand the Original Class Period, were false and/or misleading when made ***or*** that those statements proximately caused class members losses when the truth was revealed on August 1, 2019. With respect to falsity, the *Barry* Complaint alleges that defendants' statements on November 1, 2018 and November 6, 2018 concerning ABIOMED's ***2Q 2019 results and its FY 2019 guidance*** and record revenue failed to disclose facts centering around ABIOMED's ***subsequent declining revenue growth for 3Q 2019 through 1Q 2020 and ABIOMED's subsequent FY 2020 guidance***. *See Barry* Compl. ¶¶25-35, 51. These allegations make no sense given the temporal disparities.

More specifically, the *Barry* Complaint alleges the following November 1, 2018 and November 6, 2018 statements discussing 2Q 2019 results and FY 2019 guidance as false and/or misleading:

- "The 2Q 2019 Press Release reported '*second quarter fiscal 2019* revenue of $181.8 million, an increase of 37% compared to revenue of $132.8 million for the same period of fiscal 2018.'" *Id.* ¶25.

- "The 2Q 2019 Press Release touted *'[r]ecord [r]evenue'* in the title and Defendant Minogue was quoted as saying, 'We are executing our plan for sustainable growth while helping to improve patient outcomes focused on native heart recovery.'" *Id.* ¶27.

- "In the 2Q 2019 Press Release, the Company announced that it was increasing its *financial guidance for fiscal year 2019*: 'The Company is again increasing the low end of its fiscal year 2019 revenue guidance[.]'" *Id.* ¶27.

- "Abiomed is positioned for sustainable growth and building the field of heart recovery with disciplined execution" and "we are executing our plan for sustainable growth[.]" *Id.* ¶28.

- "Defendant Minogue also told investors that the Company was 'following our Impella adoption formula of training, data and time' and 'improving training and education[.]'" *Id.* ¶29.

- "Given our execution and a strong first half performance, we are, again, raising the low end of our full year revenue guidance by $10 million[.] . . . We expect to see solid growth *in the second half [of 2019.]*" *Id.* ¶30.

- "Defendant Trapp also told investors the Company was 'well positioned to *deliver our plan for 2019* and beyond.'" *Id.* ¶31.

- ¶¶32-34 of the *Barry* Complaint list pages-long block quotes from the Company's 10-Q for the same quarter filed on November 6, 2018 discussing the Company's revenues for the second quarter.

The *Barry* Complaint alleges that the foregoing statements were false and/or misleading because defendants failed to disclose the following same four undisclosed facts that the *Villare* Complaint alleges rendered the statements made in the Original Class Period false or misleading: (1) ABIOMED's ***revenue growth was in decline***; (2) ABIOMED did not have a sufficient plan to stem its ***declining revenue growth***; (3) ABIOMED was unlikely to ***restore its revenue growth*** over the next several fiscal quarters; and (4) consequently, ABIOMED was reasonably likely to revise its ***FY 2020 guidance, even though ABIOMED did not issue its FY 2020 guidance until May 2, 2019—midway through the Original Class Period.*** *Barry* Compl. ¶¶42-44, 51; *see also Villare* Compl. ¶¶34, 41.

Based on the Barry Complaint's allegations, ***none of these undisclosed facts*** render any November 1, 2018 or November 6, 2018 statement untrue or are put into play by defendants such that nondisclosure of these facts would render the statements misleading ***when made***. With respect to the first three omissions centering around declining revenue growth, stemming that decline, and restoring revenue growth, these omissions do not render the November 1, 2018 and November 6, 2018 statements untrue ***because—as the Barry Complaint alleges—the Company's revenue growth was at a "high-point,"*** *i.e.*, revenue growth did not decline for the second quarter fiscal 2019. *Id.* ¶25. As well, the first three omissions do not render these statements misleading because the three omissions relating to declining revenue growth in 3Q 2019 through 1Q 2020 are not put into play by the November 1, 2018 and November 6, 2018 statements which concerned 2Q 2019 revenues. *See Id.* ¶¶25, 36.

With respect to the fourth omission concerning FY 2020 guidance, this omission cannot possibly render the November 1, 2018 and November 6, 2018 statements false or misleading because FY 2020 guidance was not issued until May 2, 2019, seven months later. *See Id.* ¶¶6,

11

25-35, 42.  Thus, the *Barry* Complaint "fails to allege any facts whatsoever that would support an inference that these statements were false [or misleading] **when made**" on November 1, 2018 or November 6, 2018.  *Centerline*, 2008 WL 1959799, at *3 (rejecting longer class period because while "Centerline could have formulated its restructuring plan as early as December 5, 2006[,] . . . based on the factual allegations **as pled**, this is not plausible").  As a result, the Expanded Class Period should be rejected as implausible or frivolous.

Additionally, the *Barry* Complaint fails to plausibly allege that any statements made on November 1, 2018 and November 6, 2018 caused class members losses.  Loss causation is a "basic element" of a Section 10(b) Exchange Act claim, which requires a plaintiff to plead a "causal connection between the material misrepresentation and the loss."  *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341 (2005).  The *Barry* Complaint, like the *Villare* Complaint, alleges only one loss causation event that occurred on August 1, 2019, when the Company disclosed its "third consecutive quarter of slowing revenue growth" in the first quarter of fiscal 2020—*i.e.*, from **3Q 2019** onward—and slashed its previously issued **FY 2020 guidance, <u>not</u> the Company's 2Q 2019 revenues or the Company's FY 2019 guidance**.  *Barry* Compl. ¶52; *see also Villare* Compl. ¶42.  As a result of this news, ABIOMED's stock dropped $73.69 per share, or 26.45%, to close at $204.87 per share on August 1, 2019.  *Barry* Compl. ¶¶52-55; *see also Villare* Compl. ¶42-45.  Nothing about this disclosure and subsequent stock drop relates in any way to defendants' statements on November 1, 2018 and November 6, 2018.  Thus, the Expanded Class Period should be rejected for the separate reason that it is implausible if not frivolous to allege that the November 1, 2018 and November 6, 2018 statements caused class members' losses on August 1, 2019.  *See Maliarov v. Eros Int'l PLC*, No. 15-CV-8956 (AJN), 2016 WL 1367246, at *3 (S.D.N.Y. Apr. 5, 2016) (rejecting movant's losses based on

12

"eleventh hour" complaint because it failed to "allege facts in support of his leakage theory to establish loss causation prior to October 30, 2015"); *Ark. Teacher Ret. Sys. v. Insulet Corp.*, 177 F. Supp. 3d 618, 623 (D. Mass. 2016) ("Alaska Electrical has not explained, let alone proven, how the earlier statements alleged in the Murphy and Burns complaints caused additional losses to any class members.").

By rejecting the Expanded Class Period, the Court would guard against the gamesmanship in and resulting from the filing of the *Barry* Complaint. It is obvious that Barry's complaint was a blatant attempt to manipulate the class period to ensure Barry had the largest financial interest, as evidenced by the fact that Barry's losses increase more than ***five-fold*** under the Expanded Class Period. *See* ECF No. 18-3 at 2 (listing losses of $222,251.60); *infra* § II.A (losses of $38,654.42 under Original Class Period). Barry is ***the <u>only</u> movant*** who filed a PSLRA certification listing trades in the Expanded Class Period. *Compare* ECF No. 18-2 at 3 (Barry's certification listing transactions exclusively in the Expanded Class Period), *with* ECF Nos. 11-2, 15-1, 22-2 (the remaining movant's certifications). Barry also signed his certification on October 4, 2019 authorizing the filing of the *Barry* Complaint, but waited to file it ***hours before the Lead Plaintiff deadline on October 7, 2019***. Thus, the Expanded Class Period cannot be viewed as anything but an attempt to "get [Barry] into the game when time was expiring." *Gutman v. Sillerman*, 15 Civ. 7192 (CM), 2015 U.S. Dist. LEXIS 179553, at *10 (S.D.N.Y. Dec. 8, 2015); *see also Eros*, 2016 WL 1367246, at *4 (rejecting lead plaintiff movant who filed "eleventh hour" complaint as inadequate due to gamesmanship).

In the same vein, Local 705 should not be permitted to benefit from Barry's gamesmanship by relying on the Expanded Class Period to provide it a windfall for its lead plaintiff application. Local 705's motion relies on the Expanded Class Period, ECF Nos. 14 at 9,

13

but tellingly Local 705 failed to file a sworn certification listing its trades in the Expanded Class Period, because as of the morning lead plaintiff motions were due Local 705 had no intention of asserting claims in the Expanded Class Period and had not authorized its counsel to do so.  *See* ECF No. 15-1.  It is therefore questionable that Local 705 knew of the Expanded Class Period when its counsel filed a motion on its behalf, let alone adopted it.  In fact, Local 705 acknowledges that the *Barry* complaint was filed with "***only hours remaining until the Lead Plaintiff deadline***," rendering it unlikely that Local 705 had authorized its counsel's decisions.

Accordingly, the Court should use the Original Class Period to determine which movant possesses the "largest financial interest."

## II.    BAMDAD IS ENTITLED TO BE APPOINTED LEAD PLAINTIFF PURSUANT TO THE PSLRA'S "MOST ADEQUATE PLAINTIFF" PRESUMPTION

### A.    Bamdad Possesses The Largest Financial Interest In The Litigation

As illustrated in the following chart listing the movants' financial interests in the Original Class Period, ***Bamdad possesses the largest financial interest when measured under all four Olsten-Lax factors***:

| Movant | Total Shares Purchased | Net Shares Purchased | Net Funds Expended | Approx. LIFO Losses |
|---|---|---|---|---|
| **Babak Bamdad** | **5,350** | **4,350** | **$1,399,578.73** | **$581,516.80** |
| Local 705 | 3,143 | 2,976 | $1,001,655.04 | $441,987.85 |
| Barry | 627 | 627 | $156,568.17 | $38,654.42 |
| Council | 600 | 600 | $159,207.90 | $45,133.20 |

That said, even if the Court were to evaluate the movants' financial interest under the Expanded Class Period, Bamdad would still possess the largest financial interest of the movants because Local 705 failed to provide ***admissible evidence*** of any losses it incurred as a result of the Expanded Class Period, as the only support for Local 705's losses in the Expanded Class

14

Period is the inadmissible attorney hearsay contained in footnote 2 of Local 705's memorandum of law. *See* ECF No. 14 at 2 n.2 ("Based on counsel's access to Local 705's historic trading data, however, the table reflecting Local 705's loss calculations ("Loss Analysis"), submitted herewith, includes losses and transactions in both class periods."). In light of the failure to provide admissible evidence of Local 705's losses in the Expanded Class Period, those losses should not count towards Local 705's financial interest, and thus Local 705 has only established losses of $441,987.85, *see* ECF No. 15-1, which are less than Bamdad's losses. *See Tomaszewski v. Trevena, Inc.*, 383 F.Supp.3d 409, 414 (E.D. Pa. 2019) ("***Sworn declarations are integrict** to the PSLRA process*, *as they assure district courts that the proposed plaintiff (1) has suffered financial harm[.]*"); *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1319-20 (N.D. Ala. 2000) ("Only those plaintiffs who satisfy the certification requirement of the subsection can serve as lead plaintiff [because] the certification requirement forms the baseline for any party seeking to act as lead plaintiff[.]"); *accord Iriving Firemen's Relief and Ret. Fund v. Tesco PLC*, No. 14 Civ. 8495(RMB), 2015 WL 1345931, at *3 (S.D.N.Y. Mar. 19, 2015) (rejecting movant with discrepancies in certification as inadequate because the court was "unable to verify its claimed losses"). Thus, based on ***admissible evidence***, Bamdad still possesses the largest financial interest if the Court adopts the Expanded Class Period.

Furthermore, Local 705 is bound by the sworn certification filed ***with its motion***. Should Local 705 submit belated evidence of its losses based on the Expanded Class Period, that evidence must be rejected as untimely under the PSLRA. *See Skwortz v. Crayfish Co.*, No. 00 CIV. 6766(DAB), 2001 WL 1160745, *5 (S.D.N.Y. Sept. 26, 2001) (holding that the PSLRA's 60-day lead plaintiff motion deadline is "mandatory" and refusing to consider a party who filed one day late); *Darwin v. Taylor*, No. 12-cv-01038-CMA, 2012 WL 5250400, at *6 (D. Colo.

15

Oct. 23, 2012) (rejecting "new certificate to correct [] actual losses" and noting that "[i]n situations such as the one presented here, allowing claimed losses to be based on transactions disclosed after the 60–day deadline could similarly produce prolonged briefing and delay"); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 455 (S.D. Tex. 2002) (supplemental motion untimely because it was filed after PSLRA deadline); *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 142 (S.D.N.Y. 2007) ("[C]ourts have strictly construed this time limitation and found those motions for appointment as lead plaintiff filed outside of the sixty-day window to generally be time-barred."). Indeed, to permit Local 705 to provide an amended certification "in connection with its brief in further support of this Motion," ECF No. 14 at 2 n.2, would deprive Bamdad the fourteen days to which he is entitled to vet Local 705's papers. *See* Local Rule 6.1 (b)(2); *see also Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 620 (S.D.N.Y. 2015) (Ramos, J.) (rejecting consideration of post-deadline complaint because it prejudiced movants "who filed their motions to serve as lead plaintiff in reliance on the Complaint as it was filed").

Therefore, Bamdad has the largest financial interest in the litigation, and he is presumed to be the "most adequate plaintiff" so long as he made a *prima facie* evidentiary showing that he otherwise satisfies Rule 23's requirements for class representatives. *See Varghese v. Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 397 (S.D.N.Y. 2008).

**B.      Bamdad Meets Rule 23's Typicality And Adequacy Requirements**

Having established that he possesses the largest financial interest, Bamdad is entitled to invoke the most adequate plaintiff presumption because he made a *prima facie* showing that he satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *In re eSpeed*, 232 F.R.D. at 98-99 ("The lead plaintiff determination does not depend on the court's judgment of which party would be

16

best lead plaintiff for the class, but rather which candidate fulfil[l]s the requirements of the Act."); *Khunt v. Alibaba Group Holding Ltd.*, 102 F. Supp. 3d 523, 536 (S.D.N.Y. 2015) ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.").

As evidenced by his certification (ECF No. 22-2), Bamdad's claims are typical of the Class's claims because he acquired ABIOMED common stock at prices that were artificially inflated by the defendants' misconduct, and suffered related losses.  *See Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 191 (S.D.N.Y. 2008) (finding movant adequate where he "indicated in his certification his willingness to serve as Lead Plaintiff"); *Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*, No. CV 09-3007 (SJF) (AKT), 2010 WL 3924862, at *5 (E.D.N.Y. Aug. 17, 2010) ("Pompano meets this requirement because Pompano, like the other purported class members in this action, alleges that it purchased or otherwise acquired Comtech stock during the class period at artificially inflated prices in reliance upon Defendants' misrepresentations in violation of the Exchange Act, and also that it incurred damages as a result.").

Additionally, Bamdad demonstrated that he satisfies Rule 23's adequacy requirement by moving for Lead Plaintiff, filing the requisite certification, and selecting counsel—the Faruqi Firm—with the requisite skills, experience, and competence to prosecute the Action vigorously and efficiently in the best interests of the Class.  *See Kokkinis v. Aegean Marine Petroleum Network, Inc.*, No. 11 Civ. 0917 (BSJ) (JCF), 2011 WL 2078010, at *2-3 (S.D.N.Y. May 19, 2011) (movant's certification evidenced adequacy to serve as lead plaintiff); *In re GE*, 2009 WL 2259502, at *5; *see* ECF Nos. 22-3, 22-4.

17

Consequently, Bamdad is the presumptive Lead Plaintiff. In order to overcome the strong presumption in favor of appointing Bamdad as Lead Plaintiff, the PSLRA requires "proof" that Bamdad is either inadequate or atypical to serve as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof exists here. Therefore, Bamdad should be appointed as Lead Plaintiff for the Action.

## III.    BAMDAD'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiff is entitled to select and retain Lead Counsel for the putative Class, subject to the Court's approval. *See In re Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583 (WHP), 2006 WL 991003, at *6 (S.D.N.Y. Apr. 17, 2006) ("The court should generally employ a deferential standard in reviewing the lead plaintiff's choice[]."). Bamdad has selected the Faruqi Firm to be Lead Counsel. The Faruqi Firm is a minority-owned and woman-owned law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. *See* Opening Br. at 8-10; ECF No. 22-4. Accordingly, Bamdad respectfully requests that the Court approve Bamdad's selection of the Faruqi Firm as Lead Counsel.

## CONCLUSION

Given that Bamdad has the largest financial interest in the litigation, satisfies Rule 23's typicality and adequacy requirements, and has selected and retained skilled counsel, Bamdad respectfully submits that his motion should be granted in its entirety.

Dated: October 21, 2019                     Respectfully submitted,


                                            By: */s/ Richard W. Gonnello*
                                                 Richard W. Gonnello


18

Richard W. Gonnello
Katherine M. Lenahan
Sherief Morsy
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: rgonnello@faruqilaw.com
        klenahan@faruqilaw.com
        smorsy@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiff Babak Bamdad and [Proposed] Lead Counsel for the putative Class*

19