**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KYLE VILLARE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ABIOMED, INC., MICHAEL R. MINOGUE, and TODD A. TRAPP,<br><br>Defendants. | No. 1:19-cv-07319-ER<br><br>Judge Edgardo Ramos<br><br><u>CLASS ACTION</u><br><br><br><br><u>ORAL ARGUMENT REQUESTED</u> |
| JOSEPH BARRY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ABIOMED, INC.; MICHAEL R. MINOGUE; and TODD A. TRAPP,<br><br>Defendants. | No. 1:19-cv-09258-ER |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION**
**OF LOCAL 705 INTERNATIONAL BROTHERHOOD OF TEAMSTERS**
**PENSION FUND FOR CONSOLIDATION, APPOINTMENT AS LEAD**
**PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL;**
**<u>AND IN OPPOSITION TO ALL COMPETING MOVANTS</u>**

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ...................................................................................................................... 3

I.      BAMBAD IS INADEQUATE TO REPRESENT THE CLASS ...................................... 3

II.     LOCAL 705 IS THE PRESUMPTIVE LEAD PLAINTIFF ............................................. 6

      A.      The Actions Should be Consolidated and the Extended Class Period
            Advanced in the *Barry* Action Controls ................................................................... 6

      B.      Local 705 Has the Largest Financial Interest and Otherwise Satisfies the
            Adequacy and Typicality Requirements of Rule 23 ............................................... 9

CONCLUSION ................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
    258 F.R.D. 260 (S.D.N.Y. 2009) ........................................................................................8

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ............................................................................................6

*CE Design Ltd. v. King Architectural Metals, Inc.*,
    637 F.3d 721 (7th Cir. 2011) ............................................................................................3

*In re CMED Sec. Litig.*,
    No. 11 Civ. 9298 (KBF), 2012 WL 1118302 (S.D.N.Y. Apr. 2, 2012) ...................................8

*Cohen v. Beneficial Indus. Loan Corp.*,
    337 U.S. 541 (1949)...........................................................................................................3

*Glauser v. EVCI Ctr. Colls. Holding Corp.*,
    236 F.R.D. 184 (S.D.N.Y. 2006) .....................................................................................10

*Glavan v. Revolution Lighting Techs., Inc.*,
    No. 19-CV-0908 (JPO), 2019 WL 3406582 (S.D.N.Y. July 29, 2019)..............................9, 10

*Hom v. Vale, S.A.*,
    No. 15-cv-9539-GHW, 2016 WL 880201 (S.D.N.Y. Mar. 7, 2016)........................................8

*Horowitz v. SunEdison, Inc.*,
    No. 4:15 CV 1769 RWS, 2016 WL 1161600 (E.D. Mo. Mar. 24, 2016)..................................8

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2007) .........................................................................................7

*Kline v. Wolf*,
    88 F.R.D. 696 (S.D.N.Y.1981*), aff'd* 702 F.2d 400 (2d Cir. 1983)........................................3

*In re Network Assocs., Inc. Sec. Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) ...............................................................................5

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) .........................................................................................3

*Peifa Xu v. Gridsum Holding Inc.*,
    No. 18 CIV. 3655 (ER), 2018 WL 4462363 (S.D.N.Y. Sept. 17, 2018) ..................................7

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) ...................................................................................3

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
    256 F.R.D. 620 (E.D. Wis. 2009) .................................................................................8

*In re Ply Gem Holdings, Inc., Sec. Litig.*,
    2014 WL 12772081 (S.D.N.Y. Oct. 14, 2014) ...........................................................10

*Shanawaz v. Intellipharmaceutics Int'l Inc.*,
    No. 17-CV-5761 (JPO), 2017 WL 5633168 (S.D.N.Y. Nov. 21, 2017) .....................9

*In re Surebeam Corp. Sec. Litig.*,
    No. 03 CV 1721JM(POR), 2004 WL 5159061 (S.D. Cal. Jan. 5, 2004).....................3

*Turner v. ShengdaTech, Inc.*,
    No. 11 Civ. 1918 (TPG), 2011 WL 6110438, 3 (S.D.N.Y. Dec. 6, 2011) .................8

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008)..........................................................................9

*Villella v. Chem. & Mining Co. of Chile Inc.*,
    No. 15 CIV. 2106 (ER), 2015 WL 6029950 (S.D.N.Y. Oct. 14, 2015) ......... *passim*

*Xianglin Shi v. Sina Corp.*,
    No. 05 CIV. 2154 (NRB), 2005 WL 1561438 (S.D.N.Y. July 1, 2005) ...........2, 3, 5

## Rules & Statutes

Fed. R. Civ. P. 23.......................................................................................... *passim*

Fed. R. Civ. P. 42.......................................................................................................6

15 U.S.C. § 78u-4 *et seq.* ............................................................................ *passim*

## Other Authorities

H.R. Conf. Rep. No. 104-369, *reprinted in* 1995 U.S.C.C.A.N. 730. ..........................10

Proposed Lead Plaintiff Local 705 respectfully submits this memorandum in further support of its motion for consolidation of the above-captioned actions, appointment as Lead Plaintiff, and approval of Labaton Sucharow as Lead Counsel for the Class (ECF No. 12),[1] and in opposition to all competing lead plaintiff motions.[2]

## PRELIMINARY STATEMENT

Local 705 should be appointed Lead Plaintiff because it has the "largest financial interest" in this litigation of any movant capable of making the requisite showing of typicality and adequacy under the PSLRA.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  With losses of $705,291—***more than $100,000 larger*** than the losses claimed by Bamdad—Local 705 is the presumptive Lead Plaintiff in the controlling class period advanced in the *Barry* Action.[3]

Apart from Local 705's mandatory Lead Plaintiff appointment under PSLRA jurisprudence, Bamdad's motion should be denied on independent grounds.  In moving for appointment as Lead Plaintiff, Mr. Babak Bamdad, the only remaining competing movant, asks the Court to entrust the interests of absent Class members to an individual investor responsible for the illegal black market distribution of thousands of prescription pain pills such as OxyContin and Percocet.  Specifically, on October 20, 2009, Bamdad, then a licensed pharmacist, was arrested in connection with the takedown of a major criminal narcotics network in Hudson County, New Jersey, and later charged with Health Care Claims Fraud in the Second Degree and

---

[1] All definitions and abbreviations used herein remain unchanged from Local 705's previous submission before the Court.  *See* ECF Nos. 12–15.

[2] The other lead plaintiff motions were filed by: (i) Babak Bamdad ("Bamdad") (ECF No. 20); (ii) Joseph Barry ("Barry") (ECF No. 16); and (iii) Terry Council ("Council") (ECF No. 9). Subsequent to the filing of their lead plaintiff motions, both Council and Barry withdrew their motions on October 18, 2019 and October 21, 2019, respectively.  *See* ECF Nos. 28, 30.

[3] The *Villare* Action asserts a class period of January 31, 2018 through July 31, 2019, inclusive (the "Initial Class Period"), while the *Barry* Action asserts a slightly longer class period of November 1, 2018 through January 31, 2019, inclusive (the "Expanded Class Period").

Medicaid Fraud in the Third Degree, in violation of N.J.S.A. 2C:21-4.3 and N.J.S.A. 30:4D-17. Bamdad eventually pled guilty to the latter charge, had his license as a pharmacist revoked in the State of New Jersey, and was sentenced to six months incarceration, three years of probation, and ordered to pay significant restitution.

In the press release announcing Bamdad's sentencing, New Jersey officials underscored the gravity of Bamdad's crime, noting that "[a]buse of the Medicaid Program and insurance fraud by persons who hold professional licenses are particularly disturbing crimes. . . . Not only do such Medicaid fraud schemes involve theft of tax dollars, they also represent a theft from a program designed to assist persons who cannot afford health insurance or health care services." Supplemental Declaration of Francis P. McConville ("Supp. McConville Decl.") Ex A.  Simply put, Mr. Bamdad's prior criminal conduct unequivocally disqualifies his application to serve as a fiduciary to the Class in this Action.  *See Xianglin Shi v. Sina Corp.*, No. 05 CIV. 2154 (NRB), 2005 WL 1561438, at *4 (S.D.N.Y. July 1, 2005) (proposed lead plaintiff inadequate as "a convicted felon who pled guilty in 1995 to providing false information to a financial institution.").

In contrast, Local 705—the only remaining applicant for appointment as Lead Plaintiff in this litigation—is a transparent and experienced fiduciary with an unblemished track record of successfully resolving securities class actions.  Local 705 is therefore the only Lead Plaintiff candidate who also satisfies the typicality and adequacy requirements under Rule 23 and the PSLRA.  As such, Local 705 is the "presumptive Lead Plaintiff" and respectfully requests the Court appoint it Lead Plaintiff, ensuring that the interests of the Class will be protected by a proven fiduciary and experienced institutional investor capable of vigorously pursuing a recovery on its behalf.

2

## ARGUMENT

### I.    BAMBAD IS INADEQUATE TO REPRESENT THE CLASS

"A class representative, once designated by the Court, is a fiduciary for the absent class members." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998); *see also Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949) (class representative is a volunteer who assumes position of fiduciary nature); *Kline v. Wolf*, 88 F.R.D. 696, 700 (S.D.N.Y. 1981*), aff'd* 702 F.2d 400 (2d Cir. 1983) (class representative serves as fiduciary to advance and protect interests of those whom they purport to represent).  Therefore, "honesty and trustworthiness are relevant factors in assessing a candidate's ability to serve as an adequate fiduciary for a class" *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 416 (S.D.N.Y. 2004) (citing *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998); *Kline*, 88 F.R.D. at 403)).[4]  "As such, convictions of fraud or other forms of dishonesty undermine the qualifications of a potential class representative . . . .  For this reason, numerous courts have rejected the appointment of convicted felons as class representatives." *Sina Corp.*, 2005 WL 1561438, at *4 (collecting cases).[5]

Mr. Bamdad's criminal history should outright disqualify his application for lead plaintiff in this Action.  On October 20, 2009, Bamdad, a licensed pharmacist, was arrested in connection with "the takedown of a major criminal narcotics network in Hudson County [New Jersey] that was responsible for the black market distribution of thousands of prescription pain pills such as

---

[4] *See also CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) ("A named plaintiff who has serious credibility problems or who is likely to devote too much attention to rebutting an individual defense may not be an adequate class representative.").

[5] *See also In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721JM(POR), 2004 WL 5159061, at *7 (S.D. Cal. Jan. 5, 2004) ("courts have found that an individual is an inadequate lead plaintiff due to unrelated misconduct which implicates the individual's ability to serve as a fiduciary." ).

3

OxyContin and Percocet." *See* Supp. McConville Decl. Ex. B.  In connection with the illegal opioid distribution ring, Bamdad was charged with Health Care Claims Fraud in the Second Degree and Medicaid Fraud in the Third Degree, in violation of N.J.S.A. 2C:21-4.3 and N.J.S.A. 30:4D-17, for supplying its members with prescription painkillers undetected by the New Jersey authorities.  *See* Supp. McConville Decl. Exs. B, C.  In order to effectuate this scheme, Bamdad exchanged the narcotics for cash and "billed Medicaid and private insurers for [] non-narcotic prescriptions without ever dispensing the medications."  Supp. McConville Decl. Ex. B.

Bambad pled guilty to Third Degree Medicaid Fraud on June 1, 2010, a crime punishable with incarceration of up to five years.  *See* Supp. McConville Decl. Exs. C, D.  In addition, pursuant to a Consent Order with the New Jersey State Board of Pharmacy dated June 9, 2010, Bamdad had his license as a pharmacist revoked for "the use or employment of dishonesty, fraud, deception, misrepresentation, false promise or false pretense," "professional or occupational misconduct," and "in that the crime of which [he] was convicted are crimes of moral turpitude and/or relate adversely to the practice of pharmacy."  Supp. McConville Decl. Ex. C.

On August 18, 2010, Bamdad was sentenced to six months incarceration, three years of probation, and "ordered to pay restitution in the amount of $10,000 to the Jersey City Police Department and a $30,000 civil penalty to the New Jersey Division of Medical Assistance and Health Services."  Supp. McConville Decl. Ex. A.  In the press release announcing the sentencing, New Jersey officials stated the gravity of Bamdad's crime:

> "Abuse of the Medicaid Program and insurance fraud by persons who hold professional licenses are particularly disturbing crimes," said Acting Insurance Fraud Prosecutor Dagli. "Not only do such Medicaid fraud schemes involve theft of tax dollars, they also represent a theft from a program designed to assist persons who

> cannot afford health insurance or health care services. Such cases are a priority for the Office of the Insurance Fraud Prosecutor."

*Id.*   Based on his past conviction for defrauding New Jersey taxpayers, harm to Medicaid recipients, as well as his contribution to the opioid crisis in this country, Bamdad should not be entrusted with the role of fiduciary to the Class.  In fact, Bamdad's prior criminal conviction not only makes him an inadequate lead plaintiff under Rule 23, ***but perhaps the least adequate representative of any investor in the Class***.  Bamdad fails to even address concerns surrounding his prior criminal conduct in his opening papers or subsequent communications with Local 705's counsel, which were made in a good faith and transparent attempt to properly identify the movant before the Court.[6]

Judge Buchwald's opinion in *Xianglin Shi v. Sina Corp.* is instructive.  In *Sina Corp.*, Judge Buchwald found an entire proposed lead plaintiff group improper, in part, because of the past misconduct of one of its members.  *See Sina Corp.*, 2005 WL 1561438, at \*4–5. Specifically, the group member in question was "a convicted felon who pled guilty in 1995 to providing false information to a financial institution.  As a result of this plea, [the movant] was sentenced to three years of probation, and five months of community confinement."  *Id.*  This past conviction, according to Judge Buchwald, was fatal to a finding of adequacy to the ***entirety*** of the proposed lead plaintiff group.  *Id.*; *see also In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999) (holding a presumptive lead plaintiff inadequate due to an unrelated fraud investigation).  The facts here are remarkably similar.  Bamdad pled guilty to

---

[6] Counsel for Local 705 attempted to confirm Bamdad's identity by sending the attached letter, dated October 17, 2019, to counsel for Bamdad.  *See* Letter to Bamdad's Counsel, McConville Decl. Ex. E.  As of the time of this filing, however, counsel for Bamdad has refused to comply with Local 705's request, and as a result, Local 705 operates under the assumption that the Mr. Babak Bamdad identified in the October 17, 2019 letter is, in fact, the movant before the Court in this Action.

fraud ten years ago, and as a result of this plea was sentenced to incarceration, probation, and ordered to pay a substantial fine.

Accordingly, Bamdad's criminal convictions for fraud unequivocally render him inadequate for the role of Lead Plaintiff, a fiduciary for the Class, and are *per se* disqualifying. Bamdad's motion should be denied.

## II.     LOCAL 705 IS THE PRESUMPTIVE LEAD PLAINTIFF

Because movant Bamdad is an inadequate lead plaintiff candidate by virtue of his prior Medicaid fraud conviction, Local 705, as the only remaining lead plaintiff movant, is the presumptive Lead Plaintiff.  However, even if Bamdad's criminal history does not definitively disqualify his motion (which it does), Local 705 is the presumptive Lead Plaintiff under the longer, more inclusive Expanded Class Period advanced in the *Barry* Action, with losses of $705,291—***more than $100,000 larger*** than the losses claimed by Bamdad.  Local 705 additionally more than satisfies the adequacy and typicality requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The sequential lead plaintiff review process set forth by the PSLRA therefore mandates Local 705's appointment.  *See In re Cavanaugh*, 306 F.3d 726, 729–30 (9th Cir. 2002) (discussing three-step competitive process for selecting a lead plaintiff).

### A.     The Actions Should be Consolidated and the Extended Class Period Advanced in the *Barry* Action Controls

After review of the Expanded Class Period, Local 705 respectfully submits that the *Barry* Action should be consolidated with the *Villare* Action.  Both actions advance identical theories, under the same causes of action, and rely on substantially the same statements and same corrective disclosure.  This Court has previously held that when two or more actions are "substantially the same," *i.e.* presenting common questions of law and fact, consolidation under Rule 42 is proper.  *See Villella v. Chem. & Mining Co. of Chile Inc.*, No. 15 CIV. 2106 (ER),

6

2015 WL 6029950, at *4 (S.D.N.Y. Oct. 14, 2015) (Ramos, J.).  Indeed, "actions need not be 'identical' to allow for consolidation." *Peifa Xu v. Gridsum Holding Inc.*, No. 18 CIV. 3655 (ER), 2018 WL 4462363, at *2 (S.D.N.Y. Sept. 17, 2018) (Ramos, J.) (quoting *Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d, 390, 394 (S.D.N.Y. 2014)).  On this point, "[d]ifferences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation." *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007).  Therefore, "[c]ourts in this district '*routinely* consolidate securities class actions arising from the same allegedly actionable statements,' as do the instant two actions." *Gridsum Holding Inc.*, 2018 WL 4462363, at *2 (emphasis added) (quoting *In re Braskem S.A. Sec. Litig.*, No. 15 Civ. 5132 (PAE), 2015 WL 5244735, at *3 (S.D.N.Y. Sept. 8, 2015)).

As applied, the above-captioned actions "warrant consolidation" as they "share sufficiently common questions of law and fact." *Id.*  Specifically, both actions: (i) name the same defendants; (ii) bring claims on behalf of investors who purchased or otherwise acquired ABIOMED securities; (iii) allege identical theories under the Exchange Act; (iv) rely on predominantly the same statements; (v) plead nearly the same class periods; and (vi) allege the exact same corrective disclosure date on August 1, 2019.  *See id.*  In fact, the November 1, 2018 statement, which marks the beginning of the Expanded Class Period, is explicitly referenced in the *Villare* Action.  *See Villare* Action, ECF No. 1, ¶¶ 4, 25; *Barry* Action, ECF No. 1, ¶¶ 4, 25. Therefore, the actions should be consolidated in the interests of judicial efficiency.  *See Kaplan*, 240 F.R.D. 88, 92 (S.D.N.Y. 2007) (consolidation appropriate "in light of the well recognized principle that the consolidation of stockholders' suits often benefits both the courts and the

parties by expediting pretrial proceedings, avoiding duplication of discovery, and minimizing costs") (citation and internal quotations omitted).

Upon consolidation, it is well-settled law in this District "that the use of the longer, more inclusive class period is proper for purposes of the [lead plaintiff motions] because the longer class period encompasses more potential class members and damages." *Hom v. Vale, S.A.*, No. 15-cv-9539-GHW, 2016 WL 880201, at *4 (S.D.N.Y. Mar. 7, 2016) (collecting cases). Accordingly, any argument attacking the propriety of the Expanded Class Period alleged in the *Barry* Action would be at odds with well-settled notice principles under the PSLRA, which require courts to recognize new class periods advanced in complaints filed during the sixty-day "notice period" (like the *Barry* Action). *See Turner v. ShengdaTech, Inc.*, No. 11 Civ. 1918 (TPG), 2011 WL 6110438, at *2–3 (S.D.N.Y. Dec. 6, 2011) (finding notice adequate despite new complaint filed on the same date as the lead plaintiff deadline, expanding the class period by nearly two years); *Horowitz v. SunEdison, Inc.*, No. 4:15 CV 1769 RWS, 2016 WL 1161600, at *2 (E.D. Mo. Mar. 24, 2016) (concluding that "republication of notice" and restarting sixty-day window is not required under the PSLRA for subsequently-filed complaint expanding class period backwards more than eight months).[7]

---

[7] In fact, "nothing in the PSLRA limits the class period to the period identified in the first notice." *See Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 624 n.6 (E.D. Wis. 2009). Virtually every court to consider the class period issue at the lead plaintiff stage adopts the longest, most inclusive, class period that had been filed ***during*** the "notice period" but ***prior to*** the lead plaintiff deadline. *See In re CMED Sec. Litig.*, No. 11 Civ. 9298 (KBF), 2012 WL 1118302, at *2 (S.D.N.Y. Apr. 2, 2012) ("The Court will use the longest-noticed Class Period . . . as it encompasses more putative class members."); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 269 (S.D.N.Y. 2009) (using "the longest class period identified").

Accordingly, Local 705 respectfully submits that the above-captioned actions should be consolidated and the Expanded Class Period alleged in the *Barry* Action utilized.

**B.     Local 705 Has the Largest Financial Interest and Otherwise Satisfies the Adequacy and Typicality Requirements of Rule 23**

Under the controlling Extended Class Period advanced in the *Barry* Action, Local 705 has the largest financial interest and is otherwise the only movant who satisfies both the adequacy and typicality requirements of Rule 23.  Under the "sequential" lead plaintiff process adopted by this Circuit, Local 705 is the therefore the presumptive Lead Plaintiff and entitled to appointment.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Chem. & Mining Co. of Chile Inc.*, 2015 WL 6029950, at *6 ("The . . . most critical question is which party seeking lead-plaintiff status has the largest financial interest in the relief sought by the putative class.").

"While the PSLRA 'does not provide any explicit guidance about how to calculate' the size of a given plaintiff's financial interest, '[c]ourts in this Circuit have traditionally examined four factors: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period . . . ; (3) the total net funds expended during the class period; and (4) the approximate loss suffered during the class period.'" *Glavan v. Revolution Lighting Techs., Inc.*, No. 19-CV-0908 (JPO), 2019 WL 3406582, at *3 (S.D.N.Y. July 29, 2019) (quoting *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 332 (S.D.N.Y. 2005)).  "Financial loss, the last factor, is the most important element of the test." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 395 (S.D.N.Y. 2008)).[8]

---

[8] *See also Shanawaz v. Intellipharmaceutics Int'l Inc.*, No. 17-CV-5761 (JPO), 2017 WL 5633168, at *2 (S.D.N.Y. Nov. 21, 2017) (finding that "[s]ince the competing groups of plaintiffs are nearly identical in all other respects, the amount of loss is dispositive").

In the Expanded Class Period, Local 705 claims a financial interest of **$705,291**—

*$123,774* larger than that claimed by Bamdad:

| MOVANT | LOSSES IN THE EXPANDED CLASS PERIOD[9] |
|--------|-----------------------------------------|
| **Local 705** | **$705,291** |
| ~~Bamdad~~<br><br>*inadequate for Medicaid fraud in connection with illegal opioid sales* | ~~$581,517~~ |

Because Local 705's losses "well exceed" the loss figures submitted by Bamdad, he is "out of

the running from the get-go." *Revolution Lighting Techs., Inc.*, 2019 WL 3406582, at *3; *see

also In re Ply Gem Holdings, Inc., Sec. Litig.*, 2014 WL 12772081, at *2 (S.D.N.Y. Oct. 14,

2014) (concluding that the movant with the largest loss "wins," and should be "appointed lead

plaintiff"). Therefore, Local 705, as the movant with the largest loss in the Expanded Class

Period, is the presumptive Lead Plaintiff *regardless* of the propriety of Bamdad's lead plaintiff

motion.

Further, Local 705, unlike Bamdad, is a transparent and experienced institutional

investor, the archetypal lead plaintiff as envisioned by the PSLRA. *See* H.R. Conf. Rep. No.

104-369, at 34-35, *reprinted in* 1995 U.S.C.C.A.N. 730, 733-34; *Glauser v. EVCI Ctr. Colls.

Holding Corp.,* 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("[T]he PSLRA was passed . . . to increase

the likelihood that institutional investors would serve as lead plaintiffs in actions such as this

one.") (quoting *In re Veeco Instruments, Inc.,* 233 F.R.D. 330, 332–33 (S.D.N.Y. 2005)); *Chem.*

---

[9] Local 705 submitted losses for both class periods (ECF No. 15-2), while Bamdad only submitted losses for the Initial Class Period (ECF 22-2). Bamdad's Expanded Class Period loss figures have therefore been calculated by Local 705's counsel based off of transactions listed in his certification. Local 705 reserves the right to amend these calculations if Bamdad submits his trading for the Expanded Class Period.

10

*& Mining Co. of Chile Inc.*, 2015 WL 6029950, at *6 ("Tyne and Wear is the only remaining movant that is an institutional investor, which is the 'type of investor Congress prefers as lead plaintiff.'") (citation omitted).  Thus, Local 705 is precisely the type of experienced, transparent, and sophisticated institutional investor that Congress intended to lead securities class actions.

Accordingly, as Local 705 is the movant with the largest financial interest who satisfies the adequacy and typicality requirements of Rule 23, it is the presumptive Lead Plaintiff.  Local 705 respectfully requests the Court ensure the Class receives experienced, institutional leadership willing to vigorously pursue recovery on its behalf by appointing Local 705 as Lead Plaintiff.

## CONCLUSION

For the foregoing reasons, Local 705 respectfully requests that the Court grant its motion and enter an Order: (i) consolidating the above-captioned actions: (ii) appointing Local 705 as Lead Plaintiff; (iii) approving Local 705's selection of Labaton Sucharow as Lead Counsel for the Class; and (iv) granting such other and further relief as the Court may deem just and proper.

DATED:  October 21, 2019

Respectfully submitted,

*/s/ Francis P. McConville*

Christopher J. Keller
Eric J. Belfi
Francis P. McConville
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
fmcconville@labaton.com

*Counsel for Lead Plaintiff Movant*
*Local 705 International Brotherhood*
*of Teamsters Pension Fund, and*
*Proposed Lead Counsel for the Class*

11