**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KYLE VILLARE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ABIOMED, INC., MICHAEL R. MINOGUE, and TODD A. TRAPP,<br><br>Defendants. | No. 1:19-cv-07319-ER<br><br>Judge Edgardo Ramos<br><br><u>CLASS ACTION</u><br><br><br><br><u>ORAL ARGUMENT REQUESTED</u> |
| JOSEPH BARRY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ABIOMED, INC.; MICHAEL R. MINOGUE; and TODD A. TRAPP,<br><br>Defendants. | No. 1:19-cv-09258-ER |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION
OF LOCAL 705 INTERNATIONAL BROTHERHOOD OF TEAMSTERS
PENSION FUND FOR CONSOLIDATION, APPOINTMENT AS LEAD
PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL;
<u>AND IN OPPOSITION TO ALL COMPETING MOVANTS</u>**

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ........................................................................................................................ 2

I.    BAMDAD REMAINS INADEQUATE TO REPRESENT THE CLASS......................... 2

II.   LOCAL 705 IS THE PRESUMPTIVE LEAD PLAINTIFF ............................................ 3

      A.    Local 705 Properly Supplemented Its Lead Plaintiff Motion ............................... 4

      B.    The *Barry* Action Was Timely Filed ................................................................... 5

      C.    The Expanded Class Period Alleged in the *Barry* Action Is "Plausible" ............... 6

      D.    Bamdad Has Further Demonstrated His Inadequacy by Taking an
            Antagonistic Position to the Class ........................................................................ 10

CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrade v. Am. Apparel, Inc.*,
   No. CV 10-06352 MMM, 2011 WL 13131110 (C.D. Cal. Jan. 21, 2011)................................3

*In re BP, PLC Sec. Litig.*,
   758 F. Supp. 2d 428 (S.D. Tex. 2010) ...................................................................................7

*In re Cell Pathways, Inc. Sec. Litig. II*,
   203 F.R.D. 189 (E.D. Pa. 2001)............................................................................................10

*In re Centerline Holding Co. Sec. Litig.*,
   No. 08 Civ. 505(SAS), 2008 WL 1959799 (May 5, 2008)......................................................7

*Chill v. Green Tree Fin. Corp.*,
   181 F.R.D. 398 (1998) ............................................................................................................4

*Darwin v. Taylor*,
   No. 12-cv-01038-CMA, 2012 WL 5250400 (D. Colo. Oct. 23, 2012) ...................................5

*Deering v. Galena Biopharma, Inc.*,
   No. 3:14-CV-00367-SI, 2014 WL 4954398 (D. Or. Oct. 3, 2014).....................................7, 10

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005)................................................................................................................9

*Eichenholtz v. Verifone Holding, Inc.*,
   No. C07-06140MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008)............................6, 7, 10

*In re Elan Corp. Sec. Litig.*,
   No. 1:08-cv-08761-AKH, 2009 WL 1321167 (S.D.N.Y. May 11, 2009) ..........................9, 10

*Hardy v. Mabvax Therapeutics Holdings*,
   No. 18-cv-01160-BAS-NLS, 2018 WL 4252345 (S.D. Cal. Sept. 6, 2018) ............................6

*Hom v. Vale, S.A.*,
   No. 15-cv-9539-GHW, 2016 WL 880201 (S.D.N.Y. Mar. 7, 2016)...................................6, 7

*In re Host Am. Corp. Sec. Litig.*,
   236 F.R.D. 102 (D. Conn. 2006)..............................................................................................5

*Iriving Firemen's Relief and Ret. Fund v. Tesco PLC*,
   No. 14 Civ. 8495(RMB), 2015 WL 1345931 (S.D.N.Y. Mar. 19, 2015).................................5

*Lax v. First Merchs. Acceptance Corp.*,
No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ...................................................7

*In re Network Assocs. Inc.*,
76 F. Supp. 2d 1017 (N.D. Cal. Nov. 22, 1999) ..........................................................2

*Newman v. Eagle Bldg. Techs.*,
209 F.R.D. 499 (S.D. Fla. 2002) ..........................................................2

*In re NYSE Specialists Sec. Litig.*,
240 F.R.D. 128 (S.D.N.Y. 2007) ..........................................................5

*Peifa Xu v. Gridsum Holding Inc.*,
No. 18 Civ. 3655 (ER), 2018 WL 4462363 (S.D.N.Y. Sept. 17, 2018) ...................................6

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
256 F.R.D. 620 (E.D. Wis. 2009) ..........................................................5, 7

*Reitan v. China Mobile Games & Entm't Grp., Ltd.*,
68 F. Supp. 3d 390 (S.D.N.Y. 2014) ..........................................................4, 5

*Schulman v. Lumenis, Ltd.*,
No. 02 Civ. 1989 (DAB), 2003 WL 21415287 (S.D.N.Y. June 18, 2003) ..............................4

*Skwortz v. Crayfish Co.*,
No. 00 CIV. 6766(DAB), 2001 WL 1160745 (S.D.N.Y. Sept. 26, 2001) ...............................5

*In re SunEdison, Inc. Sec. Litig.*,
329 F.R.D. 124 (S.D.N.Y. 2019) ..........................................................10

*Topping v. Deloitte Touche Tohmatsu CPA*,
95 F. Supp. 3d 607 (S.D.N.Y. 2015) ..........................................................5, 6

*Turner v. ShengdaTech, Inc.*,
No. 11 Civ. 1918 (TPG), 2011 WL 6110438 (S.D.N.Y. Dec. 6, 2011) ...................................6

*Xianglin v. Shi v. Sina Corp.*,
No. 05 Civ. 2154(NRB), 2005 WL 1561438 (S.D.N.Y. July 1, 2005) ...................................2

*Zemel Family Trust v. Philips Int'l Realty Corp.*,
205 F.R.D. 434 (S.D.N.Y. 2002) ..........................................................2

**Rules**

Fed. R. Civ. P. 23 ..........................................................2, 10

iii

## PRELIMINARY STATEMENT

Before the Court are two competing Lead Plaintiff movants: (i) Local 705, a sophisticated institutional investor with an unblemished track record of successful representation in PSLRA cases; and (ii) Bamdad, a convicted criminal who defrauded Medicaid to facilitate the illegal sale of opioids on the black market.[1]

Based on the current record before the Court, Local 705 is the ***only*** movant qualified to represent the Class as Lead Plaintiff.  Ignoring Local 705's good-faith effort to address his criminal record, Bamdad instead deflects these facially-dispositive red flags by attacking the merit of the Expanded Class Period and overall timeliness of the *Barry* Action.  While wrong, these arguments are nonetheless irrelevant to the ***only*** operative question at this stage in the litigation—which of the two remaining movants is the "most adequate plaintiff?"  The answer is clear.  Bamdad's criminal convictions for Medicaid fraud render him *per se* inadequate to act as fiduciary for the Class.  Local 705 should be appointed Lead Plaintiff.

Even taken at face value, Bamdad's contentions fail.  In arguing against adoption of the Expanded Class Period, Bamdad ignores well-settled PLSRA jurisprudence consistently adopting the longer class period at the lead plaintiff stage of the litigation.  Bamdad's self-interested arguments are advanced solely for the purposes of manufacturing the largest loss, and are therefore antagonistic to a substantial portion of the putative Class.  Local 705 has the largest financial interest under the proper class period at this stage in the litigation, and is thus entitled to appointment as Lead Plaintiff.

---

[1] All definitions and abbreviations used herein remain unchanged from Local 705's previous submission before the Court.  *See* ECF Nos. 12–15.

## ARGUMENT

### I.   BAMDAD REMAINS INADEQUATE TO REPRESENT THE CLASS

Bamdad, as a convicted criminal for his participation in an illicit drug ring, is inadequate to represent the Class.  Through the abuse of his powers as a pharmacist, Bamdad supplied a drug ring with opioids by defrauding Medicaid.  These actions not only represent an abuse of power, but contributed to the ongoing opioid epidemic ravaging this country.  As punishment for this fraud, Bamdad—who pled guilty—was sentenced to incarceration, probation, forced to pay substantial restitution, and had his license as a pharmacist in New Jersey and New York suspended.  It strains credulity, and violates basic Rule 23 principles, to even suggest that Bamdad could adequately serve as the fiduciary for the Class.  *See Xianglin v. Shi v. Sina Corp.*, No. 05 Civ. 2154(NRB), 2005 WL 1561438 (S.D.N.Y. July 1, 2005) (finding lead plaintiff movant inadequate for prior fraud conviction).[2]  His motion should be denied.

Further, Bamdad continues to misrepresent his employment history on his personal website.  Specifically, after being suspended from practice in New Jersey on June 9, 2010, Bamdad was prevented from working as a pharmacist in New Jersey for 30 months.  ECF No. 33-3.  His license in New Jersey was not reinstated until February 16, 2016, at which time he was expressly forbidden to act as a "pharmacist-in-charge" in New Jersey until at least February 2018.  *See* Consent Order, Declaration of Francis P. McConville ("McConville Decl."), Ex. A. Similarly, on September 14, 2012, Bamdad's license to practice pharmacy in New York was

---

[2] *See also, e.g.*, *In re Network Assocs. Inc.*, 76 F. Supp. 2d 1017, 1029 (N.D. Cal. Nov. 22, 1999) (finding movant inadequate for connection to criminal fraud investigation); *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 504 (S.D. Fla. 2002) (inadequate for past violations of SEC rules); *Zemel Family Trust v. Philips Int'l Realty Corp.*, 205 F.R.D. 434, 436–37 (S.D.N.Y. 2002) (disqualifying movant as inadequate for connection to entities that have been subject to SEC sanctions).

suspended for two months, with a 22 month stayed suspension.[3]   However, Bamdad's personal website, established in 2018, states that "Babak Bamdad has directed operations in the Pharmacy Department of New York City's Lincoln Hospital *for the past eight years* . . . ."[4]   Therefore, either Bamdad is misrepresenting the duration of his continuous employment as a pharmacist in New York, or he ignored the suspension of his license and engaged in the unauthorized practice of pharmacy in New York.[5]   Either troubling explanation only serves to further underscore Bamdad's inadequacy to represent the Class as Lead Plaintiff in this action.

## II.      LOCAL 705 IS THE PRESUMPTIVE LEAD PLAINTIFF

Putting aside the terminal challenges to Bamdad's adequacy, Local 705 remains the presumptive Lead Plaintiff as it possesses the largest financial interest of $705,291 in the Expanded Class Period—$123,774 greater than the loss claimed by Bamdad.   While Bamdad concedes that the *Villare* and *Barry* Actions should be consolidated (ECF No. 31, at 1), he simultaneously argues that the Court should dismiss the additional allegations advanced in the *Barry* Action.   But as the *Barry* Action was timely filed, and the Expanded Class Period readily meets any applicable standard of review, it is the operative period at this stage in the litigation as it includes more potential Class members.

---

[3] New York State Office of the Professions, February 2012 Summaries of Regents Actions on Professional Misconduct and Discipline, http://www.op.nysed.gov/opd/feb12.htm#bamd.

[4] *Babak Bamdad—Chief and Director of the Lincoln Hospital Pharmacy*, BABAK BAMDAD (2018), http://www.babakbamdad.com/.

[5] If the Court deems it appropriate, Local 705 requests limited discovery to resolve these specific adequacy concerns unique to Bamdad.  *See Andrade v. Am. Apparel, Inc.*, No. CV 10-06352 MMM (RCx), 2011 WL 13131110, at *3 (C.D. Cal. Jan. 21, 2011) (collecting cases allowing limited discovery).

### A.    Local 705 Properly Supplemented Its Lead Plaintiff Motion

Contrary to Bamdad's arguments otherwise, Local 705 is entitled to submit a supplemental certification to include its additional transactions in the Expanded Class Period.

On October 7, 2019, Local 705 timely filed its motion for appointment as Lead Plaintiff, which motion included its PSLRA-compliant certification listing its transactions in the *Villare* Action. Additionally on that date, Local 705, through its counsel, provided notice of its transactions and losses in the Expanded Class Period. *See* ECF No. 15-2. Local 705's supplemental certification listing its additional transactions in the Expanded Class Period (filed herewith, McConville Decl., Ex. B) thus properly addresses the incremental changes in the operative class period and poses no prejudice.

In order to prevent lawyer-driven litigation, the PSLRA "favor[s] [] investors who suffered the greatest financial losses over other parties." *Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 399 (S.D.N.Y. 2014). Therefore, courts consistently allow lead plaintiff movants to supplement and/or amend their motions to comport with this policy. *See Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 410–11 (1998) (allowing supplemental certifications to clarify technicalities). Most notably, courts permit such amendments when: (i) "a timely motion was filed previously"; (ii) the supplementation "is not made to manipulate the size of the movant's losses"; and (iii) "granting the motion would not undermine any of the policies that underlie the PSLRA." *See Reitan*, 68 F. Supp. 3d at 397.

Here, Local 705 has satisfied the above-criteria. First, it is uncontested that Local 705's motion is timely. *Schulman v. Lumenis, Ltd.*, No. 02 Civ. 1989 (DAB), 2003 WL 21415287, at *4 (S.D.N.Y. June 18, 2003) (noting that the parties had "made timely motions" before they "sought to amend their motion[s] . . . after the statutorily-fixed period of sixty days"). Second, Local 705 gave notice of its expanded losses in its motion and listed all transactions in its loss

analysis (ECF No. 15-2), and is therefore not attempting to manipulate its loss figures.  *See In re Host Am. Corp. Sec. Litig.*, 236 F.R.D. 102, 107 (D. Conn. 2006) (allowing supplemental certification on reply where original certification failed to list all transactions, yet the initial motion "append[ed] loss charts and transaction records that list and document all such transactions").  Finally, Local 705's supplemental certification clearly establishes it as an institutional investor with the largest financial interest—the precise type of class representative envisioned by the PSLRA.  *See Reitan*, 68 F. Supp. 3d at 397.  Bamdad's cited authority challenging Local 705's supplemental certification is factually distinguishable and should be disregarded.[6]  Local 705's supplemental certification is therefore properly before the Court, and unequivocally establishes it as the movant with the largest financial interest.

### B.    The *Barry* Action Was Timely Filed

Bamdad attacks the late-filing of the *Barry* Action, yet disregards well-settled notice principles under the PSLRA.  Pursuant to the PSLRA, courts are required to credit any and all allegations filed within the sixty-day notice period.  The law is clear: "nothing in the PSLRA limits the class period to the period identified in the first notice."  *See Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 624 n.6 (E.D. Wis. 2009).  Courts uniformly recognize new class periods and new allegations in complaints filed during the sixty-

---

[6] *See Skwortz v. Crayfish Co.*, No. 00 CIV. 6766(DAB), 2001 WL 1160745, at *5 (S.D.N.Y. Sept. 26, 2001) (refusing to consider motion filed after 60-day deadline); *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 620 (S.D.N.Y. 2015) (Ramos, J.) (refusing to consider post deadline complaint); *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 142 (S.D.N.Y. 2007) (noting that courts refuse to consider lead plaintiff motions filed after the 60-day deadline); *Iriving Firemen's Relief and Ret. Fund v. Tesco PLC*, No. 14 Civ. 8495(RMB), 2015 WL 1345931, at *3 (S.D.N.Y. Mar. 19, 2015) (rejecting movant for failing to cure potential discrepancies in loss figures based on publicly available trading data); *Darwin v. Taylor*, No. 12-cv-01038-CMA, 2012 WL 5250400, at *6 (D. Colo. Oct. 23, 2012) (refusing to consider "numerous new trades that appeared nowhere in [movant's] moving papers").

day "notice period."   *See e.g.*, *Hom v. Vale, S.A.*, No. 15-cv-9539-GHW, 2016 WL 880201, at \*4

(S.D.N.Y. Mar. 7, 2016) (original notice adequate despite subsequent actions filed one week

before lead plaintiff deadline expanding class period more than sixteen months); *Turner v.*

*ShengdaTech, Inc.*, No. 11 Civ. 1918 (TPG), 2011 WL 6110438, at \*2–3 (S.D.N.Y. Dec. 6,

2011) (finding notice adequate despite new complaint filed same date as lead plaintiff deadline).[7]

Here, upon the filing of the *Villare* Action, notice was issued alerting class members as to

the claims pending against defendants and the upcoming lead plaintiff deadline.  *See* ECF No.

15-3.  The notice alerted potential Class members to the pending claims against Defendants,

which claims are nearly identical to those advanced in the *Barry* Action.  Therefore, the PSLRA's

notice requirements have been satisfied and the *Barry* Action was timely filed.

**C.      The Expanded Class Period Alleged in the *Barry* Action Is "Plausible"**

Having argued in favor of consolidation, Bamdad's attempt to artificially limit the Lead

Plaintiff inquiry by attacking the sufficiency of the Expanded Class Period should be denied out

of hand.  *Hardy v. Mabvax Therapeutics Holdings*, No. 18-cv-01160-BAS-NLS, 2018 WL

4252345, at \*5 (S.D. Cal. Sept. 6, 2018) (following consolidation, "the most sensible way to

harmonize the different class periods is to adopt the longest class period").  Nevertheless,

Bamdad argues for the use of the Initial Class Period when determining financial interest because

the Expanded Class Period is "implausible, if not frivolous, and obviously the product of

gamesmanship."  ECF No. 31 at 8.  But the only gamesmanship here is Bamdad's bald attempt to

dismiss well-founded and admittedly-related allegations of the *Barry* Action.  *See Eichenholtz v.*

---

[7] *Compare Peifa Xu v. Gridsum Holding Inc.*, No. 18 Civ. 3655 (ER), 2018 WL 4462363, at \*1–3 & n.3 (S.D.N.Y. Sept. 17, 2018) (Ramos, J.) (taking no issue with new complaint filed ***day of*** lead plaintiff deadline expanding class period backwards approximately seven months), *with Topping*, 95 F. Supp. 3d at 618–20 (refusing to consider corrected complaint filed ***after*** 60–day lead plaintiff window had closed).

*Verifone Holding, Inc.*, No. C07-06140MHP, 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008) ("[I]t is unclear why a plaintiff would argue for a shorter class period at this stage . . . unless it was in the best interest of that particular plaintiff only.").

Significantly, as a matter of practice, courts in this District and throughout the country routinely accept the longest-filed class period for purposes of determining a movant's loss as it "encompasses more potential class members." *Hom*, 2016 WL 880201, at *4 (collecting authority and noting that "[a] number of courts in this district have found it appropriate to rely on the more inclusive class for determining lead plaintiff because 'it encompasses more potential class members.'"); *Deering v. Galena Biopharma, Inc.*, No. 3:14-CV-00367-SI, 2014 WL 4954398, at *10 (D. Or. Oct. 3, 2014) (same). Yet, contrary to this authority, Bamdad argues that to determine whether it is appropriate to consider losses over an Expanded Class Period, the Court must inquire as to whether the additional allegations are "plausible." *See In re Centerline Holding Co. Sec. Litig.*, No. 08 Civ. 505(SAS), 2008 WL 1959799, at *3 (May 5, 2008) (suggesting "plausibility" standard). While this standard of review has only been adopted by a slim minority of courts, it is readily met here. *See Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 n.7 (E.D. Wis. 2009) ("I am hesitant to apply *Twombly*'s 'plausibility' standard rather than a looser standard.").[8]

***First***, the *Villare* Action alleges that, over the course of fiscal 4Q 2019 (ended March 31, 2019) and 1Q 2020 (ended June 30, 2019), Defendants issued a series of false and misleading

---

[8] Indeed, most courts throughout the country have adopted a standard much looser than the "plausibility" standard to assess the viability of an expanded class period at the lead plaintiff stage. *See MGIC Inv. Corp.*, 256 F.R.D. at 625 (applying "obviously frivolous" standard); *see also In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 436 (S.D. Tex. 2010) (same); *Lax v. First Merchs. Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997) (assessing whether there was a "good-faith basis for extending the class period"). Either way, the Expanded Class Period meets any of the judicially-crafted standards of review.

statements touting ABIOMED's growth prospects and the Company's plan to stem declining revenue growth.[9]  *See* ¶ 7.[10]  Notwithstanding that the revenue growth decline at the core of the *Villare* Action **began** in fiscal 3Q 2019 (ended December 31, 2019), ¶ 4, Bamdad argues for the exclusion of statements made **in** fiscal 3Q 2019 touting the Company's revenue growth.  *See* ¶ 26 ("We are executing our plan for sustainable growth"); ¶ 28 ("Abiomed is positioned for sustainable growth . . . .").  It is plainly illogical to plead an undisclosed trend in declining revenue growth **beginning in fiscal 3Q 2019**, ¶ 7, while simultaneously seeking to exclude false and misleading statements **made in fiscal 3Q 2019** about that same revenue growth.

*Second*, the alleged misstatements in the Expanded Class Period mirror those in the Initial Class Period.  For example, on November 1, 2018, during fiscal 3Q 2019, Defendants repeatedly touted that they were "executing our plan for sustainable growth."  *See, e.g.*, ¶¶ 26-28.  Then, on January 31, 2019, during fiscal 4Q 2019 and the start of the Initial Class Period, Defendant Minogue stated that "[w]e remain focused on disciplined execution and sustainable growth . . . ." ¶ 37.  These nearly identical statements, and similar statements throughout the Class Period as alleged in the *Villare* Action, go to the core allegation that Defendants misled the market about ABIOMED's  ability to stem declining revenue growth and that the Company was unlikely to restore its revenue growth between fiscal 3Q 2019 and 1Q 2020.  ¶ 51.

*Third*, Bamdad argues that no new statement alleged in the *Barry* Action directly relates to the poor growth for fiscal 1Q 2020 and the reduced forward guidance for fiscal 2020 issued on the final day of the Class Period.  This is categorically false.  During fiscal 3Q 2019, the start of

---

[9] ABIOMED's fiscal year 2019 ran from April 1, 2018 through March 31, 2019.  The *Villare* Action starts the class period on January 31, 2019, during fiscal 4Q 2019, while the *Barry* Action starts the Class Period on November 1, 2018, during fiscal 3Q 2019.

[10] All references are to the complaint filed in the *Barry* Action, which substantively adds only ¶¶ 25–35 when compared with the *Villare* Action.

8

the Expanded Class Period, Defendant Trapp stated that the Company "was well positioned to deliver our plan *for 2019 and beyond*," thereby providing a direct and unequivocal link to the final disclosure.  On this basis alone, the Court may dismiss Bamdad's attempt to argue that the *Barry* Action fails to "plausibly" allege falsity and causation.  *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) ("[I]t should not prove burdensome for a plaintiff who has suffered an economic loss to provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind.").

*Last*, Bamdad argues that the November 1, 2018, statements in the Expanded Class Period, made during fiscal 3Q 2019, are not actionable because the "Company's revenue growth was at a high-point."  ECF No. 31 at 11.  But this is precisely why the *Barry* Action expands the Class Period, as Defendants' positive statements concerning historical revenue growth in fiscal 2Q 2019 would already have been undermined by their observed decline in revenue growth *while in fiscal 3Q 2019*, leading to the "declining revenue growth in [fiscal] 3Q 2019 through 1Q 2020" that are at the core of the action.  *Id.*  Thus, the statements that anchor the *Barry* Action logically start the Expanded Class Period on November 1, 2018, which marked "a high point in ABIOMED's revenue growth which would begin to decline over the Company's following three fiscal quarters." ¶ 25.

Because the additional statements triggering the beginning of the *Barry* Action are anchored in the same theory of fraud as those in the *Villare* Action, expressly implicate growth beyond 3Q 2019, and were made *during* the first quarter of revenue decline referenced in the *Villare* Action, the claims are "plausible" and clearly not "obviously frivolous." *In re Elan Corp. Sec. Litig.*, No. 1:08-cv-08761-AKH, 2009 WL 1321167, at *1 (S.D.N.Y. May 11, 2009) ("I do not find the claims which anchor the longer *Senegal* class period to be implausible, and I find

that it is appropriate to use that more inclusive period for present purposes.").  Under the more inclusive Expanded Class Period, Local 705 is the presumptive Lead Plaintiff by virtue of its larger loss and entitled to appointment as Lead Plaintiff.

> **D.      Bamdad Has Further Demonstrated His Inadequacy by Taking an Antagonistic Position to the Class**

Based on Bamdad's self-interested argument to eliminate a substantial portion of the Class, he is further inadequate to serve as Lead Plaintiff.  To satisfy the adequacy requirements under Rule 23, a class representative "must have no interests antagonistic to the interests of other class members." *In re SunEdison, Inc. Sec. Litig.,* 329 F.R.D. 124, 141 (S.D.N.Y. 2019). Bamdad's hostility towards potential Class members who purchased ABIOMED securities before January 31, 2019, cuts to the core of his ability to act as Lead Plaintiff.[11]  Further, contrary to Bamdad's own accusations of gamesmanship concerning the filing of the *Barry* Action (ECF No. 31, at 8–14), courts inversely find requests to utilize a shorter class period as evidence of such "gamesmanship."  *See Verifone Holding, Inc.*, 2008 WL 3925289, at *2.

The Class deserves undivided loyalty, and as Bamdad already seeks to excise claims and Class members at this very preliminary stage in the litigation, he stands wholly inadequate for the role of Lead Plaintiff.

## CONCLUSION

For the foregoing reasons, Local 705 respectfully requests that the Court grant its motion and deny Bamdad's competing motion.

---

[11] S*ee, e.g.*, *In re Cell Pathways, Inc. Sec. Litig. II*, 203 F.R.D. 189, 192 n.2 (E.D. Pa. 2001) (movants who "questioned the facts and conclusions of the complaint" not adequate); *Deering*, 2014 WL 4954398 (advocacy for shorter class period rendered lead plaintiff movant inadequate to represent the entire class).

DATED:  October 28, 2019                    Respectfully submitted,

                                            /s/ Francis P. McConville

                                            Christopher J. Keller
                                            Eric J. Belfi
                                            Francis P. McConville
                                            **LABATON SUCHAROW LLP**
                                            140 Broadway
                                            New York, New York 10005
                                            Telephone: (212) 907-0700
                                            Facsimile: (212) 818-0477
                                            ckeller@labaton.com
                                            ebelfi@labaton.com
                                            fmcconville@labaton.com

                                            *Counsel for Lead Plaintiff Movant*
                                            *Local 705 International Brotherhood*
                                            *of Teamsters Pension Fund, and*
                                            *Proposed Lead Counsel for the Class*

11