**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| KYLE VILLARE, Individually, and On Behalf of All Others Similarly Situated, | No. 1:19-cv-07319-ER |
| Plaintiff, | **BABAK BAMDAD'S REPLY IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF HIS SELECTION OF LEAD COUNSEL** |
| v. | |
| ABIOMED, INC., MICHAEL R. MINOGUE, and TODD A. TRAPP, | |
| Defendants. | |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 2

I.    THE ADMISSIBLE EVIDENCE BEFORE THE COURT ESTABLISHES THAT
      BAMDAD HAS THE LARGEST FINANCIAL INTEREST IN THE LITIGATION...... 2

II.   LOCAL 705 HAS FAILED TO REBUT BAMDAD'S PRESUMPTIVE LEAD
      PLAINTIFF STATUS ................................................................................................ 4

CONCLUSION..................................................................................................................... 10

Babak Bamdad ("Bamdad") respectfully submits this reply memorandum of law pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(3)(B), in further support of his motion seeking appointment as Lead Plaintiff and approval of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel.[1]

## PRELIMINARY STATEMENT

At this point only two Lead Plaintiff movants remain: Bamdad and Local 705 International Brotherhood of Teamsters Pension Fund ("Local 705"). *See* ECF Nos. 31-33. They disagree over two issues: (1) which class period the Court should use to determine which movant has the largest financial interest in the litigation—the Original Class Period or the Expanded Class Period; and (2) whether Bamdad is adequate to represent the class notwithstanding his conviction nearly a decade ago for third degree Medicaid fraud.

Although Bamdad reiterates his argument that the Expanded Class Period should not be used because it is implausible—if not frivolous—the Court need not decide the issue. The only ***admissible evidence*** of Local 705's losses using either class period is the PSLRA certification that Local 705 filed with its motion, which Local 705 admits only demonstrates $441,987.85 in losses. Bamdad's PSLRA certification, on the other hand, establishes that he suffered significantly larger losses of $581,516.80. As "approximate losses" is the most critical factor used to determine a movant's financial interest, Bamdad has a larger financial interest in the litigation ***regardless of the class period used***.[2] Because Bamdad has the largest financial interest in the litigation and has made a *prima facie* showing that he otherwise satisfies Rule 23's

---

[1]    Unless stated otherwise, this brief follows the same conventions and definitions as those used in Bamdad's opposition brief, ECF No. 31 ("Opposition Brief" or "Opp. Br.").

[2]    Bamdad is also ahead of Local 705 in the remaining financial interest factors that courts typically look to. *See* Opp. Br. at 7, 14.

adequacy and typicality requirements, he is entitled to invoke the PSLRA's most adequate plaintiff presumption.  15 U.S.C. § 78u-4(a)(3)(B)(iii).  The only way this presumption can be rebutted is if the Court agrees with Local 705's argument that Bamdad is inadequate due to a criminal conviction from ten years ago that is unrelated to this case.  The great weight of authority both in this Circuit and nationwide rejects such attacks.  This Court should too.

**ARGUMENT**

**I.      THE ADMISSIBLE EVIDENCE BEFORE THE COURT ESTABLISHES THAT BAMDAD HAS THE LARGEST FINANCIAL INTEREST IN THE LITIGATION**

The PSLRA requires that lead plaintiff movants demonstrate their financial interest in the litigation with *evidence*.  *See* 15 U.S.C. § 78u-4(a)(2)(A)(iv) (requiring that the lead plaintiff certify that he or she has "set[] forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint[.]"); *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414 (E.D. Pa. 2019) ("***Sworn declarations are integral to the PSLRA process***, *as they assure district courts that the proposed plaintiff (1) has suffered financial harm[.]*").

The only admissible evidence of Local 705's financial interest in the litigation is the PSLRA certification that it submitted with its motion evidencing Local 705's transactions *in the Original Class Period*.  ECF No. 15-1.  As Local 705 has acknowledged, this certification establishes that it suffered only $441,987.85 in losses (ECF No. 15-2 at 2)—*$139,528.95 less* than Bamdad's $581,516.80 in losses (ECF No. 22-3 at 2).

Although Local 705's opening brief contains certain unsworn attorney "testimony" that Local 705's losses are greater if the Expanded Class Period is used,[3] counsel's statements are *not*

---

[3]      Specifically, counsel states that it calculated Local 705's loss number for the Expanded Class Period "[b]ased on counsel's access to Local 705's historic trading data," but tellingly the

*evidence*.  *Puglisi v. U.S.*, 586 F.3d 209, 217 (2d Cir. 2009) ("[A]n attorney's unsworn statements in a brief are not evidence."); *see also* Fed. R. Evid. ("FRE") 603 ("Before testifying, a witness must give an oath or affirmation to testify truthfully.").  Not only are counsel's statements about Local 705's losses in the Expanded Class Period unsworn, there is no indication that they are based on counsel's personal knowledge.  *See* FRE 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").  Although counsel's statements purport to be based on counsel's access to Local 705's trading data, **only Local 705** can attest to its actual trading data or its completeness.  Furthermore, counsel's statements are inadmissible hearsay.  *See* FRE 802 (hearsay is inadmissible); FRE 803 (hearsay exceptions).  Counsel's hearsay simply cannot be considered in connection with evaluating its client's financial interest.  *Cf. Bldg. & Constr. Trades Council of Buffalo v. Downtown Dev., Inc.*, 448 F.3d 138, 155 (2d Cir. 2006) ("[A]rguments based on the moving parties' assertions of fact are inapt on a motion to dismiss.").

Indeed, without evidence setting forth Local 705's transactions during the Expanded Class Period, there is no way for the Court to determine whether Local 705 actually suffered the losses its counsel purports.  *Irving Firemen's Relief and Ret. Fund v. Tesco PLC*, No. 14 Civ. 8495(RMB), 2015 WL 1345931, at *2-3 (S.D.N.Y. Mar. 19, 2015) (rejecting movant whose losses the court could not verify and appointing the movant with "the largest (*demonstrable*) financial interest").  Further, it would be particularly inappropriate to credit counsel's unsworn representation that Local 705 suffered greater losses in the Expanded Class Period, considering

---

purported transactions for the Expanded Class Period are not included in Local 705's sworn PSLRA certification.  *See* ECF No. 14 at 2 & 2 n.2.

that Local 705 ***failed to produce the promised updated certification reflecting the transactions in that period with its opposition brief***.  *See* ECF No. 14 at 2 n.2 (stating in its opening brief that "Local 705 will submit an updated certification with full transactions in [the Expanded Class Period], . . . in connection with its brief in further support of this Motion.").  Presumably, Local 705 has failed to do so because the loss figure counsel provided for the Expanded Class Period is inaccurate, the Expanded Class Period transactions would otherwise demonstrate an atypical trading pattern by Local 705, or counsel could not convince its client to respond in time to submit an "updated" certification.

What's more, any attempt by Local 705 to submit an amended certification with its reply or thereafter should be summarily rejected.  Not only would such an attempt be untimely due to the PSLRA's strict 60-day time limit (*see* Opp. Br. at 5, 15-16), it would be prejudicially so considering Local 705's intentional choice not to provide it with its opposition as it previously promised (*see* ECF No. 14 at 2 n.2).  *Cf. Pirelli Armstrong Tire Corp. Ret. Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 410 (S.D.N.Y. 2004) (noting that "many courts have not allowed movants to supplement their motions to enhance their loss after expiration of the [60]-day period" and rejecting such an attempt).

Thus, the only admissible evidence before the Court proves that Bamdad has the largest financial interest in the litigation, and is thus entitled to invoke the PSLRA's most adequate plaintiff presumption.

## II.    LOCAL 705 HAS FAILED TO REBUT BAMDAD'S PRESUMPTIVE LEAD PLAINTIFF STATUS

Local 705 argues that Bamdad is inadequate to serve as Lead Plaintiff because he pled guilty to a charge of third degree Medicaid fraud in 2010 concerning his conduct as a pharmacist, which resulted in Bamdad entering into a Consent Order with the New Jersey State Board of

4

Pharmacy who then temporarily suspended Bamdad's license to practice pharmacy.

Prior convictions do not, however, render a plaintiff *per se* inadequate to serve as a class representative under Rule 23. Indeed, "[m]ost courts have rejected the contention that a proposed representative is inadequate because of prior unrelated unsavory, unethical, or even illegal conduct . . . Courts either do not permit challenges to adequacy on this basis or allow them only to the degree that the personal characteristics are somehow relevant to the litigation; even when permitted, such challenges are rarely upheld." *Mejia v. DHL Express (USA) Inc.*, No. CV 15-890-GHK (JCx), 2016 WL 9450680, at *9 (C.D. Cal. Feb. 25, 2016) (finding that a plaintiff's termination for allegedly falsifying an injury report was irrelevant to the conduct at issue in the case (an employer's alleged violations of labor laws) and therefore did not render him an inadequate class representative); *see also In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 104-05 (E.D.N.Y. 2012) (stating that because "th[e] inquiry into [a] representative's integrity is not an examination into their moral righteousness, but rather an inquiry directed at improper or questionable conduct arising out of or touching upon **the very prosecution of the lawsuit**[,]" "courts in this Circuit have disregarded ad hominem attacks that call the putative representative's character into question over incidents unrelated to the case before the court[].").

In fact, courts nationwide have found proposed class representatives adequate where their past felony conviction or other misconduct is unrelated to the case or its relevant issues. For example, *In re Intuniv Antitrust Litig.*, the court had to determine whether a potential class representative was adequate even though it "*recently* entered into a deferred prosecution agreement [of felony charges][4] and settled civil claims brought by the [U.S.] in connection with

---

[4] The charges included conspiracy to distribute controlled narcotics—such as oxycodone and fentanyl—for nonmedical reasons. *See* Lenny Bernstein, *For the first time, U.S. files*

failures to report suspicious opioid purchases."  No. 1:16-cv-12653-ADB, 2019 WL 4645502, at

*8-9 (D. Mass. Sept. 24, 2019).  In finding the class representative adequate, the court explained,

*inter alia*, that "there is no obvious credibility issue that will impinge on its ability to adequately

represent the class[,]" and that "there is no indication that [it] has been anything but forthright

with this Court or will otherwise fail to supervise and participate in this litigation."  *Id.* at *9.

The same is true here.  The PSLRA requires "proof," not speculation, to rebut the presumption of

adequacy.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Yet Local 705 "fails to proffer any argument—

speculative or otherwise[,]" as to how Bamdad's conviction nearly a decade ago for conduct

completely unrelated to this case "might affect [his] litigation of this case."  *City of Westland*

*Police and Fire Retirement Sys. v. Metlife, Inc.*, No. 12 Civ. 0256 (LAK) (AJP), 2017 WL

3608298, at *11-12 (S.D.N.Y. Aug. 22, 2017), *report and recommendation adopted* (S.D.N.Y.

Sept. 22, 2017).  Nor could it.[5]

---

*criminal charges against an opioid distributor*, The Washington Post (Apr. 23, 2019), *available at* https://www.washingtonpost.com/national/health-science/for-the-first-time-us-files-criminal-charges-against-an-opioid-distributor/2019/04/23/90489734-65e2-11e9-8985-4cf30147 bdca_story.html (last visited Oct. 26, 2019).

[5]      Defendants' authorities do not compel a different result as they involve situations in which a proposed class representative was found to be inadequate due to their conduct **in the very case before the court**, or misconduct that more closely pertains to the type of claims alleged in the action before the court.  *See Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) (affirming denial of class certification in a Fair Debt Collection Practices Act case where the named plaintiff "offered differing accounts about the letters that form the very basis for his lawsuit[]"); *Kline v. Wolf*, 702 F.2d 400, 401-03 (2d Cir. 1983) (affirming denial of class certification where plaintiffs gave incredible testimony **in the case** in which they sought to serve as class representatives); *Xianglin Shi v. Sina Corp.*, 2005 WL 1561438, at *4-5 (S.D.N.Y. July 1, 2005) (declining to appoint a group of mostly unrelated investors as lead plaintiff in a securities class action due to the "disparate nature of its membership" and the criminal conviction of one of its members for providing false information **to a financial institution**); *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724, 728 (7th Cir. 2011) (vacating class certification in Telephone Consumer Protection Act case and remanding to the district court to decide, *inter alia*, whether CE was an adequate lead plaintiff where there were questions about the truthfulness of its president's testimony **in the case before the court**); *In re Surebeam Corp.*

Bamdad's conviction occurred nearly ten years ago and has nothing to do with this action, the types of violations claimed, or the alleged fraud. In fact, his past conduct is **completely irrelevant** to the issues in this litigation—namely, Bamdad's and other class members' purchases of Abiomed stock and Abiomed's alleged violations of the securities laws. Therefore, it could not "become the focus of cross-examination and unique defenses at trial, to the detriment of the class." *Metlife*, 2017 WL 3608298, at \*12. After all, as Bamdad explains in his declaration, his license to practice pharmacy in New Jersey has since been reinstated, and he has rebuilt his life and career. *See* Bamdad Decl. at ¶¶1-3.[6] He has lost a substantial amount of money on his Abiomed investments, and he is "highly motivated" to make sure that he and the other class members "achieve the maximum possible recovery" for their losses through this litigation. *Id.* at ¶7. Furthermore, he is aware of his fiduciary responsibilities to the class should he be appointed Lead Plaintiff, including his duty to act in the class's best interests and provide the class with fair and adequate representation. *Id.* at ¶¶4-6. Thus, there is no evidence that Bamdad's prior conviction undermines his adequacy to serve as Lead Plaintiff.

For that matter, cases finding proposed class representatives to be adequate despite prior unrelated criminal convictions or misconduct are legion. For example, in *LaBranche,* a

---

*Sec. Litig.*, No. 03 CV 1721JMC (POR), 2004 WL 5159061, at \*7-8 (S.D. Cal. Jan. 5, 2004) (removing member of a proposed lead plaintiff group in a securities class action where the member's president "is subject to over sixty complaints to securities regulators including misrepresentation, unauthorized trading in client accounts, and use of unsuitable investments[,]" and had his National Association of Securities Dealers membership terminated); *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1028-29 (N.D. Cal. 1999) (rejecting lead plaintiff movant in a securities class action because, *inter alia*, it was **currently** "otherwise preoccupied with its own legal problems[,]" including that the two sister banks it owns were under investigation at the time for criminal fraud violations in Belgium, and the CEO of one of the banks "has already been arrested for tax evasion, fraud, money laundering, conspiracy and consorting with criminal elements[]").

[6]    All references to "Bamdad Decl." are to the Declaration of Babak Bamdad in Support of His Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel, filed herewith.

securities class action case **cited by Local 705**, the court found that the censure of Empire's principal for allegedly impersonating a government official in an attempt to influence the release of market information did not disqualify Empire from being appointed lead plaintiff.  229 F.R.D. at 416-17.  The court explained that the alleged conduct did not render Empire inadequate in light of its "vintage" (the censure occurred about 12 years before) and was not specifically connected to the "types of violations claimed and the execution fraud alleged here." *Id*.

Similarly, in *Jones v. Ford Motor Credit Co.*, the court found a named plaintiff to be an adequate class representative even though he had prior convictions and served at least 20 years in prison, noting that he has since "apparently been a model citizen."  No. 00 Civ. 8330 RJHKNF, 2005 WL 743213, at *19 (S.D.N.Y. Mar. 31, 2005).  The court explained that his prior convictions were not disqualifying because they did not "touch upon the class claims" and "[c]ourts that have disallowed prospective plaintiffs on the basis of prior convictions have done so only where a **clear nexus** existed between the conviction and the class claims." *Id.*

Likewise, in *Wood v. Capital One Auto Finance, Inc*., the court found a class representative adequate who had a prior felony conviction for dishonesty where the "conviction occurred 16 years ago, has no relation to this case, and there has been no subsequent conduct to suggest that Wood lacks the personal qualities necessary to represent a class in this civil suit." No. 06-CV-7, 2006 WL 6627680, at *3-4 (E.D. Wis. Sept. 19, 2006) (collecting cases for the proposition that "a felony conviction does not necessarily preclude a person from serving as a class representative").

In *Lane v. Page*, the court found Lane to be an adequate class representative in a shareholder class action despite Lane's two prior convictions, including at least one felony, and the documented instances in which he violated, disobeyed, or ignored court orders in unrelated

8

cases between 1990 and 2005.  272 F.R.D. 558, 567, 578 (D.N.M. 2011).  The court explained that "[t]o defeat class representation, any allegations concerning the representative's adequacy must be relevant to the claims in the litigation."  *Id.* at 579.  While the court found Lane's past failure to comply with court instructions troubling, it did "not believe Lane's past incidents— most of which [were] fairly old—[were] a good indication of how he [would act] in his capacity of class representative."  *Id.* at 579 (noting Lane's diligence in prosecuting the case before the court).

The court in *Metlife* also rejected a challenge to the named plaintiff's adequacy based on "rampant corruption and disregard for fiduciary duties that resulted in the [plaintiff's] Consent Decree" with the Department of Labor that has been in place since the 1980s.  2017 WL 3608298, at *2, 11-12.  The court explained that while "characteristics such as honesty, trustworthiness, and credibility" are relevant to adequacy, they are "restricted to their relevance to issues in the litigation . . . such that the problems could become the focus of cross-examination and unique defenses at trial, to the detriment of the class."  *Id*. at *12.

Similarly, in *Rocco v. Nam Tai Electronics, Inc*., the court found that a proposed class representative was not inadequate due to a prior DUI conviction, explaining that "[c]onsideration of trustworthiness and credibility are not without limitation, [] but instead are restricted to their relevance to issues in the litigation."  245 F.R.D. 131, 137 (S.D.N.Y. 2007).  The court concluded that the proposed representative's "criminal history as a whole, then, is irrelevant to this securities fraud case" and would "not be considered as evidence of his inadequacy to represent this class[.]"  *Id.*  (finding proposed representative inadequate for other reasons).

Additionally, in *Dvornikov v. Landry's Inc.*, the court found that the proposed class representatives' criminal records did not render them inadequate and stated that "[p]laintiffs'

9

adequacy must be assessed in light of their conduct in this or previous litigation, not based on a subjective evaluation of their personal qualifications as allegedly and tenuously evidenced by their prior criminal record." No. 15-cv-13286, 2017 WL 1217110, at *10 (D. Mass. Mar. 31, 2017). The *In re Red Hat, Inc. Sec. Litig.* court came to a similar conclusion, certifying as class representative an individual whose hundreds of willful violations of the Gun Control Act's record keeping requirements resulted in, *inter alia*, revocation of his business's federal firearms license. 261 F.R.D. 83, 88-89 (E.D.N.C. 2009). The court explained: "While the court will not minimize the seriousness of the violations or [plaintiff's] responsibility therefor[e] as owner of the businesses, the court finds that such conduct does not implicate [plaintiff's] credibility to the extent the court would deem him inadequate to serve as class representative." *Id.*

Lastly, in *Laborers Local 1298 Pension Fund v. Campbell Soup Co.*, the court found that the presumption in favor of the lead plaintiff movant was not rebutted where there was nothing to suggest that its purchase of the stock at issue in the securities class action "was involved in the wrongdoing which led to [its prior Treasurer's] indictment, or that the indictment would interfere with the current Treasurer's ability to conduct the current litigation." No. CIV.A. 00-152 (JEI), 2000 WL 486956, at *2 (D.N.J. Apr. 24, 2000).

### CONCLUSION

Because Bamdad indisputably has the largest financial interest in the Action, and no plaintiff has presented "proof" that he does not satisfy Rule 23's typicality and adequacy requirements, Bamdad respectfully submits that his motion should be granted in its entirety.

Dated: October 28, 2019                Respectfully submitted,

                                       **FARUQI & FARUQI, LLP**

                                       By: */s/ Richard W. Gonnello*
                                            Richard W. Gonnello

10

Richard W. Gonnello
Katherine M. Lenahan
Sherief Morsy
685 Third Avenue, 26th Floor
New York, NY 10017
Ph: (212) 983-9330
Fx: (212) 983-9331
E-mail: rgonnello@faruqilaw.com
        klenahan@faruqilaw.com
        smorsy@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiff Babak Bamdad and [Proposed] Lead Counsel for the putative Class*

11