# EXHIBIT A

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MARTIN COHEN, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>    v.<br><br>LUCKIN COFFEE INC., JENNY ZHIYA QIAN, and REINOUT HENDRIK SCHAKEL,<br><br>      Defendants. | Case No. 1:20-cv-01293-LJL<br><br>CLASS ACTION<br><br>ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF THE MOTION OF CHESI ASSETS LIMITED GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS**

The PSLRA vests control of securities class actions in agents with a significant financial stake in the litigation whose incentives mirror those of the class. While Congress could have allowed courts discretion to select from among the movants with substantial losses, it chose not to. Instead, it created a strong presumption that the movant with the largest financial interest should be appointed lead plaintiff. Here, that movant is Chesi Assets Limited Group ("Chesi Group"). To safeguard its intent, Congress mandated that the presumption favoring Chesi Group can only be rebutted upon exacting "proof." ECF No. 97 at 1, 9.

Opposing movants challenge Chesi Group's adequacy based largely on speculation and mudslinging, far from "proof" of inadequacy. Not only have competing movants failed to carry their evidentiary burden, the record evidence is unequivocal and overwhelming: Chesi Group will be a trusted fiduciary. Opposing movants also claim Chesi Group's Luckin purchases, made after the first partial disclosure, raise a debilitating unique defense. This argument is without merit and antagonistic to the Class' interests. Last, movants claim Chesi Group's motion and amended certifications are untimely or are otherwise disqualifying. Their failure to allege any resulting prejudice undercuts these arguments.

I.      **Chesi Assets Limited Group Is Adequate**

        A.      **Mr. Kian's Involvement with Interactive Strongly Supports Interactive's Adequacy to Serve as Lead Plaintiff**

The question of whether Mr. Kian (Interactive) can be trusted as a fiduciary for shareholders has already been answered by his proven track record as a fiduciary. Since 2009 he has served as the Non-Executive Chairman of one of the largest brokerages in Malaysia, TA Enterprise Berhad, which provides a range of financial services, including fund management to government linked companies, corporations, high net worth clients, and retail investors. ECF

1

No. 76-4 ¶ 2; Ex. 1.[1]  He is trusted to serve as a fiduciary by TA Enterprise's customers as well as its largest outside shareholders, including reputable asset managers such as the Florida State pension fund, HSBC, Mackenzie Financial, and BNP Paribas.  Ex. 2.  He also serves as Executive Chairman of the publicly traded, TA Global Berhad, which develops and manages properties, including landmark hotels, around the world.  Ex. 3.  He has been recognized with the Malaysian honorific title of "Datuk," akin to the British title of "Sir."  Ex. 4.

As Yale Law Professor Jonathan Macey has opined, "the fiduciary duty of managers and directors via-à-vis shareholders is deeply entrenched in U.S. law,"[2] and Mr. Kian has not only embraced those duties – but excelled in that service.  Mr. Kian has a proven track record, and has built a successful career under the spotlight of the financial press while maintaining good standing and prominence in the business community.  Given his career, contributions, and character, it would be ***unprecedented*** to find him inadequate to serve as a lead plaintiff.

Mr. Kian's direct, personal involvement strongly supports Interactive's adequacy.  He is a proven leader, sophisticated businessman, and is adept at overseeing counsel in complex litigation.  Dkt. No. 76-4 ¶ 3.  His familiarity with Chinese business culture, practices, and customs will be invaluable in the prosecution of this matter in myriad ways.  *Id.* ¶ 2.  Indeed, one would be hard pressed to find a more qualified Lead Plaintiff.

Opposing movants rely on a single misstep in Mr. Kian's career to attack Interactive.  In 1999, Mr. Kian was charged with alleged violations of Malaysia's securities act relating to transactions involving a brokerage.  But they ignore that in 2002, he was ***acquitted*** of two of the charges, and agreed to pay a fine in connection with the third, which involved allowing

---

[1] Citations to "Ex. [#]" refer to exhibits in the May 20, 2020 Declaration of Christopher J. Keller.

[2] *See* Macey, *Monitoring Corporate Performance: The Role of Objectivity, Proximity, and Adaptability In Corporate Governance*, 86 Cornell L. Rev. 356, 363 n.21 (2004).  Professor Macey has also submitted a declaration in support of Chesi Group's motion.  *See* ECF No. 99-3.

inaccurate reporting to the Kuala Lumpur stock exchange. Ex. 5.[3]  At the time, the charges were scrutinized as politically motivated, as the *New York Times* recently reported.  Exs. 6-7.  When viewed against the mosaic of Mr. Kian's entire career, as it should, this one misstep is of *de minimis* probative value.  Indeed, Mr. Kian comes before the Court as a known quantity, extensively and regularly vetted by the financial press over decades.  The Court can, therefore, take great comfort that this one misstep is, in fact, an aberration.

"Most courts have rejected the contention that a proposed representative is inadequate because of prior unrelated unsavory, unethical, or even illegal conduct." William B. Rubenstein, *Newberg on Class Actions* §3.68 (5th ed. 2019).  Courts have appointed lead plaintiffs despite far more egregious past issues than Mr. Kian's decades-old plea.  *E.g.*, *Chupa v. Armstrong Flooring, Inc.*, 2020 WL 1032420, at *3-4 (C.D. Cal. Mar. 2, 2020) (appointing despite armed bank robbery conviction and 97-month sentence); *In re Facebook Privacy Litig.*, 2016 WL 4585817, at *5-6 (N.D. Cal. Sept. 2, 2016) (appointing despite felony embezzlement conviction).

The case law strongly establishes that challenges to adequacy fail where they are based on old misconduct or if there is more recent evidence of the movant's adequacy – like there is here.  *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 416-17 (S.D.N.Y. 2004)  (rejecting attack based on movant's prior settlement for violating exchange rules by falsely representing  himself as a government official, due to "vintage" of that conduct and his "***experience acting as a fiduciary***"); *Vine v. PLS Fin. Servs.*, 331 F.R.D. 325, 336 (E.D. Tex. 2019), *aff'd*, 689 F. App'x 800 (5th Cir. 2017) (rejecting challenge based on check forgery and drug sale arrest, noting that "some" courts have found past misconduct relevant but "***only where the convictions were relatively recent***"); *Meyer v. Portfolio*

---

[3] For this reason, AP7's repeated references to "multiple" findings of violations is false.

3

*Recovery Assocs.*, 707 F.3d 1036, 1042 (9th Cir. 2012) (affirming appointment since "deceptive conduct" was "more than 10 years" old and movant had "***since taken positive steps in his life***").

In the past decades Mr. Kian has continued to prove himself as a respected fiduciary, further undermining the probative value of his 2002 plea. In 2007, when his return to TA Enterprise was announced, its shares ***skyrocketed by over 60%***, the ultimate statement of investor confidence. Ex. 8. Shareholders of TA Enterprise have resoundingly voted to elect him. Ex. 9. He has also done good in the world in other ways—for example, he has been a major supporter of the Shepherd Centre Foundation, a home for orphaned and neglected children. Exs. 10-11.

SEC regulations further undermine the probative value of Mr. Kian's one misstep, as directors and officers are not even required to disclose past legal proceedings over ten years old. 17 C.F.R. §229.401(f). This rule "is widely used by professionals as a disclosure guideline" and is "respected by many courts as representing the experienced and mature judgment by the SEC . . . as to materiality of background information of management, [and is] entitled to considerable weight." *U.S. Bank Nat'l Ass'n v. Eel River Inv. Co.*, 2009 WL 1247037, at *37 (W.D. Wash. May 5, 2009). ***The inescapable absurdity*** of AP7's attack is that the SEC would unquestionably allow Mr. Kian to serve as a fiduciary as a director without even disclosing the matter, yet AP7 argues he cannot serve as a fiduciary to those same shareholders as Lead Plaintiff here.[4]

The cases relied on to challenge Interactive's adequacy are inapposite. For example, AP7 says *Batter v. Hecla Mining Co.*, is "directly on point." ECF No. 98 at 9 (citing *Hecla*, 2020 WL 1444934, at *1 (S.D.N.Y. Mar. 25, 2020)). It is decidedly ***not***. *Hecla* dealt with six separate, and some very recent, charges of wrongdoing: (1987) RICO and Exchange Act charges; (1998) mismanagement; (1999) IRS suit for unpaid taxes; (2000) conducting business through a defunct

---

[4] AP7's claim that the Chesi Group had an affirmative disclosure obligation (ECF No. 98 at 2-3) is meritless, there was no reason to disclose this widely available and decades old information.

entity; (2012) unpaid legal fees; (2012) censure for insider trading; (2019) breach of fiduciary duty suit; and (2019) suit for gambling debts. *Id.* at \*5-6. This repeated and recent misconduct properly raised questions, but stands in stark contrast to Mr. Kian's single, decades old plea.

The remaining attacks on Mr. Kian and Interactive are frivolous. AP7 ***completely misrepresents*** a 1994 article that quotes Mr. Kian's centrist view toward Malaysian regulators, warning that overregulation could kill the golden goose of productive market activity. ECF No. 98 at 8 (citing ECF No. 100-10). Similarly, AP7 claims Mr. Kian was "implicated" in an FBI investigation. ECF No. 98 at 9 (citing ECF No. 100-11). Not so. The article merely mentions an inquiry into a Trump hotel developed by TA Global, mentioning Mr. Kian's son, and noting it is "standard procedure" for the FBI to look into "foreign contacts" related to security clearances.

These baseless attacks expose the essence of AP7's challenge – to weaponize Mr. Kian's prominence in the business community, smear him, and create the false appearance he lacks integrity. Far from "proof" of inadequacy, these attacks are proof of AP7's willingness to go low to win. Chief Judge McMahon recently rejected similar smear attacks by competing movants at the lead plaintiff stage as not of "the slightest relevance . . . except insofar as they demonstrate the depths to which lawyers will descend in an effort to become lead counsel."[5]

## B.    The Scattershot Attacks on Chesi's Adequacy are Frivolous

The facts about Chesi are clear and simple: it is a BVI investment vehicle with a single director that is a subsidiary of Intertrust Group ("Intertrust"). ECF No.76-1 ¶ 2. Opposing movants contention that it is a black box, offshore vehicle is flatly contradicted by the evidence. In sworn declarations, Chesi transparently describes itself and introduces the people who manage

---

[5] *Cook v. Allergan PLC*, 2019 WL 1510894, at \*1 n.1 (S.D.N.Y. Mar. 21, 2019) (noting movant's prior liability for intentional misrepresentation and breach of fiduciary duty, as well as other movants' infractions, and not crediting these facts as one of the "reasons" for its ruling).

its operations and will act on its behalf in this case.  *Id.* ¶ 2-7.[6]  Nothing more is required.  *See,*

*e.g.*, Ex. 14, ECF No. 41 at 5-6, *In re: Beyond Meat, Inc. Derivative Litigation*, 20-cv-963 (May

18, 2020 C.D. Cal.) (rejecting opacity argument as insufficient to constitute "proof" under the

PSLRA and noting that courts routinely appoint BVI entities).

AP7 contends that Chesi "abdicated oversight of the litigation to Intertrust."  ECF No. 98

at 12.  This truism-turned-attack is **nonsense.**  *Every* entity "abdicates" oversight to its board and

personnel entrusted by that board—even AP7 and Teamsters avail themselves of such formalties.

There is nothing unusual about one entity entrusting another in this oversight role — this is the

structure used by publicly traded master limited partnerships and real estate investment trusts.[7]

The effort to recast a normal corporate structure as nefarious is misleading and unavailing.

AP7 also falsely claims that Intertrust has "caught the eye of Dutch regulators."  ECF No.

98 (citing ECF No. 100-2).  Here again, AP7 mischaracterizes the import of the article, which

benignly discusses new Dutch regulations.  There is no suggestion that Intertrust was under

scrutiny and, to the contrary, the article notes that Intertrust adheres "not only to the letter, but

also the spirit of the laws."  *Id.*  Intertrust is a reputable publicly-traded multinational company

***providing services to six of the world's ten largest businesses***.  Ex. 12.[8]

AP7 also asserts that Intertrust creates "phony" companies based solely on the

unsubstantiated say-so of a journalist at a publication called "Independent Australia."  ECF No.

98 at 4.  This uninformed view misunderstands corporate structures and is entirely irrelevant

---

[6] AP7 notes that Chesi has investments in TA Enterprise.  ECF No. 98 at 8.  Chesi and
Interactive moved *together* – pointing out possible connections between them is not an attack.
[7] Matthew J. McCabe, *Master Limited Partnerships' Cost of Capital Conundrum*, 17 U. Pa. J.
Bus. L. 319, 322-33 (2014); Robert J. Haft, Tax-Advantaged Securities § 25:24 (2020 Ed.).
[8] AP7's notes INB's name was mentioned in the dump of 11.5 million documents known as the
panama papers.  ECF No. 98 at 4 n.6.  This is of no significance; mere mention does not imply
wrongdoing – hundreds of reputable names appeared in the massive document dump.  Ex. 13.

since (1) all companies are fictions managed by humans and (2) the people working for Chesi have been disclosed: Lau Lai Sze, the Executive Director and Head of Private Wealth Services at Intertrust, and Lau Lui Yeuk Hang, a Senior Manager of Private Wealth Services at Intertrust. ECF No. 76-1 ¶¶ 3-4. These real, professional human beings submitted declarations attesting to their relevant experience and ability to oversee and direct counsel. There is no opacity here.

The Court has been presented with more than a *prima facie* showing of the Chesi Group's adequacy: this includes a detailed showing about the people behind the Chesi Group who will make decisions and their time-tested ability to do so as full-time fiduciaries. Nevertheless, to the extent the Court is not inclined to appoint a group to act as lead plaintiff, it has discretion to select the movant with the largest individual loss (which is indisputably Interactive). *See, e.g., In re Ply Gem Holdings, Inc., Sec. Litig.*, 2014 WL 12772081, at *2 (S.D.N.Y. Oct. 14, 2014) (appointing single entity with largest financial interest); Ex. 15, *Kipling v. Flex Ltd.*, 2019 U.S. Dist. LEXIS 165876, at *3 (N.D. Cal. Sept. 26, 2019) (appointing one of two co-lead plaintiff movants as lead plaintiff, "[i]n the interest of efficient representation").

### C. Petty Arguments As to Chesi Group's Filings Do Not Rebut the Presumption

Chesi Group's motion for appointment as Lead Plaintiff was filed at 11:57 p.m. on April 13, 2020, within the statutory deadline. *See* 15 U.S.C.A. § 78u-4 ("[T]he court shall consider any ***motion*** made by a purported class member"). The timely motion asserted that Chesi Group had the "largest financial interest." ECF No. 69. The memorandum in support was submitted at 12:03 a.m. and the supporting declaration at 12:14 a.m. on April 14, 2020. In the absence of prejudice, which opposing movants do not assert, courts in this District and throughout the country routinely exercise their discretion, as this Court should, to accept such filings. [9] *See, e.g.,*

---

[9] The PSLRA "does not rob" courts of "discretion to consider untimely motions." *Montesano v. Eros Int'l PLC*, 2020 WL 1873015, at *8-9 (D.N.J. Apr. 14, 2020) (finding no evidence that

*Mascaro Const. Co. v. Local Union No. 210*, 391 F. App'x 13, 16 (2d Cir. 2010) (noting absence of prejudice and describing as "unnecessarily formalistic" argument that party should have filed motion to excuse reply brief filed sixteen minutes late).[10]

Opposing movants also argue that Chesi Group's supplemental declaration and corrected certification militate against its appointment. Not so. Courts generally hold that errors in claimed losses may render a movant inadequate *only if* there is "evidence of bad faith or intent to deceive." *In re SLM Corp. Sec. Litig.*, 2012 WL 209095, at *8 (S.D.N.Y. Jan. 24, 2012). The opposite is true here. Upon discovering the error, Chesi Group promptly disclosed the cause of the inadvertent error in its certification and *reduced* its claimed loss: "[T]here is no indication that [the] error was caused by anything but an oversight. In fact, because [Chesi Group] is seeking to become lead plaintiff . . . [It] would have benefited from increasing the claimed [loss] rather than decreasing it . . . . Thus, the Court finds it unlikely that bad faith motivated [Chesi Group]'s error." *In re Solar City Corp. Sec. Litig.*, 2017 WL 363274, at *6–7.

"[T]he certification requirement in the PSLRA does not have a time limit," and "many courts have allowed lead plaintiff movants to amend their certifications if issues arose." *Rao v. Quorum Health Corp.*, 221 F. Supp. 3d 987, 989 (M.D. Tenn. 2016); *In re Lyft Sec. Litig.*, 2020 WL 1043628, at *3 n.3 (N.D. Cal. Mar. 4, 2020) ("While it is true that the amended certification

---

consideration of motion would foil the goals of the PSLRA's time provisions and noting that "[t]he goal of the PSLRA was not to select individuals for lead plaintiff who make no mistakes"); *see also Finocchiaro v. NQ Mobile, Inc.*, 2016 WL 7031613, at *3 (S.D.N.Y. Dec. 1, 2016) (one day late filing "substantially complied with the deadline").

[10] *See also Black v. Metro. Sch. Dist. of New Durham Twp.*, 2018 WL 4352629, at *1 n.2 (N.D. Ind. Sept. 12, 2018) (permitting motion in the absence of "argument as to how the minimal delay prejudiced" other movant); *O'Brien v. Napolitano*, 2012 WL 423732, at *9 (N.D. Cal. Feb. 8, 2012) ("Because the delay was minimal and Plaintiff has not demonstrated prejudice, the Court excuses the lateness of the filing."); *Rogers v. Fukase*, 2011 WL 2939851, at *1 (D. Haw. July 18, 2011) (finding that no party was prejudiced by the ten-minute wait); *Dates v. Frank Norton, LLC*, 190 F. Supp. 3d 1037, 1043 n.3 (N.D. Ala. 2016) (declining to strike "minutes" late filing).

8

was filed later, Keiner timely filed his motion . . . and upon noticing the scrivener's errors in his certification, submitted the amended certification prior to any notification of these errors by other movants"); *Hansen v. Ferrellgas Partners, L.P.*, 2017 WL 281742, at \*5 (S.D.N.Y. Jan. 19, 2017) (refusing to "impose a rule that would force lead plaintiff movants to choose between leaving mistakes in their filings uncorrected or correcting the mistake and being summarily disqualified. [The] correction . . . fall[s] well short of [the] 'proof'" required).

## II.     Chesi Group's Trading Is Typical

Based *solely* on the timing of Chesi Group's Luckin purchases, Teamsters argues that Chesi Group is atypical and subject to a unique defense. ECF No. 95 at 10-11. This *speculative* attack is devoid of the *proof* required by Teamsters' cited authority[11] and is founded on the false premise that the "revelation of the alleged fraud" occurred on January 31, 2020 with the publication of an anonymous short report. They argue that purchasers after that date may be unable to invoke the fraud-on-the-market presumption, rendering them atypical. In other words, Teamsters argues against the interests of *every Class member* who purchased after the anonymous report but before the end of the Class Period, who would all presumably have difficulty utilizing the Basic presumption. This argument is antagonistic to the interest of the Class. *Deering v. Galena Biopharma, Inc.*, 2014 WL 4954398, at \*11 (D. Or. Oct. 3, 2014) (advocacy for shorter class period rendered movant inadequate). This argument lacks merit.

First, the anonymous report was by no means fully "curative" or so "forceful" that it was unreasonable for Chesi Group and other Class members to continue to purchase Luckin securities. *See In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 204 n.13 (E.D. Pa. 2008) (describing limited circumstances under which post-disclosure purchases may defeat an investor's

---

[11] Teamsters' attack is founded on *In re Petrobras Sec. Litig.*, which decision hinged on purchases made after full disclosure of the fraud and *evidence* the movant did not purchase in reliance on the market price. 104 F. Supp. 3d 618, 623 (S.D.N.Y. 2015).

9

typicality). Indeed, the trading day after the anonymous report, Luckin discredited it as "false, misleading or entirely irrelevant" and reiterated that "**Luckin Coffee is in strict compliance with [its] rigorous controls** [over financial reporting]." *Gopu* Action, ECF No. 1 at ¶ 126.

Second, Chesi Group submitted the declaration of Chad Coffman with its opposition which establishes that (1) securities class actions *routinely* allege partial disclosures; (2) there is no fundamental difference in the economic logic of the claims made by purchasers prior to or after January 31, 2020; (3) trading volume after January 31, 2020 indicates that a substantial number of class members purchased after the anonymous report; (4) there is an 85% overlap in the economic losses of pre- and post-January 31, 2020 purchasers; and, (5) post-January 31, 2020 purchasers represent approximately 65% of damages. *See* ECF No. 99-2 at 2-3. These objective criteria establish that Chesi Group's purchases after January 31, 2020 are entirely typical of the Class and that Teamsters would sacrifice nearly two thirds of recoverable damages in an effort to be appointed. *Farrah v. Provectus Biopharmaceuticals*, 68 F. Supp. 3d 800, 805 (E.D. Tenn. 2014) (high trading volume after partial disclosure meant that defense would not be "unique" to proposed lead plaintiff); *Schueneman v. Arena Pharms., Inc.*, 2011 WL 3475380, at *7 (S.D. Cal. Aug. 8, 2011) (requiring **evidence** that [movant] did not rely on the market price).[12]

## CONCLUSION

Chesi Group respectfully requests that the Court grant its motion and enter an Order: (i) appointing Chesi Group as Lead Plaintiff; (ii) approving Chesi Group's selection of Labaton Sucharow as Lead Counsel for the Class; and (iii) granting such other and further relief as the Court may deem just and proper.

---

[12] Finally, movant Steinberg's attempt to carve out a subclass for IPO purchasers, ECF No. 101, is without merit and contradicts the "well established law of this Circuit." *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 141 (S.D.N.Y. 2007) ("cobbl[ing] together a lead plaintiff group that has standing to sue on all possible causes . . . undermines the purpose of the PSLRA.").

DATED:  May 20, 2020

Respectfully submitted,

*/s/ Christopher J. Keller*

Christopher J. Keller
Thomas A. Dubbs
Eric J. Belfi
Francis P. McConville
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile:  (212) 818-0477
ckeller@labaton.com
tdubbs@labaton.com
ebelfi@labaton.com
fmcconville@labaton.com

*Counsel for Lead Plaintiff Movant Chesi Assets Limited Group and Proposed Lead Counsel for the Class*

11