USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC # _____
DATE FILED: June 29, 2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KYLE VILLARE, *individually and on behalf of all others similarly situated*,

Plaintiff,

– against –

ABIOMED, INC., MICHAEL R. MINOGUE, and TODD A. TRAPP,

Defendants.

---

JOSEPH BARRY, *individually and on behalf of all others similarly situated*,

Plaintiff,

– against –

ABIOMED, INC., MICHAEL R. MINOGUE, and TODD A. TRAPP,

Defendants.

---

**OPINION AND ORDER**

19 Civ. 7319 (ER)

19 Civ. 9258 (ER)

---

Ramos, D.J.:

In August and October 2019, two putative class actions were brought under the federal securities laws against ABIOMED, Inc. ("ABIOMED" or the "Company")) and its executives. The plaintiffs in these actions claim to represent a class of all persons who purchased or otherwise acquired ABIOMED securities from certain dates through July 31, 2019, and seek to recover damages caused by the defendants' alleged violations of federal securities laws. Both actions similarly allege that ABIOMED made materially false and misleading statements and failed to disclose material adverse facts that: (1) ABIOMED's revenue growth was in decline beginning in the third quarter of 2019; (2) the Company did not have a sufficient plan in place to

stem its declining revenue growth; (3) the Company was unlikely to restore its revenue growth over the next several fiscal quarters; and (4) that ABIOMED was reasonably likely to revise its full-year 2020 guidance in a way that would fall short of the Company's prior projections and market expectations.  On August 1, 2019, while announcing its financial and operational results for the first quarter of 2020, ABIOMED disclosed that it had experienced three consecutive quarters of slowing revenue growth and adjusted downwards its full-year 2020 guidance.  As a result, the price of ABIOMED shares dropped precipitously.

Before the Court are the motions of class member Local 705 International Brotherhood of Teamsters Pension Fund ("Local 705") to consolidate these two actions, and to seek appointment as lead plaintiff and approval of its selected counsel, Labaton Sucharow LLP ("Labaton"), as lead counsel.  Doc. 12.[1]  Also before the Court is a competing motion by Babak Bamdad ("Bamdad"), also a class member, seeking appointment as lead plaintiff and approval of his selected counsel, Faruqi & Faruqi, LLP, as lead counsel.[2]  Doc. 20.

For the reasons set forth below, the Court (i) consolidates the two actions, (ii) appoints Local 705 as lead plaintiff, and (iii) appoints Labaton LLP as lead counsel.

## I.    BACKGROUND[3]

ABIOMED was founded in 1981 and is headquartered in Danvers, Massachusetts.  *See Villare* Compl. ¶ 2.  The Company engages in the research, development, and sale of medical

---

[1] Hereinafter, all docket references refer to *Villare v. ABIOMED, Inc. et al*, No. 19 Civ. 7319, unless otherwise noted.

[2] Bamdad does not oppose consolidation of the two actions.  Furthermore, the named parties in both actions stipulated that they "expect that…this Court will eventually consolidate these two actions."  *See Villare v. ABIOMED, Inc. et al*, No. 19 Civ. 7319, Doc. 29; *see also Barry v. ABIOMED, Inc. et al*, No. 19 Civ. 9258, Doc. 10.

[3] The following facts are drawn from the *Villare* complaint except where otherwise noted.  Doc. 1.  Both the *Villare* and *Barry* complaint contain identical allegations that ABIOMED made materially false and misleading statements and/or failed to disclose material adverse facts between January 31, 2019 and July 31, 2019, the class period as

devices to assist or replace the pumping function of a failing heart, and also provides a continuum of care to heart failure patients. *Id*. It sells, among other things, catheters and micro heart pumps under the Impella brand with integrated motors and sensors through direct sales and clinical support personnel in the United States and across the world. *Id*. ¶ 3. Michael R. Minogue ("Minogue") is ABIOMED's chairman, president and chief executive officer. *Id*. ¶ 19. Todd A. Trapp ("Trapp") is ABIOMED's vice president and chief financial officer. *Id*. ¶ 20.

On November 1, 2018, ABIOMED announced its financial and operating results for its second quarter of fiscal year 2019[4]. It reported revenue of $181.8 million, an increase of 37 percent compared to $132.8 million for the same period of fiscal year 2018. *Id*. ¶ 25. This 37 percent increase marked a high-point in ABIOMED's rate of revenue growth[5] which began to decline over the Company's following three quarters. *Id*. According to the *Barry* complaint, Minogue stated on a conference call with investors and analysts that day that "we are executing our plan for sustainable growth." *Barry* Compl. ¶ 28. In addition, Trapp told investors on that conference call that ABIOMED was "well positioned to deliver our plan for 2019 and beyond." *Id*. ¶ 31.

On January 31, 2019, ABIOMED announced its financial and operating results for the third quarter of fiscal year 2019. *Villare* Compl. ¶ 26. It reported revenue of $200.6 million, an increase of 30 percent compared to $154.0 million for the same period of fiscal year 2018. *Id*.

---

alleged in the *Villare* complaint. However, the *Barry* complaint alleges a longer class period—from November 1, 2018 through July 31, 2019—and includes some additional statements made during the expanded class period.

[4] All references hereinafter are to quarters in ABIOMED's fiscal year, which does not conform to the calendar year, and instead begins on April 1 and ends on March 31. For example, the second quarter of fiscal year 2019 for ABIOMED represents the three months ending on September 30, 2018.

[5] As alleged in both complaints, ABIOMED's rate of revenue growth is calculated by the percentage difference between ABIOMED's total revenue in a given quarter and the same quarter of the prior year. *Id*.

3

This 30 percent increase, represents a decrease in ABIOMED's rate of revenue growth, when compared to the 37 percent increase in the second quarter of fiscal year 2019.

Then, on May 2, 2019, ABIOMED announced the Company's financial and operating results for its fourth quarter and full fiscal year 2019. *Id*. ¶ 32. It reported revenue of $207.1 million in the fourth quarter, an increase of only 19 percent compared to $174.4 million for the same period of 2018. *Id*. Despite yet another decrease in the rate of revenue growth from the prior quarter, defendants allegedly assured investors that the Company had a plan of action to remediate the negative trend in its financial results moving forward. *Id*. ¶ 33. ABIOMED also provided fiscal 2020 guidance for total revenue to be in the range of $900 million to $945 million. *Id*. ¶ 34.

Finally, on August 1, 2019, before the market opened, ABIOMED announced its financial and operating results for the first quarter of 2020. *Id*. ¶ 42. Among other things, it disclosed its third consecutive quarter of slowing revenue growth, reporting total revenue of $207.7 million, and revenue growth rate of only 15.4 percent over the first quarter of 2019. *Id*. Commenting on the Company's disappointing financial results, Minogue stated that "new training programs, organizational changes in distribution, and [] external initiatives … will require time to drive more growth in the future." *Id*. ABIOMED also adjusted its full-year 2020 guidance downwards from total revenue in the range of $900–945 million to $885–925 million. *Id*. On this news, ABIOMED's stock price fell $73.19 per share, or 26.45 percent, to close at $204.87 per share that same day. *Id*. ¶ 44.

On August 6, 2019, Kyle Villare filed the first of the instant class actions (hereinafter the "*Villare* action"). Doc. 1. That same day, Villare's counsel, Pomerantz LLP, announced the filing of the class action on *GlobeNewwire*, as required by the Private Securities Litigation

Reform Act ("PSLRA"), 15 U.S.C. § 78u-4 *et seq*.  *See* Doc. 15, Ex. 3.  In that announcement, Pomerantz LLP stated that any shareholders seeking lead-plaintiff status in the class action had until October 7, 2019, to file a motion for appointment as lead plaintiff.  *Id*.

On the day that motions for appointment as lead plaintiffs were due, October 7, 2019, Joseph Barry ("Barry") filed a separate class action (hereinafter the "*Barry* action") against the same defendants.  *See Barry v. ABIOMED, Inc. et al*, No. 19 Civ. 9258.

Also on October 7, 2019, several class members in the *Villare* action filed motions with the Court for appointment as lead plaintiff.  *See* Docs. 9–23.  Specifically, class members Joseph Barry, Local 705, Terry Council, and Bamdad moved to be appointed as lead plaintiff and to appoint their respective law firms as lead counsel.  *Id*.  Local 705 also seeks consolidation of the *Villare* and *Barry* actions in its motion.  *See* Doc. 12.

On October 18, 2019, Terry Council withdrew his motion, conceding that he did not have the largest financial interest in the above-captioned actions.  Doc. 28.  On October 21, 2019, Joseph Barry filed a notice conceding the same.  Doc. 30.  The two remaining movants are Local 705 and Bamdad.

## II.    CONSOLIDATION

"Rule 42(a) of the Federal Rules of Civil Procedure empowers a trial judge to consolidate actions for trial when there are common questions of law or fact to avoid unnecessary costs or delay." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).  "Under Rule 42 and the [PSLRA], actions need not be 'identical' to allow for consolidation." *Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d, 390, 394 (S.D.N.Y. 2014).  Given the flexible nature of Rule 42, "[t]he trial court has broad discretion to determine whether consolidation is appropriate." *Johnson*, 899 F.2d. at 1284.  "In assessing whether consolidation is appropriate in

given circumstances, a district court should consider both equity and judicial economy." *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999). "[S]o long as any confusion or prejudice does not outweigh efficiency concerns, consolidation will generally be appropriate." *Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997). Courts in this district "routinely consolidate securities class actions arising from the same allegedly actionable statements," as do the instant two actions. *In re Braskem S.A. Sec. Litig.*, No. 15 Civ. 5132 (PAE), 2015 WL 5244735, at *3 (S.D.N.Y. Sept. 8, 2015) (collecting cases).

The above-captioned actions share sufficiently common questions of law and fact to warrant consolidation. Given that both actions involve the same company and defendants, and nearly the same facts, claims, and legal theories, consolidation will prevent needless duplication and possible confusion, as well as potentially inconsistent jury verdicts.[6] *See Crowe v. JPMorgan Chase & Co.*, Nos. 09 Civ. 778 (RWS), 08 MDL 1963 (RWS), 2009 WL 3852381, at *2 (S.D.N.Y. Nov. 18, 2009).

There is also little or no risk of prejudice to the parties from consolidation. No party has opposed the request for consolidation, and because Defendants' time to answer has not yet passed, the Court can easily place these cases on the same procedural track. *DeRogatis v. Bd. of Trs. of the Cent. Pension Fund of the Int'l Union of Operating Eng'rs*, No. 13 Civ. 8788 (CM), 2015 WL 936114, at *2–3 (S.D.N.Y. Mar. 3, 2015).

---

[6] There are some minor differences between the two complaints, but they do not affect the Court's determination to consolidate. For instance, the *Barry* action asserts a longer class period (November 1, 2018, through July 31, 2019) than the *Villare* action does (January 31, 2019, through July 31, 2019), and contains additional public statements and disclosures by defendants during November 2018. However, these differences neither change the substantially similar nature of the two actions nor diminish the benefits of consolidation. *See, e.g.*, *Francisco v. Abengoa*, S.A., No. 15 CIV. 6279 (ER), 2016 WL 3004664, at *4 (S.D.N.Y. May 24, 2016) (consolidating two securities actions notwithstanding differences in class period and controverted statements); *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) ("Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation."), *reconsidered on other grounds sub nom. In re IMAX Sec. Litig.*, No. 06 Civ. 6128 (NRB), 2009 WL 1905033 (S.D.N.Y. June 29, 2009).

In light of the foregoing, the Court consolidates the *Villare* and *Barry* actions.

## III.   APPOINTMENT OF LEAD PLAINTIFF

The PSLRA governs motions for the appointment of lead plaintiffs in putative class actions brought under federal securities laws.  *See, e.g.*, *In re Braskem*, 2015 WL 5244735, at *4. The PSLRA instructs courts to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. § 78u–4(a)(3)(B)(i).  The statute sets forth a rebuttable presumption "that the most adequate plaintiff . . . is the person or group of persons" that (i) "has either filed the complaint or made a motion in response to" public notice of the filing of the complaint, (ii) "has the largest financial interest in the relief sought by the class," and (iii) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  § 78u–4(a)(3)(B)(iii)(I).

### A.  The Presumptive Lead Plaintiff

Here, both Local 705 and Bamdad have satisfied the first requirement of the PSLRA by filing timely motions on October 7, 2019, in response to the public notice issued by Pomerantz LLP on *GlobeNewswire*.  The next, most critical question is which "person or group of persons" seeking lead-plaintiff status has the largest financial interest in the relief sought by the putative class.  The PSLRA does not specify a method for calculating which plaintiff has the "largest financial interest," and neither the Supreme Court nor the Second Circuit has articulated such a method.  *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008).  However, courts in this Circuit typically examine four factors to determine a lead plaintiff's financial interest:

> (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference

between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered.

*Irving Firemen's Relief & Ret. Fund v. Tesco PLC*, No. 14 Civ. 8495 (RMB), 2015 WL 1345931, at *2 (S.D.N.Y. Mar. 19, 2015) (quoting *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127–28 (S.D.N.Y. 2011)).  "Of these factors, courts have consistently held that the fourth, the magnitude of the loss suffered, is most significant."  *In re Braskem*, 2015 WL 5244735, at *4 (collecting cases).

       *Applicable Class Period*

       As an initial matter, Local 705 and Bamdad disagree as to which class period the Court should utilize in determining the party with the largest financial interest.

       Courts generally, upon consolidation, utilize "the longer, more inclusive class period" because it "encompasses more potential class members and damages."  *See Hom v. Vale, S.A.*, No. 15 Civ. 9539 (GHW), 2016 WL 880201, at *4 (S.D.N.Y. Mar. 7, 2016) (collecting cases); *see also In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 402–03 (S.D.N.Y. 2003).  However, numerous courts have cautioned that "blindly accepting the longest class period without any inquiry" may encourage attempts by potential lead plaintiffs to manipulate the class period so that they have the largest financial interest.  *See In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 434 (S.D. Tex. 2010); *see also Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009).  There is a disagreement among courts as to the applicable standard of review in identifying the proper class period in connection with determination of proposed lead plaintiffs' financial interest.  *Compare In re Centerline Holding Co. Sec. Litig.*, No. 08 Civ. 505 (SAS), 2008 WL 1959799, at *3–4 (S.D.N.Y. May 5, 2008) (applying the *Twombly* standard of "plausibility"), *with MGIC*, 256 F.R.D. at 625 (adopting "obviously frivolous" test at lead plaintiff stage), *and In re BP*, 758 F. Supp. 2d at 434 (same).

8

Importantly, however, all courts agree that no binding determinations regarding the proper class period shall be made as part of the lead-plaintiff analysis, which is made at the earliest point of a securities class action and usually without the defendants' involvement.   *See id*.

Here, Bamdad contends that the allegations anchoring the longer class period in the *Barry* complaint are both implausible and frivolous, such that the shorter class period in the *Villare* complaint should be used in calculating the movants' financial interest.  The Court agrees.  The *Barry* complaint proffers no factual allegations that defendants' statements made in early November 2018 were false or misleading with respect to ABIOMED's declining revenue growth in the following three fiscal quarters of 2019, its lack of a sufficient plan to stem its declining growth, that ABIOMED was unlikely to restore its rate of revenue growth, and that it was reasonably likely to revise its full-year 2020 guidance.[7]  Indeed, those statements were made in connection with the record high revenue growth in ABIOMED's second quarter of 2019.  But, Local 705 contends, that "defendants' positive statements concerning historical revenue growth in the second quarter of 2019" would already have been undermined by "their observed decline in [the rate of] revenue growth" in the third quarter of 2019.  Contrary to Local 705's assertion, however, there are simply no allegations that defendants knew that ABIOMED's rate of revenue growth was already in decline in early November 2018, one month into the third quarter of 2019.  Nonetheless, that is not to say that plaintiffs could never plead or prove an observed decline in the rate of revenue growth by early November 2018.[8]  As it stands now, the *Barry* complaint pleads no facts that make this plausible.

---

[7] ABIOMED first provided its full-year 2020 guidance on May 2, 2019, almost six months after defendants' statements in early November 2018.

[8] Because Local 705 is appointed as the lead plaintiff in this action, it can "decide how to frame [the] amended complaint to allege an appropriate class period."  *See Eichenholtz v. Verifone Holding, Inc.*, No. C07–06140(MHP), 2008 WL 3925289, at * 3 (N.D.Cal. Aug. 22, 2008).

Moreover, Bamdad persuasively argues that there is a risk that the longer class period is a product of gamesmanship.  Barry filed his complaint, along with his certification of loss, hours before the statutory sixty-day window closed.  Tellingly, Barry's certification of loss indicates that but for the expanded period, his loss would plummet to $38,654.42 from $222,251.60.  *See* Doc. 18, Ex. C ("Barry's loss analysis").  Therefore, the Court finds, on balance, that the shorter class period—January 31, 2019 through July 31, 2019— should be used for purposes of the lead-plaintiff analysis.[9]  Bamdad's claimed loss of $581,516.80 during this period makes him the movant with the largest financial interest.  Not far behind, however, is Local 705, which lost $441,987.85 during the same period.

*Rule 23 Requirements*

Bamdad still must "satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure" in order to be appointed lead plaintiff.  § 78u-4(a)(3)(B)(iii)(I)(cc).  Rule 23(a) sets forth four requirements for class certification:  (1) the class is so numerous that simple joinder of all members is impracticable; (2) there exist questions of law or fact common to the whole class; (3) the claims of the lead plaintiff are typical of the claims of the whole class; and (4) the lead plaintiff will adequately represent the interests of all class members.  *See* Fed. R. Civ. P. 23(a).  "When deciding competing motions to be appointed lead plaintiff under the PSLRA, however, a court need not conduct a full analysis of whether the requirements of Rule 23 have been met."

---

[9]  If the longer class period were used, Local 705's incurred loss of $705,291 makes it the movant with the largest financial interest in the action, as opposed to Bamdad.  Bamdad's contention that Local 705's supplemental certification of its loss during the expanded class period, filed after the PSLRA statutory sixty-day period, must be rejected as untimely filed is unpersuasive.  Indeed, where movants have timely filed their motions for lead-plaintiff appointment, courts have permitted them to supplement or amend their motions.  *Schulman v. Lumenis, Ltd.*, No. 02 Civ. 1989 (DAB), 2003 WL 21415287, at *4 (S.D.N.Y. June 18, 2003); *see also China Mobile*, 68 F. Supp. 3d at 397 (collecting cases).  Furthermore, Bamdad does not argue that Local 705 engaged in any gamesmanship to manipulate its loss figures, nor could it, given that Local 705 gave notice of its losses during the longer class period in its motion by listing all its transactions in its loss analysis, Doc. 15, Ex. 2.  *Cf. In re Host Am. Corp. Sec. Litig.*, 236 F.R.D. 102, 107 (D. Conn. 2006) (finding that appended "loss charts and transaction records that list and document all such transactions" comply with the PSLRA").

*Faig v. Bioscrip, Inc.*, No. 13 CIV. 06922 (AJN), 2013 WL 6705045, at *3 (S.D.N.Y. Dec. 19,

2013).  "Rather, '[a]t this stage of the litigation, a moving plaintiff must only make a preliminary

showing that the adequacy and typicality requirements have been met.'"  *Id.* (quoting *Jambay v.*

*Canadian Solar, Inc.*, 272 F.R.D. 112, 120 (S.D.N.Y. 2010)); *see also, e.g.*, *Bo Young Cha v.*

*Kinross Gold Corp.*, No. 12 Civ. 1203 (PAE), 2012 WL 2025850, at *6 (S.D.N.Y. May 31,

2012).

"The typicality requirement is satisfied when the class members' claims 'arise [ ] from

the same course of events, and each class member makes similar legal arguments to prove the

defendant's liability.'"  *Peters v. Jinkosolar Holding Co.*, No. 11 Civ. 7133 (JPO), 2012 WL

946875, at *11 (S.D.N.Y. Mar. 19, 2012) (quoting *In re Drexel Burnham Lambert Grp., Inc.*,

960 F.2d 285, 291 (2d Cir. 1992)).  The lead plaintiff's claims, however, "need not be identical

to the claims of the class to satisfy this requirement."  *Id.* (internal quotation marks omitted).

Bamdad's claims here are typical of the claims of the whole class.  The claims arise from

the purchase or acquisition of ABIOMED's securities whose market price allegedly was

artificially inflated due to the misstatements and omissions by ABIOMED; and, Bamdad seeks

substantially the same relief, based on substantially the same legal theories.

 "The adequacy requirement is satisfied where '(1) class counsel is qualified,

experienced, and generally able to conduct the litigation; (2) there is no conflict between the

proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a

sufficient interest in the outcome of the case to ensure vigorous advocacy.'"  *Sallustro v.*

*CannaVest Corp.*, 93 F. Supp. 3d 265, 278 (S.D.N.Y. 2015) (quoting *Kaplan v. Gelfond*, 240

F.R.D. 88, 94 (S.D.N.Y. 2007)).

Bamdad has retained competent and experienced counsel, Faruqi & Faruqi, LLP, with extensive experience in these types of securities class actions.  *See* Doc. 22, Ex. 4.  Bamdad has also demonstrated losses that suggest he will have a strong interest in advocating on behalf of the class.  *See id.*, Exs. 2–3.  Moreover, to date, there have been no reported conflicts between Bamdad and the other members of the class, and the Court has not identified any.

Accordingly, because he has the largest financial interest and otherwise satisfies a preliminary showing of typicality and adequacy, Bamdad may invoke the rebuttable presumption of lead plaintiff.

### B.  The Rebuttal Evidence

This presumption may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  § 78u–4(a)(3)(B)(iii)(II).  Here, Local 705 contends that Bamdad, having previously pled guilty to third degree Medicaid fraud, is inadequate to represent the class.

"A class representative, once designated by the Court, is a fiduciary for the absent class members."  *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998).  He sues, not for himself alone, but also to advance and protect the interests of all who are similarly situated, whose interests in the "redress of the wrongs are taken into his hands, dependent upon his diligence, wisdom and integrity."  *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949); *see also Kline v. Wolf*, 88 F.R.D. 696, 700 (S.D.N.Y. 1981) , *aff'd* 702 F.2d 400 (2d Cir. 1983) (citing *Cohen* in finding that class representative serves as fiduciary to advance and protect interests of those whom they purport to represent).  Therefore, "honesty and

trustworthiness are relevant factors in assessing a candidate's ability to serve as an adequate fiduciary for a class." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 416 (S.D.N.Y. 2004) (citing *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998); *Kline*, 88 F.R.D. at 403)).

On October 20, 2009, Bamdad, a licensed pharmacist, was arrested and charged with health care claims fraud in the second degree and Medicaid fraud in the third degree, in connection with the takedown of a major criminal narcotics network in New Jersey that was responsible for the black market distribution of thousands of prescription pain pills such as OxyContin and Percocet.  *See* McConville Decl. Doc. 33, Ex. B.  On June 1, 2010, Bamdad pled guilty to third degree Medicaid fraud, in violation of N.J.STAT. ANN. § 30:4D-17(b).  *See id*. Exs. C &D.  In pleading guilty, Bamdad admitted that he submitted claims to the Medicaid program for prescriptions drugs allegedly dispensed to Medicaid beneficiaries, even though the drugs were never dispensed.  *See id*. Ex. A.  Pursuant to a consent order with the New Jersey State Board of Pharmacy dated June 9, 2010, Bamdad had his license as a pharmacist revoked because of his "use or employment of dishonesty, fraud, deception, misrepresentation, false promise, or false pretense," among other things.  *See id*. Ex. C.  On August 18, 2010, Bamdad was sentenced to six months incarceration and three years of probation, along with restitution and civil penalties.  *See id*. Ex. A.  Bamdad's license to practice pharmacy in New Jersey was not reinstated until February 16, 2016, at which time he was still forbidden to act as "pharmacist-in-charge" until at least February 2018.  *See id*. Ex. C.  On August 12, 2019, Bamdad's conviction

was expunged from his record by the Superior Court of New Jersey Law Division:  Hudson

County.  *See* Doc. 39, Ex. A.

Despite the fact that Bamdad's conviction was recently expunged from his record, a

criminal fraud conviction ten years ago remains extremely concerning for an individual seeking

to serve as a fiduciary for absent class members asserting they are the victims of a fraudulent

scheme.  Not surprisingly, none of the cases Bamdad cites stands for the proposition that a

person convicted of criminal fraud would be a suitable lead plaintiff, especially in a securities

fraud case.  On the contrary, several courts have found a prior fraud conviction to be

disqualifying.  *See Xianglin Shi v. Sina Corp.*, 2005 WL 1561438 (S.D.N.Y. July 1, 2005)

(disqualifying proposed group as class representative whose member with the largest financial

interest pled guilty in 1995 to providing false information to a financial institution); *see also*

*Schleicher v. Wendt*, No. 02 Civ. 1332 (DFH)(TAB), 2009 WL 761157 (S.D. Ind. Mar. 20,

2009), *aff'd*, 618 F.3d 679 (7th Cir. 2010).  The *Schleicher* court, under remarkably similar

circumstances, found a proposed class representative inadequate due to a past criminal

conviction for insurance fraud.  *See id*. at 3.  There, the conviction was more than ten years old

and had been expunged by the state court.  *Id*.  The *Schleicher* court found that the expungement

"offer[ed] little comfort" given that "little detail about the reasons for it" was offered, and

"[t]here [was] no indication [] that it was a matter of actual innocence."  *Id*.  That is the case

here.[10]  Accordingly, the Court, like the *Schleicher* court, will not "force class members to rely on a representative who has admitted to fraud."  *Id*.

### C.  Local 705 As Lead Plaintiff

In contrast, Local 705—a large sophisticated institutional investor—is precisely the type of investor Congress envisioned, through the enactment of the PSLRA, as an adequate lead plaintiff.  *See* S.Rep. No. 104–98, at 10–11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 ("The Committee intends to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring the court to presume that the member of the purported class with the largest financial stake in the relief sought is the 'most adequate plaintiff'"); H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").  Congress reasoned that increasing the role of institutional investors would be beneficial because institutional investors with significant financial interest are more apt to effectively manage complex securities litigation.  *See id*. at 34–35, *reprinted in* 1995 U.S.C.C.A.N. at 733–34.  In addition, "many courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs."  *See China Mobile*, 68 F. Supp. 3d at 396 (collecting cases); *see also In re KIT Dig., Inc. Sec. Litig.*, 293 F.R.D. 441, 446 (S.D.N.Y. 2013) (noting the "statutory preference for institutional lead plaintiffs").

---

[10] Moreover, according to Local 705, Bamdad's personal website, established in 2018, states that "Babak Bamdad has directed operations in the Pharmacy Department of New York City's Lincoln Hospital for the past eight years. *See Babak Bamdad—Chief and Director of the Lincoln Hospital Pharmacy*, BABAK BAMDAD (2018), http://www.babakbamdad.com/.  However, on February14, 2012, Bamdad's license to practice pharmacy in New York was suspended for two months, with a 22 month stayed suspension.  *See* New York State Office of the Professions, February 2012 Summaries of Regents Actions on Professional Misconduct and Discipline, http://www.op.nysed.gov/opd/feb12.htm#bamd.

Here, Local 705 has prior experience in prosecuting securities class actions and obtaining recoveries on behalf of investors. *See e.g.*, *In re Austin Capital Mgmt. Ltd. Sec. and ERISA Litig.*, No. 09-md-2075 (S.D.N.Y.) (Local 705 secured a $6.5 million recovery as co-lead plaintiff). Therefore, Local 705's sophistication and understanding of the responsibilities of a lead plaintiff, coupled with its size and resources, will be of significant assistance to the class in this action. Furthermore, Local 705's financial interest, though not the largest, is substantial. *Cf. Freedman v. Weatherford Int'l Ltd.*, No. 12 Civ. 2121 (LAK), Doc. 31, (S.D.N.Y. July 10, 2012) (appointing institutional investor lead plaintiff over competing individual investor who lost $165,000 more during the class period, when institutional investor was more "sophisticated" and had selected a larger, better-known law firm with extensive experience in securities litigation). Lastly, Local 705 similarly satisfies a preliminary showing of typicality and adequacy under Rule 23. Its claims are typical of the claims of the whole class, it has retained competent and experienced counsel, Labaton, with extensive experience in prosecuting securities fraud litigation. And there has been no identifiable conflict between Local 705 and other members of the class.

For all the foregoing reasons, the Court finds that Local 705 is the most adequate plaintiff under the PSLRA, and appoints it the lead plaintiff for the consolidated action.

IV.   **APPROVAL OF LEAD COUNSEL**

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." § 78u–4(a)(3)(B)(v). "There is a strong presumption in favor of approving a properly selected lead plaintiff's decisions as to counsel selection." *Sallustro*, 93 F. Supp. 3d at 278 (internal quotation marks omitted). Local 705 has moved for approval of Labaton as lead counsel.

16

Bamdad challenges Labaton's adequacy by arguing that it violated its duty of candor to the Court by making inconsistent representations of law in this action and in another securities fraud action pending in this district, *Cohen v. Luckin Coffee, et al.*, No. 20 Civ. 1293 (LJL) (S.D.N.Y.) ("*Luckin Coffee*").  Specifically, Bamdad contends that in *Luckin* Coffee, Labaton represented to Judge Liman that its client, the proposed lead plaintiff who had previous conviction for securities fraud, was an adequate lead plaintiff.  Labaton characterized the conviction as a "misstep" and argued that disqualifying a lead plaintiff candidate based on that conviction would be "unprecedented."  By contrast, it is representing to this Court that Bamdad's fraud conviction should be *per se* disqualifying.

Preliminarily, the Court agrees with Bamdad that it may take judicial notice of Labaton's representations in *Luckin Coffee* pursuant to Federal Rule of Evidence ("FRE") 201.  Under FRE 201, a court "must take judicial notice if a party requests it and the court is supplied with the necessary information," of an adjudicative fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Adjudicative facts are those "to which the law is applied in the process of adjudication," and "relate to the parties, their activities…"  Advisory Committee Notes to Fed. R. Evid. 201(a).  Labaton's only objection is that the representations sought to be noticed were made in an unrelated matter on behalf of a different client.  However, as Bamdad correctly points out, they are relevant to the Court's determination of Labaton's adequacy.  *See Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002) ("For purposes of determining whether the class representative is an adequate representative of the members of the class, the performance of the class lawyer is inseparable from that of the class representative."); *see also U.S. v. Gramins*, 939 F.3d 429, 450 (2d Cir. 2019) ("Relevance under the FRE is a low threshold, easily satisfied.").  Indeed, Local 705

acknowledged in its papers that "a movant's adequacy is based on[,]" *inter alia*, "the qualifications of proposed class counsel."  Doc. 14 at 11.

However, the Court's agreement with Bamdad ends there.  Bamdad's contention that Labaton made conflicting representations of law, conflates the concept of false representations with adopting different positions on the application of law to different facts.  While the former undoubtedly breaches the duty of candor to the Court, there is nothing unethical about the latter. *See* Ann. Mod. Rules Prof. Cond. § 1.7 ("Ordinarily a lawyer may take inconsistent legal positions in different tribunals at different times on behalf of different clients.").  Bamdad asserts that Labaton falsely represents the law by asserting here that "[c]ourts…have found prior fraud convictions *per se* disqualifying," *see* Doc. 40 at 1, while representing in *Luckin Coffee* that "[m]ost courts have rejected the contention that a proposed representative is inadequate because of prior unrelated unsavory, unethical, or even illegal conduct."  *See* Doc. 43, Ex. A at 3. Contrary to Bamdad's assertion, however, both statements can be true, and Labaton correctly cited case authority and quoted the leading commentator on class actions in making them.  *See id*.; *see also* Doc. 40 at 1.  Furthermore, they are not even inconsistent as the issue of a criminal fraud conviction does not arise very often in the lead-plaintiff selection process and understandably so.

In addition, the instant action and *Luckin Coffee* involve different factual circumstances. Here, Bamdad pled guilty ten years ago to defrauding Medicaid, and only had his license to practice pharmacy fully reinstated in February 2018.  In contrast, Labaton's client in *Luckin Coffee* pled guilty to submitting an inaccurate report to Malaysia's Kuala Lumpur Stock Exchange almost two decades ago, and has an extensive history of being entrusted as a fiduciary at various financial institutions in Malaysia since 2009—facts that Labaton relied on in arguing

18

that the conviction was a "misstep" and that it would be "unprecedented" to make a finding of inadequacy based on those facts. *See* Doc. 43, Ex. A. Regardless of the merits of Labaton's positions in *Luckin Coffee*[11] and here, "[Labaton], when representing different parties in different litigation, is not bound to always take the same position on a question." *See Mortimer v. Diplomat Pharm. Inc.*, No. 19 Civ. 1735, 2019 WL 4934602, at \*4 (N.D.Ill. Oct. 7, 2019). Accordingly, Bamdad's challenge of Local 705 and Labaton's adequacy is unpersuasive.

Apart from Bamdad's challenge, no party or movant has otherwise objected to the proposed selection. The Court concludes that Labaton is qualified to serve as lead counsel for the class.

## V.      CONCLUSION

For the aforementioned reasons, Local 705's motions for appointment as lead plaintiff, approval of Labaton Sucharow LLP as lead counsel, and consolidation of the *Villare* and *Barry* actions are GRANTED. All future filings in this case shall be filed in the 19 Civ. 7319 docket and bear the same caption as the *Villare* action. The *Barry* action, 19 Civ. 9258, shall be closed. The Clerk of the Court is respectfully directed to terminate the motions, Docs. 9, 12, 16, and 20.

It is SO ORDERED.

Dated:      June 29, 2020
            New York, New York

_____
Edgardo Ramos, U.S.D.J.

---

[11] Labaton's client later withdrew its motion for lead plaintiff appointment despite having the largest financial interest, after opposing movants questioned his adequacy on the basis of the guilty plea. *See Cohen v. Luckin Coffee Inc.*, No. 20 Civ. 1293 (LJL), 2020 WL 3127808, at \*3 n. 5 (S.D.N.Y. June 12, 2020).